Case No. 1:17-cv-07379-GHW

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AVAYA INC., et al.,<br><br>        Debtors.<br>MARLENE CLARK,<br>        Appellant,<br><br>  - against -<br><br>AVAYA INC., et al.,<br>        Appellees. | On appeal from the United States Bankruptcy Court for the Southern District of New York, Ch. 11 Case No. 17-10089-smb |

## BRIEF OF APPELLANT

Dated: October 4, 2017

Avery Samet
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
asamet@storchamini.com
jchubak@storchamini.com

*Attorneys for Appellant Marlene Clark*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF ISSUES PRESENTED.............................................1

STATEMENT OF THE CASE...............................................................2

SUMMARY OF ARGUMENT ..............................................................6

ARGUMENT ..........................................................................................7

I.   THE BANKRUPTCY COURT ERRED IN CONCLUDING THE
     SURVIVOR BENEFIT IS NOT A DEATH BENEFIT UNDER
     SECTION 1114(a) ........................................................................7

     A.   Under the Plain Meaning of Section 1114(a) the Survivor Benefit
          is a Benefit "in the Event of Death"....................................7

     B.   Looking to ERISA's Parallel Definition of Welfare Plan Supports
          Interpreting the Survivor Benefit as a Death Benefit........................10

     C.   The Legislative History of Section 1114 Shows That Congress
          Intended the Survivor Benefit to be a Death Benefit ........................13

II.  THE BANKRUPTCY COURT ERRED IN CONCLUDING THE
     SURVIVOR BENEFIT IS NOT PROVIDED UNDER A QUALIFYING
     PLAN, FUND, OR PROGRAM ..................................................16

     A.   *Fort Halifax* Compels the Opposite Result........................................17

     B.   *Kosakow* Compels the Opposite Result .............................................19

CONCLUSION ....................................................................................24

CERTIFICATE OF COMPLIANCE......................................................

RULE 8014(d) ADDENDUM ...............................................................

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bullard v. Blue Hills Bank*,
  135 S. Ct. 1686 (2015) ....................................................................................... 1

*In re Caldor*,
  303 F.3d 161 (2d Cir. 2002) ........................................................................... 1, 2

*In re Exide Techs.*,
  378 B.R. 762 (Bankr. D. Del. 2007) ................................................................ 10

*Fort Halifax Packing Co., Inc. v. Coyne*,
  482 U.S. 1 (1987) ..................................................................................... passim

*Hardy v. Adam Rose Ret. Plan*,
  576 Fed. App'x 20 (2d Cir. 2014) .................................................................... 19

*Hughes v. Zurz*,
  298 Fed. App'x 404 (6th Cir. 2008) ................................................................. 21

*Kerber v. Qwest Pension Plan*,
  No. 05-cv-478, 2008 WL 4377562 (D. Colo. Sept. 19, 2008) ......................... 12

*Kerber v. Qwest Pension Plan*,
  572 F.3d 1135 (10th Cir. 2009) ................................................................. 11, 12

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
  274 F.3d 706 (2d Cir. 2001) ...................................................................... passim

*Kubier v. McCartney, Verrino & Rosenberry Vested Producer Plan*,
  239 F. Supp.3d 710 (S.D.N.Y. 2017) ............................................................... 21

*In re Lucent Death Ben. ERISA Litig.*,
  541 F.3d 250 (3d Cir. 2008) ...................................................................... passim

*In re Lyondell Chem. Co.*,
  445 B.R. 296 (Bankr. S.D.N.Y. 2011) .............................................................. 10

*MacLean v. Ford Motor Co.*,
831 F.2d 723 (7th Cir. 1987) ............................................................................ 18

*Puerto Rico v. Franklin Cal. Tax-Free Trust*,
136 S. Ct. 1938 (2016) ...................................................................................... 9

*Rombach v. Nestle USA, Inc.*,
211 F.3d 190 (2d Cir. 2000) ........................................................................ 11, 12

*Salve Regina College v. Russell*,
499 U.S. 225 (1991) ........................................................................................... 2

*Schonholz v. Long Island Jewish Med. Ctr.*,
87 F.3d 72 (2d Cir. 1996) ................................................................................ 22

*Smith v. Commonwealth General Corp.*,
589 Fed. App'x 738 (6th Cir. 2014) ................................................................. 18

*Tischmann v. ITT/Sheraton Corp.*,
145 F.3d 561 (2d Cir. 1998) ....................................................................... 18, 19

*Trainmen v. Baltimore & O.R. Co.*,
331 U.S. 519 (1947) ......................................................................................... 15

*U.S. v. Missouri Pac. R. Co.*,
278 U.S. 269 (1929) ......................................................................................... 14

*U.S. v. Owen*,
500 F.3d 83 (2d Cir. 2007) ......................................................................... 13, 14

*U.S. v. Ron Pair Enters., Inc.*,
489 U.S. 235 (1989) ........................................................................................... 9

*Verdier v. Thalle Constr. Co.*,
No. 14-cv-4436, 2017 WL 78512 (S.D.N.Y. Jan. 5, 2017) ............................. 22

*In re Visteon Corp.*,
612 F.3d 210 (3d Cir. 2010) ............................................................................ 16

*In re WorldCom, Inc.*,
364 B.R. 538 (Bankr. S.D.N.Y. 2007) ............................................................... 9

*Zervos v. Verizon N.Y., Inc.*,
  252 F.3d 163 (2d Cir. 2001) ............................................................................ 1, 2

**Statutes**

11 U.S.C. § 522 ........................................................................................... 14

11 U.S.C. § 541 ........................................................................................... 14

11 U.S.C. § 1114 ................................................................................... passim

28 U.S.C. § 158 ............................................................................................. 1

29 U.S.C. § 1002 .................................................................................. passim

29 U.S.C. § 1021 ......................................................................................... 14

29 U.S.C. § 1108 ......................................................................................... 14

**Other Authorities**

S. Rep. No. 100-119 (1987) ......................................................................... 13

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1). The order appealed (A-190-191) (the "Order") is final because it disposed of the discrete issue of whether the claim of Appellant Marlene Clark for her Survivor Benefit under the Supplemental Plan (each defined below) is entitled to priority as an administrative expense, or whether it is a general unsecured claim. *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015).

## STATEMENT OF ISSUES PRESENTED

Issue 1. Whether the Bankruptcy Court erred in concluding that Marlene Clark's right to payment pursuant to Section 4.3 (the "Survivor Benefit") of the Avaya Inc. Supplemental Pension Plan (the "Supplemental Plan") is not a death benefit under Bankruptcy Code section 1114(a), even though her right to said benefit was triggered by her husband's death.

Standard of Appellate Review. This is a pure legal question subject to *de novo* review. *In re Caldor*, 303 F.3d 161, 166 (2d Cir. 2002) (bankruptcy court's interpretation of the Bankruptcy Code reviewed *de novo*). "*De novo* review is without deference … When we review a [lower] court's decision *de novo*, we take note of it, and study the reasoning on which it is based. However, our review is independent and plenary; as the Latin term suggests, we look at the matter anew, as though it had come to the courts for the first time." *Zervos v. Verizon N.Y., Inc.*, 252

1

F.3d 163, 168 (2d Cir. 2001).   *See also Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable").

Issue 2.   Whether the Bankruptcy Court erred in concluding that the Supplemental Plan, to the extent that it provides the Survivor Benefit, is not a qualifying "plan, fund, or program" under section 1114(a).

Standard of Appellate Review.   This is a pure legal question subject to *de novo* review.  *Caldor*, 303 F.3d at 166.

## STATEMENT OF THE CASE

Following his retirement, but prior to his death, Stephan Clark, a former Avaya employee, received monthly payments in the form of a single life annuity, pursuant to Section 4.2 of the Supplemental Plan (providing for "Minimum Retirement Benefit").   (A-173-175; *see also* A-055-056.)   Section 4.3 of the Supplemental Plan also provided for a benefit to his wife, Marlene Clark, in the event of his death:

> In the event of the death of a Participant before December 31, 2003, the Surviving Spouse of such Participant shall be eligible to receive a Survivor Benefit in the form of a single life annuity equal to one-twelfth of 15 percent of the Participant's Annual Basic Pay on the last day the Participant was on the active payroll before his or her death.

(A-24) (emphasis added).

Section 4.3 also provided to what extent the Survivor Benefit would be offset by other benefits received by the Surviving Spouse, and describes the benefit provided thereunder as the "Survivor Benefit." (A-024-025.) Upon Stephan Clark's death, Mrs. Clark became eligible to receive, and commenced receiving, the Survivor Benefit, which is also in the form of a single life annuity. (A-041, Benefit Calculation Summary providing for payments to her of $1,433/month under the Supplemental Plan.)

On January 19, 2017, after Mrs. Clark commenced receiving monthly Survivor Benefit payments, the Debtors-Appellees ("Avaya") commenced their chapter 11 cases. (A-175.) Avaya stopped making the Survivor Benefit payments and instead, scheduled Mrs. Clark's claim as a non-priority, unsecured claim and provided for its treatment as a general unsecured claim in Avaya's proposed chapter 11 plan. (A-175.)

On May 5, 2017, Mrs. Clark filed a motion for an order determining that her Survivor Benefit is a "retiree benefit" under section 1114(a) and granting related relief. (A-175-176.). She argued that the Survivor Benefit, granted to her under the Supplemental Plan "in the event of the death" of her husband (A-025), constituted a "benefit[] in the event of… death… under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established" by Avaya before its bankruptcy filing pursuant to section 1114(a).

3

Avaya objected on the grounds that because the payments made under the Supplemental Plan to Stephan Clark would not have qualified as "retiree benefits" under section 1114(a), the benefits paid to Mrs. Clark "in the event of [his] death" could not qualify as "retiree benefits" either.  (A-058.)  Avaya also claimed that the Supplemental Plan was not a "plan, fund or program" as intended by the statute. (A-059-061.)  Mrs. Clark filed a reply (A-086) and Avaya filed a sur-reply (A-115). The motion was heard on May 25, 2017.  (A-152-171.)

On September 18, 2017, the Bankruptcy Court entered a Memorandum Decision (A-172-189) denying the motion on the grounds that the Survivor Benefit is not a retiree benefit, nor provided under a qualifying plan, fund, or program under section 1114(a).  The Bankruptcy Court found that "the phrase 'benefits in the event of death' under 1114 is facially ambiguous because both sides have supplied reasonable interpretations," with Mrs. Clark having argued it is a death benefit because her right to payment was triggered by her husband's death, and Avaya having argued it is not because her husband's death merely triggered the transfer of his non-priority pension payments to her.  (A-181.)

The Bankruptcy Court looked to the legislative history of section 1114 to determine that Congress intended to protect the health, life, and disability benefits of retirees in bankruptcy and not to protect pensions.  (A-181-183.)  Relying on three other bankruptcy cases, the Bankruptcy Court found that if the payment to Stephan

4

Clark was an unprotected pension benefit under section 1114, then Mrs. Clark's Survivor Benefit was similarly unprotected notwithstanding the "benefits in the event of death" language of section 1114(a).  (A-182-183).

Next, the Bankruptcy Court looked to ERISA jurisprudence for the definition of the phrase "plan, fund or program" in section 1114(a).  (A-185.)  The Bankruptcy Court ruled that the Survivor Benefit (as opposed to the Supplemental Plan itself) was not a "plan, fund or program" because it failed to satisfy the first factor identified by *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 737 (2d Cir. 2001), namely, an ongoing, particularized, administrative analysis of each case.  (A-186, n.11.)  The Bankruptcy Court held "[o]nce the annuity is computed, no further calculation is required, the survivor is not required to do anything, and the benefit is tantamount to a one-off transaction, like a single lump sum benefit, which does not qualify as an ERISA plan under the Supreme Court's decision in *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11 (1987)."  (A-186, n.11).

Finally, the Bankruptcy Court ruled that Mrs. Clark waived her argument that Avaya was estopped from arguing the Survivor Benefit was a welfare benefit, as opposed to a pension benefit, due to the Third Circuit's ruling on a predecessor plan. (A-187). Nevertheless, the Bankruptcy Court went on to reject the estoppel argument on the merits.  (A-187-189).  The Bankruptcy Court entered the Order on September 20, 2017 and Mrs. Clark filed her notice of appeal the same day.  (A-192-193.)

## SUMMARY OF ARGUMENT

This appeal concerns the interpretation of 11 U.S.C § 1114(a): the bankruptcy statute conferring priority on claims of the spouses of retired employees in a corporate bankruptcy case.  Under that statute, Congress granted administrative expense priority and other protections to "retired employees and their spouses" for "benefits in the event of sickness, accident, disability or death … under any plan, fund or program."  Notwithstanding the plain meaning of the statute, the Bankruptcy Court ruled that the monthly payments made to Marlene Clark under the Supplemental Plan on account of her husband's death did not qualify for protection under section 1114(a).  This Court should reverse.

Pursuant to the plain meaning of the statute, payments owed to spouses of retired employees for "benefits in the event of death" under any plan, fund or program constitute "retiree benefits" entitled to protection.  Avaya owed payments to Mrs. Clark under Section 4.3 of the Supplemental Plan which provided that certain payments be made to her "in the event of the death" of her husband.  Because the benefit was provided to her "in the event of death," it squarely met the statute's definition of a "benefit[] in the event of death."

The Bankruptcy Court considered Clark's interpretation to be a "reasonable interpretation" (A-181) but nevertheless found the statute ambiguous.  The Bankruptcy Court looked to legislative history to conclude that Congress did not

intend to grant the protections of section 1114 to the spouses of retired employees who obtain survivorship benefits under corporate pension plans.  Respectfully, there is no such legislative history and even if there were it could not contradict the plain meaning of the statute.

The Bankruptcy Court also erred by relying on *Fort Halifax* for the proposition that benefits that are computed once do not constitute a "plan, fund or program" under ERISA, and hence under the identical phrase in section 1114(a). (A-186, n.11.)  *Fort Halifax* stands for the opposite proposition: the inclusion of death benefits in a plan, computed once per benefit, <u>cause</u> a plan to constitute a "plan, fund or program" under ERISA.  Similarly, the Supplemental Plan is quite obviously an ERISA plan under all applicable metrics.

This Court should reverse and hold that Mrs. Clark's Survivor Benefit is a retiree benefit pursuant to section 1114(a) and is therefore entitled to the protections of section 1114.

## **ARGUMENT**

## I.  THE BANKRUPTCY COURT ERRED IN CONCLUDING THE SURVIVOR BENEFIT IS NOT A DEATH BENEFIT UNDER SECTION 1114(a)

### A.  Under the Plain Meaning of Section 1114(a) the Survivor Benefit is a Benefit "in the Event of Death"

Section 1114 was codified by the Retiree Benefits Bankruptcy Protection Act of 1988, through which Congress afforded retiree benefits "significant protections

and treatment under the Bankruptcy Code.  The debtor must continue to pay retiree benefits as administrative expenses through a chapter 11 case, it cannot terminate or modify retiree benefits absent a court order and only after demonstrating that it has complied with the procedures set forth in section 1114, and if the debtor seeks to terminate or modify retiree benefits, the court must, upon request, appoint a committee to represent the interests of retirees."  (A-179, citing 11 U.S.C. § 1114(d)-(g)).

Section 1114(a) defines "retiree benefits" as follows:

> For purposes of this section, the term "retiree benefits" means <u>payments to any</u> entity or <u>person for the purpose of providing</u> or reimbursing <u>payments for retired employees and their spouses</u> and dependents, <u>for</u>
>
> [1] medical, surgical, or hospital care benefits, or
>
> [2] <u>benefits in the event of</u> sickness, accident, disability or <u>death</u>
>
> <u>under any plan, fund, or program (through the purchase of insurance or otherwise)</u> maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

(Emphasis added).  Under the plain meaning of the statute, the Survivor Benefit, payable to Marlene Clark, "<u>in the event of the death</u> of a Participant" (her husband) (A-24, Supplemental Plan § 4.3) (emphasis added) constituted a "benefit[] <u>in the event of death</u>" under section 1114(a) (emphasis added).

The plain meaning of the Bankruptcy Code governs its interpretation.  *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1946 (2016) ("The plain text of the Bankruptcy Code begins and ends our analysis").  Avaya argued (A-055-058, 091, 177), and the Bankruptcy Court agreed (A-183), that by using the term "benefits in the event of death," Congress intended to exclude certain payments in the event of death: namely, payments to a surviving spouse in the event of the death of the retired employee where the survivorship benefit was calculated the same way as the pension payments received by the deceased employee.  (A-174-175, 183.)

However, nothing in the statute excludes such payments.  *See U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (the plain meaning of the Bankruptcy Code should be adopted "except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters").  Moreover, the Bankruptcy Court's conclusion mischaracterizes the Survivor Benefit which, under the Supplemental Plan, does not transfer an existing payment stream to the spouse.  (A-024-025, Supplemental Plan § 4.3; A-174-175.)  Pursuant to its explicit terms, the Survivor Benefit is an independent benefit, separately calculated.  (A-024-025.)   Section 4.3 of the Supplemental Plan contains no language transferring Mr. Clark's right to payment under that plan to Mrs. Clark.  (*Id.*).[1]

---

[1] The three bankruptcy cases relied upon by the Bankruptcy Court (A-183-184) did not thoroughly address the statutory interpretation issue and involved different facts: *In re WorldCom, Inc.*, 364 B.R. 538, 550 (Bankr. S.D.N.Y. 2007) (living retiree sought section 1114 protection for pension payments because of the contingency that

Finally, while the Bankruptcy Court ruled that "both sides have supplied reasonable interpretations" of the plain language of section 1114(a), the Bankruptcy Court identified no language in section 1114(a) <u>itself</u> which supported Avaya's alternative reading of the statute.  (A-181.)  Instead, the Bankruptcy Court reasoned that if the pension paid to Mr. Clark would not constitute a "retiree benefit" under section 1114(a), the Survivor Benefit paid to Mrs. Clark "in the event of [his] death" could not constitute a "retiree benefit."  (A-181, 183.)  But this assumption is not contained anywhere in the text of the statute.  Thus, the Bankruptcy Court erred by looking at the legislative history.

## B. Looking to ERISA's Parallel Definition of Welfare Plan Supports Interpreting the Survivor Benefit as a Death Benefit

Because Section 1114(a) tracks ERISA's definition of a welfare plan, bankruptcy courts have looked to ERISA for assistance in interpreting Section 1114(a).  *Compare* 11 U.S.C. 1114(a) *with* 29 U.S.C. 1002(1).  *See also* A-184-185 (collecting authorities).  Under ERISA, "benefits in the event of death" constitute welfare benefits.

---

they could be transferred to a beneficiary upon the retiree's death); *In re Lyondell Chem. Co.*, 445 B.R. 296, 301 (Bankr. S.D.N.Y. 2011) (movant sought protection for private agreement between single executive and company which allowed for transfer to any named beneficiary upon death); *In re Exide Techs.*, 378 B.R. 762, 769 (Bankr. D. Del. 2007) (private agreement between single executive and company allowed for continuation of payments to beneficiaries upon death).  To the extent these cases are applicable, they are wrongly decided.

> The terms "employee welfare benefit plan" and "welfare plan" <u>mean any plan, fund, or program</u> which was heretofore or is hereafter established or maintained by an employer or by an employer organization, or both, to the extent that such plan, fund, or program was established or is maintained <u>for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,</u> (A) medical, surgical, or hospital care benefits, or <u>benefits in the event</u> of sickness, accident, disability, <u>death</u> or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1) (emphasis added).  Like section 1114(a), this is so whether the plan operates "through the purchase of insurance or otherwise."

Benefits paid to a surviving spouse upon the death of a retired person constitute welfare-death benefits, not pension benefits.  *In re Lucent Death Benefits ERISA Litig.*, 541 F.3d 250, 255 (3d. Cir. 2008) (lump sum payment to spouse upon death of retired person is a welfare benefit because it does not provide retirement income to employees and provides benefits in the event of death); *Kerber v. Qwest Pension Plan*, 572 F.3d 1135, 1152 (10th Cir. 2009) (McConnel J., Concurring) (lump sum payout of version of pensioner's retirement income as survivorship benefits upon petitioner's death is a welfare-death benefit).

Under ERISA, that a welfare benefit appears in a pension plan does not change the character of the benefit.  *Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 193-94

(2d Cir. 2000) ("[U]nder the plain language of the statute, 'to the extent' that Nestle's Pension Plan provides benefits <u>that are triggered by</u> disability, that portion of the plan is a welfare plan under 1002(1)") (emphasis added). Here, to the extent the Survivor Benefit is triggered by death, that portion of the Supplemental Plan is a welfare plan under 29 U.S.C. § 1002(1). *Accord Lucent,* 541 F.3d at 255; *Kerber v. Qwest Pension Plan*, No. 05-cv-478, 2008 WL 4377562 at *8 (D. Colo. Sept. 19, 2008) (benefit paid pensioner's spouse upon pensioner's death "is a benefit triggered by death and is, therefore, as welfare benefit"), *aff'd*, 572 F.3d 1135.

The Bankruptcy Court distinguished *Lucent* on the ground that the calculation of the Survivor Benefit was "directly related to the annual payments of accrued deferred compensation otherwise payable to the Retiree" and to the retiree's eligibility for retirement payments. (A-189.) However, as *Lucent* pointed out, ERISA expressly states that the method of the calculation of benefits under a plan has no bearing on whether the plan is a pension plan or not. 541 F.3d at 256, quoting 29 U.S.C. § 1002(2)(A) (relevant benefits are a pension plan, "regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan, or the method of distributing benefits from the plan").

Simply put, the Survivor Benefit cannot be analogized to a pension benefit because the Survivor Benefit does not provide retirement income to employees and is not the result of income deferral by employees. Instead, the Survivor Benefit is

<u>triggered</u> by the death of the Supplemental Plan Participant using language tracking the welfare plan definition ("in the event of death").   The fact that the Survivor Benefit is <u>calculated</u> in a similar way to the pension benefit paid to the retiree has no statutory bearing on the type of benefit it is.

### C.   The Legislative History of Section 1114 Shows That Congress Intended the Survivor Benefit to be a Death Benefit

There is no specific legislative history concerning the phrase "benefits in the event of death" in section 1114(a).   Nevertheless, the statute's general legislative history shows that Congress enacted the statute in response to outrage over LTV Corporation's immediate cancellation of retiree health and life insurance benefits upon its filing for chapter 11 protection.  S. Rep. No. 100-119 (1987), reprinted in 1988 U.S.C.C.A.N. 683.  While seeking to balance the interests of creditors, retirees, and their dependents, Congress found that "[t]he special treatment accorded retiree benefit payments is appropriate because of the hardship imposed on elderly recipients when such benefits are suddenly curtailed." *Id*. at 684.  Preventing Avaya from terminating the Survivor Benefit afforded to retirees to care for their spouses is certainly consistent with that Congressional intent.

The Bankruptcy Court instead concluded that Congress intended only to protect health, disability and life insurance.  (A-181-182, 184).   However, the statute itself provides that it applies regardless if that benefit is provided "through the purchase of insurance or otherwise."  11 U.S.C. 1114(a).  *See U.S. v. Owen*, 500 F.3d

83, 89 (2d Cir. 2007) ("It is axiomatic that where the words of a statute are clear, the words employed are to be taken as the final expression of the meaning intended"), *relying on U.S. v. Missouri Pac. R. Co.*, 278 U.S. 269, 278 (1929) ("legislative history may not be used to support a construction that adds to or takes from the significance of the words employed").

Moreover, Congress could have easily distinguished death benefits and life insurance if it so chose, as both the Bankruptcy Code and ERISA distinguish between them. *See* 11 U.S.C. § 541(a)(5)(C) (estate property includes any interest the debtor has "as a beneficiary of a life insurance policy or of a death benefit plan"); 11 U.S.C. § 522(d)(7)-(8), (10) (life insurance protections under Federal bankruptcy exemptions); 29 U.S.C. §§ 1021(e), 1108(b)(5) (referring to life insurance accounts and contracts, notwithstanding use of the term "benefits in the event of … death" in 29 U.S.C. § 1002(1)(A)).

While Congress was responding to the cancellation of insurance policies in a particular bankruptcy case, Congress passed a law that expressly applied regardless of whether the "sickness, accident, disability or death" benefits were provided through insurance or not.  Moreover, nothing in the legislative history indicates a desire on the part of Congress to limit such benefits only to insurance payments;

indeed, the legislative history indicates a broad attempt to protect elderly people who rely on certain benefits—including death benefits—from rapacious bondholders.[2]

The Bankruptcy Court also relied on the legislative history indicating that Congress did not intend to change pension benefits. (A-182.) However, the Survivor Benefit—an independent benefit paid only to widows and widowers—is precisely the type of benefit that Congress did intend to protect. There is nothing in the legislative history which suggests "benefits in the event of death" calculated like an unprotected pension benefit would not be protected.

Congress clearly intended to protect all payments to retired employee spouses in the event of death and included nothing in the statute or legislative history excluding surviving spouses who received benefits directly from their retiree-

---

[2] It is not surprising that when discussing complex legislation legislators sometimes refer to the most common subject matter involved. *Cf. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-29 (1947) (discounting headings in statutory interpretation):

> That heading is but a short-hand reference to the general subject matter involved…. But headings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles.

spouse's employer. "Section 1114 could hardly be clearer. It restricts a debtor's ability to modify *any* payments to *any* entity or person under *any* plan, fund or program in existence when the debtor files for Chapter 11 bankruptcy…." *In re Visteon Corp.*, 612 F.3d 210, 220 (3d Cir. 2010) (emphasis in original).

## II.   THE BANKRUPTCY COURT ERRED IN CONCLUDING THE SURVIVOR BENEFIT IS NOT PROVIDED UNDER A QUALIFYING PLAN, FUND, OR PROGRAM

The Supplemental Plan, under which the Survivor Benefits were paid, constituted a "plan, fund or program (through the purchase of insurance or otherwise) maintained or established by the debtor in whole or in part by the debtor prior to filing a petition commencing a case under this title." 11 U.S.C. § 1114(a). The Bankruptcy Court looked to the definition of the identical term—"plan, fund or program"—employed by ERISA and interpreted by the Supreme Court in *Fort Halifax* and the Second Circuit in *Kosakow*.

Relying on these cases, the Bankruptcy Court found that the Survivor Benefit itself—as opposed to the Supplemental Plan pursuant to which it was paid—did not qualify as a plan under ERISA because it could not satisfy the first *Kosakow* factor alone. The Bankruptcy Court reasoned that once the Survivor Benefit "is computed, no further calculation is required" and that therefore the Survivor Benefit could "not qualify as an ERISA plan under the Supreme Court's decision in *Fort Halifax*." (A-186, n.11). As explained below, the Bankruptcy Court's decision is directly

16

contrary to *Fort Halifax.*   It also erred when it considered only one of the three *Kosakow* factors, as opposed to weighing all three.

### A.   *Fort Halifax* Compels the Opposite Result

As the Bankruptcy Court acknowledged, citing *Fort Halifax*, a "given program qualifies as a 'plan, fund or program' under ERISA if it requires an ongoing administrative program to meet the employer's obligation." (A-185).   In the briefing below, both parties argued that the Bankruptcy Court should look at the Supplemental Plan as a whole.   (A-59, 99).   Instead, the Bankruptcy Court erroneously focused on whether a single benefit—the Survivor Benefit—was an ERISA plan in its own right, as opposed to whether the Supplemental Plan was an ERISA plan requiring "an ongoing administrative program to meet the employer's obligation."

Under *Fort Halifax,* the Bankruptcy Court should have analyzed whether the Supplemental Plan was a plan under ERISA, not whether a single benefit constituted an ERISA plan in its own right.   "The words 'benefit' and 'plan' are used separately throughout ERISA, and nowhere in the statute are they treated as the equivalent of one another.   Given the basic difference between a 'benefit' and a 'plan,' Congress' choice of language is significant...."   *Fort Halifax*, 482 U.S. at 8.

More importantly, in *Fort Halifax,* the Supreme Court expressly rejected the reasoning the Bankruptcy Court applied here. 482 U.S. at 14, n.9. The Supreme Court held that the presence of a one-time death benefit payment to beneficiaries would <u>cause</u> a program to <u>constitute</u> an ongoing ERISA plan:

> This argument, however, misunderstands what it is that makes a plan a plan. While death benefits may represent a one-time payment from the perspective of the beneficiaries, the employer clearly foresees the need to make regular payments to survivors on an ongoing basis. The ongoing, predictable nature of this obligation therefore creates the need for an administrative scheme to process claims and pay out benefits, whether those benefits are received by beneficiaries in a lump sum or on a periodic basis. This is borne out by the fact that death benefits are included in appellant's retirement plan, with instructions on how eligibility is to be determined, benefit levels calculated, and disbursements made. App. 54-56. By contrast, appellant's statutory obligation did not prompt the establishment of any payment program, since there were no ongoing benefits to be paid.

*Id.* In other words, had the plan at issue in *Fort Halifax* contained a death benefit like the Survivor Benefit, it would have qualified as an ERISA plan. Under *Fort Halifax*, a benefit payable upon death to a beneficiary makes a plan an ERISA plan.

The Second Circuit has relied on *Fort Halifax* to reject the argument, like the one adopted by the Bankruptcy Court, that the payment of benefits in a lump-sum takes a plan outside of ERISA coverage. *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 567 (2d Cir. 1998). *Accord Smith v. Commonwealth General Corp.*, 589 Fed. App'x 738, 743 (6th Cir. 2014); *MacLean v. Ford Motor Co.*, 831 F.2d 723, 728

(7th Cir. 1987) (relying on same holding to conclude that ERISA preempts state testamentary law).  Under *Fort Halifax*, the presence of a death benefit, calculated only once per death, causes a plan to constitute an ERISA plan.  The Bankruptcy Court committed error by construing *Fort Halifax* to compel the opposite result.

### B.    *Kosakow* Compels the Opposite Result

An ERISA plan may exist "(1) where an employer's undertaking requires managerial discretion, that is where the undertaking could not be fulfilled without ongoing particularized, administrative analysis of each case; (2) where a reasonable employee would perceive an ongoing commitment by the employer to provide some employee benefits; and (3) where the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." (A-185, quoting *Kosakow*, 274 F.3d at 737.)   As the Bankruptcy Court itself acknowledged, "[n]o single factor is determinative… and there is no rule that one or more of these factors will be determinative in every case." (A-185-186, citing *Hardy v. Adam Rose Ret. Plan*, 576 Fed. App'x 20, 21 (2d Cir. 2014) and *Tischmann v. ITT/ Sheraton Corp.*, 145 F.3d 561, 566 (2d Cir. 1998)).  Having determined to apply the *Kosakow* factors, the Bankruptcy Court made two errors in applying them.

The Bankruptcy Court erred when it applied only the first of the three *Kosakow* factors instead of weighing all three.  In addition, the Bankruptcy Court erroneously considered whether only the Survivor Benefit was an ERISA plan,

19

rather than the Supplemental Plan as a whole.  As a result, the Bankruptcy Court did not consider how, if at all, the Supplemental Plan met the three *Kosakow* factors. This also constituted error.  That the Pension Plan constitutes a plan under ERISA is a result compelled by *Kosakow* and its progeny.

The Supplemental Plan expressly states that it is an ERISA plan: "[the plan] is intended to constitute both (i) an unfunded excess benefit plan as defined in ERISA 3(36), and (ii) an unfunded plan primarily for the purpose of providing deferred compensation and pension benefits for a select group of management or highly compensated employees for purposes of [ERISA]."  (A-16, Art. I.)  To this end, the plan sets up an ongoing administrative structure, expressly in accordance with ERISA:  Avaya Inc. ("the Company") is designated the "plan administrator of the plan as that term is defined in ERISA."  (A-031, § 2.3.)  The plan also establishes a Committee (the "Avaya Employee Benefits Committee") to "have such powers as may be necessary in order to enable it administer the Plan …." (A-032, § 9.5.)  The plan specifically named both the Committee and the Administrator "a fiduciary as that term is used in ERISA …."  (A-032, § 9.4.)

The Supplemental Plan also establishes a complex claims procedure to be administered by the Committee to resolve disputed benefit payments, including those by a Surviving Spouse.  (A-031, § 9.3.)  *See Fort Halifax*, 482 U.S. at 14, n.9 (need for administrative scheme to process claims and pay out benefits makes a plan

an ERISA plan). *See also Hughes v. Zurz*, 298 Fed. App'x 404, 414 (6th Cir. 2008) ("Thus, the claims procedure, a requirement for all ERISA benefits plans, in itself constitutes an ongoing administrative scheme") (emphasis added).

In addition, the Supplemental Plan affords the Committee substantial discretion under claims procedures: "[t]he Committee shall have the authority to determine conclusively for all parties any and all questions arising from administration of the Plan, and shall have sole and complete discretionary authority and control to manage the operation and administration of the Plan, including but not limited to … determination of the amount and kind of benefits payable to any Participant, Surviving Spouse or Beneficiary, and the construction of disputed and doubtful terms." (A-032, § 9.3.)

The Supplemental Plan is also only available to employees "who, after termination of employment with the Company continue to acknowledge a duty of loyalty to the Company and refrain from engaging in activities that are in conflict with or adverse to the interest of the Company." (A-16, Art. 1.) For example, Section 6.4(c) provides that an employee who engages in a wide variety of acts post-termination, related to the disclosure or use of confidential information or the solicitation of employees, forfeits their benefits under the Supplemental Plan. (A-029.) *See Kubier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 239 F. Supp.3d 710, 729-30 (S.D.N.Y. 2017) (plan provided for ongoing discretion,

21

and thus constituted an ERISA plan, because it required the employer "to determine an employee's compliance with a non-compete provision"); *Verdier v. Thalle Constr. Co.*, No. 14-cv-4436, 2017 WL 78512, at *2 (S.D.N.Y. Jan. 5, 2017) (plan which permits employer to analyze individual compliance with non-compete provision provides enough ongoing discretion to constitute an ERISA plan).

Moreover, an employee forfeits his/her eligibility if he/she is dismissed for sufficient cause, including "violation Avaya's business Guideposts – the Company's Code of Conduct" (A-29, § 6.4(a)) and if the Board determines that the employee engaged in undefined "misconduct" (A-29, § 6.4(b)). *Kosakow* expressly found that this provision weighed in favor of a plan constituting an ERISA plan. *Kosakow*, 274 F.3d at 736 ("an individual determination must be made as to whether an employee was terminated for sufficient cause such that she forfeited her severance benefits as the manual provides that if "'sufficient cause exists, an employee can be terminated and will forfeit all terminal benefits'"), *relying on Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 76 (2d Cir. 1996) (plan was an ERISA plan because it required employer to determine whether employee was terminated, and whether termination was for illegal conduct).

In sum, the Supplemental Plan does not just denominate itself an ERISA plan. A review of its features demonstrates that it constitutes an ERISA plan, including its complex claims procedure, the discretion afforded the Committee to

run it, and its individualized duty of loyalty provisions.  The Supplemental Plan's plain language supports the finding that it required an ongoing particularized, administrative analysis of each case, would cause a reasonable employee to perceive an ongoing commitment by the employer to provide employee benefits, and required the individual analysis of the circumstances of each employee's termination.  In some cases, the Supplemental Plan possesses the identical characteristics relied upon by *Kosakow*, and its progeny, in concluding plans to be ERISA plans.  By contrast, the Bankruptcy Court relied on no cognizable elements of the Supplemental Plan to conclude that it was not an ongoing administrative program to meet the employer's obligation.  The Bankruptcy committed error by determining that the Supplemental Plan was not a plan.

## CONCLUSION

The Order should be vacated, and this Court should conclude that the Survivor Benefit is a retiree benefit under section 1114(a), and instruct the Bankruptcy Court to grant Mrs. Clark the related relief sought in the motion that flows from that conclusion pursuant to section 1114(d)-(e).

Dated:  October 4, 2017                    Respectfully submitted,

/s/ Avery Samet
Avery Samet
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
asamet@storchamini.com
jchubak@storchamini.com

*Attorneys for Appellant Marlene Clark*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limit in Rule 8015(a)(7)(B)(i) because it contains 5,528 words, excluding the parts of the document exempted by Rule 8015(a)(7)(B)(iii).  This brief also complies with the typeface and typestyle requirements of Rule 8015(a)(5)-(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 4, 2017

<u>/s/ Avery Samet</u>