# **RULE 8014(d) ADDENDUM**

# **11 U.S.C. § 1114; 29 U.S.C. § 1002**

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
　Title 11. Bankruptcy (Refs & Annos)
　　Chapter 11. Reorganization (Refs & Annos)
　　　Subchapter I. Officers and Administration (Refs & Annos)

11 U.S.C.A. § 1114

§ 1114. Payment of insurance benefits to retired employees

Currentness

**(a)** For purposes of this section, the term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

**(b)(1)** For purposes of this section, the term "authorized representative" means the authorized representative designated pursuant to subsection (c) for persons receiving any retiree benefits covered by a collective bargaining agreement or subsection (d) in the case of persons receiving retiree benefits not covered by such an agreement.

**(2)** Committees of retired employees appointed by the court pursuant to this section shall have the same rights, powers, and duties as committees appointed under sections 1102 and 1103 of this title for the purpose of carrying out the purposes of sections 1114 and 1129(a)(13) and, as permitted by the court, shall have the power to enforce the rights of persons under this title as they relate to retiree benefits.

**(c)(1)** A labor organization shall be, for purposes of this section, the authorized representative of those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is signatory, unless (A) such labor organization elects not to serve as the authorized representative of such persons, or (B) the court, upon a motion by any party in interest, after notice and hearing, determines that different representation of such persons is appropriate.

**(2)** In cases where the labor organization referred to in paragraph (1) elects not to serve as the authorized representative of those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is signatory, or in cases where the court, pursuant to paragraph (1) finds different representation of such persons appropriate, the court, upon a motion by any party in interest, and after notice and a hearing, shall appoint a committee of retired employees if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate, from among such persons, to serve as the authorized representative of such persons under this section.

**(d)** The court, upon a motion by any party in interest, and after notice and a hearing, shall order the appointment of a committee of retired employees if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise

determines that it is appropriate, to serve as the authorized representative, under this section, of those persons receiving any retiree benefits not covered by a collective bargaining agreement. The United States trustee shall appoint any such committee.

**(e)(1)** Notwithstanding any other provision of this title, the debtor in possession, or the trustee if one has been appointed under the provisions of this chapter (hereinafter in this section "trustee" shall include a debtor in possession), shall timely pay and shall not modify any retiree benefits, except that--

**(A)** the court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section, or

**(B)** the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments,

after which such benefits as modified shall continue to be paid by the trustee.

**(2)** Any payment for retiree benefits required to be made before a plan confirmed under section 1129 of this title is effective has the status of an allowed administrative expense as provided in section 503 of this title.

**(f)(1)** Subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits, the trustee shall--

**(A)** make a proposal to the authorized representative of the retirees, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

**(B)** provide, subject to subsection (k)(3), the representative of the retirees with such relevant information as is necessary to evaluate the proposal.

**(2)** During the period beginning on the date of the making of a proposal provided for in paragraph (1), and ending on the date of the hearing provided for in subsection (k)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such retiree benefits.

**(g)** The court shall enter an order providing for modification in the payment of retiree benefits if the court finds that--

**(1)** the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (f);

**(2)** the authorized representative of the retirees has refused to accept such proposal without good cause; and

**(3)** such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities;

except that in no case shall the court enter an order providing for such modification which provides for a modification to a level lower than that proposed by the trustee in the proposal found by the court to have complied with the requirements of this subsection and subsection (f): *Provided, however,* That at any time after an order is entered providing for modification in the payment of retiree benefits, or at any time after an agreement modifying such benefits is made between the trustee and the authorized representative of the recipients of such benefits, the authorized representative may apply to the court for an order increasing those benefits which order shall be granted if the increase in retiree benefits sought is consistent with the standard set forth in paragraph (3): *Provided further,* That neither the trustee nor the authorized representative is precluded from making more than one motion for a modification order governed by this subsection.

**(h)(1)** Prior to a court issuing a final order under subsection (g) of this section, if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim modifications in retiree benefits.

**(2)** Any hearing under this subsection shall be scheduled in accordance with the needs of the trustee.

**(3)** The implementation of such interim changes does not render the motion for modification moot.

**(i)** No retiree benefits paid between the filing of the petition and the time a plan confirmed under section 1129 of this title becomes effective shall be deducted or offset from the amounts allowed as claims for any benefits which remain unpaid, or from the amounts to be paid under the plan with respect to such claims for unpaid benefits, whether such claims for unpaid benefits are based upon or arise from a right to future unpaid benefits or from any benefits not paid as a result of modifications allowed pursuant to this section.

**(j)** No claim for retiree benefits shall be limited by section 502(b)(7) of this title.

**(k)(1)** Upon the filing of an application for modifying retiree benefits, the court shall schedule a hearing to be held not later than fourteen days after the date of the filing of such application. All interested parties may appear and be heard at such hearing. Adequate notice shall be provided to such parties at least ten days before the date of such hearing. The court may extend the time for the commencement of such hearing for a period not exceeding seven days where the circumstances of the case, and the interests of justice require such extension, or for additional periods of time to which the trustee and the authorized representative agree.

**(2)** The court shall rule on such application for modification within ninety days after the date of the commencement of the hearing. In the interests of justice, the court may extend such time for ruling for such additional period as the trustee and the authorized representative may agree to. If the court does not rule on such application within ninety days after the date of the commencement of the hearing, or within such additional time as the trustee and the authorized representative may agree to, the trustee may implement the proposed modifications pending the ruling of the court on such application.

**(3)** The court may enter such protective orders, consistent with the need of the authorized representative of the retirees to evaluate the trustee's proposal and the application for modification, as may be necessary to prevent disclosure of

information provided to such representative where such disclosure could compromise the position of the debtor with respect to its competitors in the industry in which it is engaged.

**(l)** If the debtor, during the 180-day period ending on the date of the filing of the petition--

  **(1)** modified retiree benefits; and

  **(2)** was insolvent on the date such benefits were modified;

the court, on motion of a party in interest, and after notice and a hearing, shall issue an order reinstating as of the date the modification was made, such benefits as in effect immediately before such date unless the court finds that the balance of the equities clearly favors such modification.

**(m)** This section shall not apply to any retiree, or the spouse or dependents of such retiree, if such retiree's gross income for the twelve months preceding the filing of the bankruptcy petition equals or exceeds $250,000, unless such retiree can demonstrate to the satisfaction of the court that he is unable to obtain health, medical, life, and disability coverage for himself, his spouse, and his dependents who would otherwise be covered by the employer's insurance plan, comparable to the coverage provided by the employer on the day before the filing of a petition under this title.

**CREDIT(S)**
   (Added Pub.L. 100-334, § 2(a), June 16, 1988, 102 Stat. 610; amended Pub.L. 109-8, Title IV, § 447, Title XIV, § 1403, Apr. 20, 2005, 119 Stat. 118, 215.)

Notes of Decisions (40)

11 U.S.C.A. § 1114, 11 USCA § 1114
Current through P.L. 115-61.

**End of Document**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.


**KeyCite Yellow Flag - Negative Treatment**
Proposed Legislation

> United States Code Annotated
>   Title 29. Labor
>     Chapter 18. Employee Retirement Income Security Program (Refs & Annos)
>       Subchapter I. Protection of Employee Benefit Rights (Refs & Annos)
>         Subtitle A. General Provisions

29 U.S.C.A. § 1002

§ 1002. Definitions

Currentness

For purposes of this subchapter:

**(1)** The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

**(2)(A)** Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program--

  **(i)** provides retirement income to employees, or

  **(ii)** results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan, fund, or program shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution.

**(B)** The Secretary may by regulation prescribe rules consistent with the standards and purposes of this chapter providing one or more exempt categories under which--

**(i)** severance pay arrangements, and

**(ii)** supplemental retirement income payments, under which the pension benefits of retirees or their beneficiaries are supplemented to take into account some portion or all of the increases in the cost of living (as determined by the Secretary of Labor) since retirement,

shall, for purposes of this subchapter, be treated as welfare plans rather than pension plans. In the case of any arrangement or payment a principal effect of which is the evasion of the standards or purposes of this chapter applicable to pension plans, such arrangement or payment shall be treated as a pension plan. An applicable voluntary early retirement incentive plan (as defined in section 457(e)(11)(D)(ii) of Title 26) making payments or supplements described in section 457(e)(11)(D)(i) of Title 26, and an applicable employment retention plan (as defined in section 457(f)(4)(C) of Title 26) making payments of benefits described in section 457(f)(4)(A) of Title 26, shall, for purposes of this subchapter, be treated as a welfare plan (and not a pension plan) with respect to such payments and supplements.

**(3)** The term "employee benefit plan" or "plan" means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

**(4)** The term "employee organization" means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

**(5)** The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

**(6)** The term "employee" means any individual employed by an employer.

**(7)** The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

**(8)** The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

**(9)** The term "person" means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization.

**(10)** The term "State" includes any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, and the Canal Zone. The term "United States" when used in the geographic

sense means the States and the Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (43 U.S.C. 1331-1343).

**(11)** The term "commerce" means trade, traffic, commerce, transportation, or communication between any State and any place outside thereof.

**(12)** The term "industry or activity affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce, and includes any activity or industry "affecting commerce" within the meaning of the Labor Management Relations Act, 1947, or the Railway Labor Act.

**(13)** The term "Secretary" means the Secretary of Labor.

**(14)** The term "party in interest" means, as to an employee benefit plan--

**(A)** any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

**(B)** a person providing services to such plan;

**(C)** an employer any of whose employees are covered by such plan;

**(D)** an employee organization any of whose members are covered by such plan;

**(E)** an owner, direct or indirect, of 50 percent or more of--

**(i)** the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation. [1]

**(ii)** the capital interest or the profits interest of a partnership, or

**(iii)** the beneficial interest of a trust or unincorporated enterprise,

which is an employer or an employee organization described in subparagraph (C) or (D);

**(F)** a relative (as defined in paragraph (15)) of any individual described in subparagraph (A), (B), (C), or (E);

**(G)** a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of--

>   **(i)** the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation,
>
>   **(ii)** the capital interest or profits interest of such partnership, or
>
>   **(iii)** the beneficial interest of such trust or estate,
>
>   is owned directly or indirectly, or held by persons described in subparagraph (A), (B), (C), (D), or (E);
>
> **(H)** an employee, officer, director (or an individual having powers or responsibilities similar to those of officers or directors), or a 10 percent or more shareholder directly or indirectly, of a person described in subparagraph (B), (C), (D), (E), or (G), or of the employee benefit plan; or
>
> **(I)** a 10 percent or more (directly or indirectly in capital or profits) partner or joint venturer of a person described in subparagraph (B), (C), (D), (E), or (G).
>
> The Secretary, after consultation and coordination with the Secretary of the Treasury, may by regulation prescribe a percentage lower than 50 percent for subparagraph (E) and (G) and lower than 10 percent for subparagraph (H) or (I). The Secretary may prescribe regulations for determining the ownership (direct or indirect) of profits and beneficial interests, and the manner in which indirect stockholdings are taken into account. Any person who is a party in interest with respect to a plan to which a trust described in section 501(c)(22) of Title 26 is permitted to make payments under section 1403 of this title shall be treated as a party in interest with respect to such trust.
>
> **(15)** The term "relative" means a spouse, ancestor, lineal descendant, or spouse of a lineal descendant.
>
> **(16)(A)** The term "administrator" means--
>
>   **(i)** the person specifically so designated by the terms of the instrument under which the plan is operated;
>
>   **(ii)** if an administrator is not so designated, the plan sponsor; or
>
>   **(iii)** in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.
>
> **(B)** The term "plan sponsor" means (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan.

**(17)** The term "separate account" means an account established or maintained by an insurance company under which income, gains, and losses, whether or not realized, from assets allocated to such account, are, in accordance with the applicable contract, credited to or charged against such account without regard to other income, gains, or losses of the insurance company.

**(18)** The term "adequate consideration" when used in part 4 of subtitle B means (A) in the case of a security for which there is a generally recognized market, either (i) the price of the security prevailing on a national securities exchange which is registered under section 78f of Title 15, or (ii) if the security is not traded on such a national securities exchange, a price not less favorable to the plan than the offering price for the security as established by the current bid and asked prices quoted by persons independent of the issuer and of any party in interest; and (B) in the case of an asset other than a security for which there is a generally recognized market, the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary.

**(19)** The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan. For purposes of this paragraph, a right to an accrued benefit derived from employer contributions shall not be treated as forfeitable merely because the plan contains a provision described in section 1053(a)(3) of this title.

**(20)** The term "security" has the same meaning as such term has under section 77b(1) of Title 15.

**(21)(A)** Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

**(B)** If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940 such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or a party in interest as those terms are defined in this subchapter, except insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter. Nothing contained in this subparagraph shall limit the duties imposed on such investment company, investment adviser, or principal underwriter by any other law.

**(22)** The term "normal retirement benefit" means the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age. The normal retirement benefit shall be determined without regard to--

   **(A)** medical benefits, and

**(B)** disability benefits not in excess of the qualified disability benefit.

For purposes of this paragraph, a qualified disability benefit is a disability benefit provided by a plan which does not exceed the benefit which would be provided for the participant if he separated from the service at normal retirement age. For purposes of this paragraph, the early retirement benefit under a plan shall be determined without regard to any benefit under the plan which the Secretary of the Treasury finds to be a benefit described in section 1054(b)(1)(G) of this title.

**(23)** The term "accrued benefit" means--

**(A)** in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age, or

**(B)** in the case of a plan which is an individual account plan, the balance of the individual's account.

The accrued benefit of an employee shall not be less than the amount determined under section 1054(c)(2)(B) of this title with respect to the employee's accumulated contribution.

**(24)** The term "normal retirement age" means the earlier of--

**(A)** the time a plan participant attains normal retirement age under the plan, or

**(B)** the later of--

**(i)** the time a plan participant attains age 65, or

**(ii)** the 5th anniversary of the time a plan participant commenced participation in the plan.

**(25)** The term "vested liabilities" means the present value of the immediate or deferred benefits available at normal retirement age for participants and their beneficiaries which are nonforfeitable.

**(26)** The term "current value" means fair market value where available and otherwise the fair value as determined in good faith by a trustee or a named fiduciary (as defined in section 1102(a)(2) of this title) pursuant to the terms of the plan and in accordance with regulations of the Secretary, assuming an orderly liquidation at the time of such determination.

**(27)** The term "present value", with respect to a liability, means the value adjusted to reflect anticipated events. Such adjustments shall conform to such regulations as the Secretary of the Treasury may prescribe.

**(28)** The term "normal service cost" or "normal cost" means the annual cost of future pension benefits and administrative expenses assigned, under an actuarial cost method, to years subsequent to a particular valuation date of a pension plan. The Secretary of the Treasury may prescribe regulations to carry out this paragraph.

**(29)** The term "accrued liability" means the excess of the present value, as of a particular valuation date of a pension plan, of the projected future benefit costs and administrative expenses for all plan participants and beneficiaries over the present value of future contributions for the normal cost of all applicable plan participants and beneficiaries. The Secretary of the Treasury may prescribe regulations to carry out this paragraph.

**(30)** The term "unfunded accrued liability" means the excess of the accrued liability, under an actuarial cost method which so provides, over the present value of the assets of a pension plan. The Secretary of the Treasury may prescribe regulations to carry out this paragraph.

**(31)** The term "advance funding actuarial cost method" or "actuarial cost method" means a recognized actuarial technique utilized for establishing the amount and incidence of the annual actuarial cost of pension plan benefits and expenses. Acceptable actuarial cost methods shall include the accrued benefit cost method (unit credit method), the entry age normal cost method, the individual level premium cost method, the aggregate cost method, the attained age normal cost method, and the frozen initial liability cost method. The terminal funding cost method and the current funding (pay-as-you-go) cost method are not acceptable actuarial cost methods. The Secretary of the Treasury shall issue regulations to further define acceptable actuarial cost methods.

**(32)** The term "governmental plan" means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing. The term "governmental plan" also includes any plan to which the Railroad Retirement Act of 1935, or 1937 applies, and which is financed by contributions required under that Act and any plan of an international organization which is exempt from taxation under the provisions of the International Organizations Immunities Act. The term "governmental plan" includes a plan which is established and maintained by an Indian tribal government (as defined in section 7701(a)(40) of Title 26), a subdivision of an Indian tribal government (determined in accordance with section 7871(d) of Title 26), or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function) [2]

**(33)(A)** The term "church plan" means a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26.

**(B)** The term "church plan" does not include a plan--

**(i)** which is established and maintained primarily for the benefit of employees (or their beneficiaries) of such church or convention or association of churches who are employed in connection with one or more unrelated trades or businesses (within the meaning of section 513 of Title 26), or

**(ii)** if less than substantially all of the individuals included in the plan are individuals described in subparagraph (A) or in clause (ii) of subparagraph (C) (or their beneficiaries).

**(C)** For purposes of this paragraph--

**(i)** A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

**(ii)** The term employee of a church or a convention or association of churches includes--

**(I)** a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry, regardless of the source of his compensation;

**(II)** an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of Title 26 and which is controlled by or associated with a church or a convention or association of churches; and

**(III)** an individual described in clause (v).

**(iii)** A church or a convention or association of churches which is exempt from tax under section 501 of Title 26 shall be deemed the employer of any individual included as an employee under clause (ii).

**(iv)** An organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches.

**(v)** If an employee who is included in a church plan separates from the service of a church or a convention or association of churches or an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of Title 26 and which is controlled by or associated with a church or a convention or association of churches, the church plan shall not fail to meet the requirements of this paragraph merely because the plan--

**(I)** retains the employee's accrued benefit or account for the payment of benefits to the employee or his beneficiaries pursuant to the terms of the plan; or

**(II)** receives contributions on the employee's behalf after the employee's separation from such service, but only for a period of 5 years after such separation, unless the employee is disabled (within the meaning of the disability provisions of the church plan or, if there are no such provisions in the church plan, within the meaning of section 72(m)(7) of Title 26) at the time of such separation from service.

**(D)(i)** If a plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26 fails to meet one or more of the requirements of this paragraph and corrects its failure to meet such requirements within the correction period, the plan shall be deemed to meet the requirements of this paragraph for the year in which the correction was made and for all prior years.

**(ii)** If a correction is not made within the correction period, the plan shall be deemed not to meet the requirements of this paragraph beginning with the date on which the earliest failure to meet one or more of such requirements occurred.

**(iii)** For purposes of this subparagraph, the term "correction period" means--

**(I)** the period ending 270 days after the date of mailing by the Secretary of the Treasury of a notice of default with respect to the plan's failure to meet one or more of the requirements of this paragraph; or

**(II)** any period set by a court of competent jurisdiction after a final determination that the plan fails to meet such requirements, or, if the court does not specify such period, any reasonable period determined by the Secretary of the Treasury on the basis of all the facts and circumstances, but in any event not less than 270 days after the determination has become final; or

**(III)** any additional period which the Secretary of the Treasury determines is reasonable or necessary for the correction of the default,

whichever has the latest ending date.

**(34)** The term "individual account plan" or "defined contribution plan" means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.

**(35)** The term "defined benefit plan" means a pension plan other than an individual account plan; except that a pension plan which is not an individual account plan and which provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant--

**(A)** for the purposes of section 1052 of this title, shall be treated as an individual account plan, and

**(B)** for the purposes of paragraph (23) of this section and section 1054 of this title, shall be treated as an individual account plan to the extent benefits are based upon the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan.

**(36)** The term "excess benefit plan" means a plan maintained by an employer solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by section 415 of Title 26 on plans to which that section applies without regard to whether the plan is funded. To the extent that a separable part of a plan (as determined by the Secretary of Labor) maintained by an employer is maintained for such purpose, that part shall be treated as a separate plan which is an excess benefit plan.

**(37)(A)** The term "multiemployer plan" means a plan--

**(i)** to which more than one employer is required to contribute,

**(ii)** which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and

**(iii)** which satisfies such other requirements as the Secretary may prescribe by regulation.

**(B)** For purposes of this paragraph, all trades or businesses (whether or not incorporated) which are under common control within the meaning of section 1301(b)(1) of this title are considered a single employer.

**(C)** Notwithstanding subparagraph (A), a plan is a multiemployer plan on and after its termination date if the plan was a multiemployer plan under this paragraph for the plan year preceding its termination date.

**(D)** For purposes of this subchapter, notwithstanding the preceding provisions of this paragraph, for any plan year which began before September 26, 1980, the term "multiemployer plan" means a plan described in this paragraph (37) as in effect immediately before such date.

**(E)** Within one year after September 26, 1980, a multiemployer plan may irrevocably elect, pursuant to procedures established by the corporation and subject to the provisions of sections 1453(b) and (c) of this title, that the plan shall not be treated as a multiemployer plan for all purposes under this chapter or the Internal Revenue Code of 1954 if for each of the last 3 plan years ending prior to the effective date of the Multiemployer Pension Plan Amendments Act of 1980--

**(i)** the plan was not a multiemployer plan because the plan was not a plan described in subparagraph (A)(iii) of this paragraph and section 414(f)(1)(C) of Title 26 (as such provisions were in effect on the day before September 26, 1980); and

**(ii)** the plan had been identified as a plan that was not a multiemployer plan in substantially all its filings with the corporation, the Secretary of Labor and the Secretary of the Treasury.

**(F)(i)** For purposes of this subchapter a qualified football coaches plan--

**(I)** shall be treated as a multiemployer plan to the extent not inconsistent with the purposes of this subparagraph; and

**(II)** notwithstanding section 401(k)(4)(B) of Title 26, may include a qualified cash and deferred arrangement.

**(ii)** For purposes of this subparagraph, the term "qualified football coaches plan" means any defined contribution plan which is established and maintained by an organization--

**(I)** which is described in section 501(c) of Title 26;

**(II)** the membership of which consists entirely of individuals who primarily coach football as full-time employees of 4-year colleges or universities described in section 170(b)(1)(A)(ii) of Title 26; and

**(III)** which was in existence on September 18, 1986.

**(G)(i)** Within 1 year after August 17, 2006--

**(I)** an election under subparagraph (E) may be revoked, pursuant to procedures prescribed by the Pension Benefit Guaranty Corporation, if, for each of the 3 plan years prior to August 17, 2006, the plan would have been a multiemployer plan but for the election under subparagraph (E), and

**(II)** a plan that meets the criteria in clauses (i) and (ii) of subparagraph (A) of this paragraph or that is described in clause (vi) may, pursuant to procedures prescribed by the Pension Benefit Guaranty Corporation, elect to be a multiemployer plan, if--

**(aa)** for each of the 3 plan years immediately preceding the first plan year for which the election under this paragraph is effective with respect to the plan, the plan has met those criteria or is so described,

**(bb)** substantially all of the plan's employer contributions for each of those plan years were made or required to be made by organizations that were exempt from tax under section 501 of Title 26, and

**(cc)** the plan was established prior to September 2, 1974.

**(ii)** An election under this subparagraph shall be effective for all purposes under this chapter and under Title 26, starting with any plan year beginning on or after January 1, 1999, and ending before January 1, 2008, as designated by the plan in the election made under clause (i)(II).

**(iii)** Once made, an election under this subparagraph shall be irrevocable, except that a plan described in clause (i)(II) shall cease to be a multiemployer plan as of the plan year beginning immediately after the first plan year for which the majority of its employer contributions were made or required to be made by organizations that were not exempt from tax under section 501 of Title 26.

**(iv)** The fact that a plan makes an election under clause (i)(II) does not imply that the plan was not a multiemployer plan prior to the date of the election or would not be a multiemployer plan without regard to the election.

**(v)(I)** No later than 30 days before an election is made under this subparagraph, the plan administrator shall provide notice of the pending election to each plan participant and beneficiary, each labor organization representing such participants or beneficiaries, and each employer that has an obligation to contribute to the plan, describing the principal differences between the guarantee programs under subchapter III and the benefit restrictions under this subchapter for single employer and multiemployer plans, along with such other information as the plan administrator chooses to include.

**(II)** Within 180 days after August 17, 2006, the Secretary shall prescribe a model notice under this clause.

**(III)** A plan administrator's failure to provide the notice required under this subparagraph shall be treated for purposes of section 1132(c)(2) of this title as a failure or refusal by the plan administrator to file the annual report required to be filed with the Secretary under section 1021(b)(1) of this title.

**(vi)** A plan is described in this clause if it is a plan sponsored by an organization which is described in section 501(c)(5) of Title 26 and exempt from tax under section 501(a) of such title and which was established in Chicago, Illinois, on August 12, 1881.

**(vii)** For purposes of this chapter and Title 26, a plan making an election under this subparagraph shall be treated as maintained pursuant to a collective bargaining agreement if a collective bargaining agreement, expressly or otherwise, provides for or permits employer contributions to the plan by one or more employers that are signatory to such agreement, or participation in the plan by one or more employees of an employer that is signatory to such agreement, regardless of whether the plan was created, established, or maintained for such employees by virtue of another document that is not a collective bargaining agreement.

**(38)** The term "investment manager" means any fiduciary (other than a trustee or named fiduciary, as defined in section 1102(a)(2) of this title)--

**(A)** who has the power to manage, acquire, or dispose of any asset of a plan;

**(B)** who (i) is registered as an investment adviser under the Investment Advisers Act of 1940; (ii) is not registered as an investment adviser under such Act by reason of paragraph (1) of section 203A(a) of such Act, is registered as an investment adviser under the laws of the State (referred to in such paragraph (1)) in which it maintains its principal office and place of business, and, at the time the fiduciary last filed the registration form most recently filed by the fiduciary with such State in order to maintain the fiduciary's registration under the laws of such State, also filed a copy of such form with the Secretary; (iii) is a bank, as defined in that Act; or (iv) is an insurance company qualified to perform services described in subparagraph (A) under the laws of more than one State; and

**(C)** has acknowledged in writing that he is a fiduciary with respect to the plan.

**(39)** The terms "plan year" and "fiscal year of the plan" mean, with respect to a plan, the calendar, policy, or fiscal year on which the records of the plan are kept.

**(40)(A)** The term "multiple employer welfare arrangement" means an employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) to the employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries, except that such term does not include any such plan or other arrangement which is established or maintained--

> **(i)** under or pursuant to one or more agreements which the Secretary finds to be collective bargaining agreements,
>
> **(ii)** by a rural electric cooperative, or
>
> **(iii)** by a rural telephone cooperative association.

**(B)** For purposes of this paragraph--

> **(i)** two or more trades or businesses, whether or not incorporated, shall be deemed a single employer if such trades or businesses are within the same control group,
>
> **(ii)** the term "control group" means a group of trades or businesses under common control,
>
> **(iii)** the determination of whether a trade or business is under "common control" with another trade or business shall be determined under regulations of the Secretary applying principles similar to the principles applied in determining whether employees of two or more trades or businesses are treated as employed by a single employer under section 1301(b) of this title, except that, for purposes of this paragraph, common control shall not be based on an interest of less than 25 percent,
>
> **(iv)** the term "rural electric cooperative" means--
>
>> **(I)** any organization which is exempt from tax under section 501(a) of Title 26 and which is engaged primarily in providing electric service on a mutual or cooperative basis, and
>>
>> **(II)** any organization described in paragraph (4) or (6) of section 501(c) of Title 26 which is exempt from tax under section 501(a) of Title 26 and at least 80 percent of the members of which are organizations described in subclause (I), and
>
> **(v)** the term "rural telephone cooperative association" means an organization described in paragraph (4) or (6) of section 501(c) of Title 26 which is exempt from tax under section 501(a) of Title 26 and at least 80 percent of the

members of which are organizations engaged primarily in providing telephone service to rural areas of the United States on a mutual, cooperative, or other basis.

**(41)** [3] Single-employer plan

The term "single-employer plan" means an employee benefit plan other than a multiemployer plan.

**(41)** [3] The term "single employer plan" means a plan which is not a multiemployer plan.

**(42)** the term "plan assets" means plan assets as defined by such regulations as the Secretary may prescribe, except that under such regulations the assets of any entity shall not be treated as plan assets if, immediately after the most recent acquisition of any equity interest in the entity, less than 25 percent of the total value of each class of equity interest in the entity is held by benefit plan investors. For purposes of determinations pursuant to this paragraph, the value of any equity interest held by a person (other than such a benefit plan investor) who has discretionary authority or control with respect to the assets of the entity or any person who provides investment advice for a fee (direct or indirect) with respect to such assets, or any affiliate of such a person, shall be disregarded for purposes of calculating the 25 percent threshold. An entity shall be considered to hold plan assets only to the extent of the percentage of the equity interest held by benefit plan investors. For purposes of this paragraph, the term "benefit plan investor" means an employee benefit plan subject to part 4, [4] any plan to which section 4975 of Title 26 applies, and any entity whose underlying assets include plan assets by reason of a plan's investment in such entity.

**CREDIT(S)**

(Pub.L. 93-406, Title I, § 3, Sept. 2, 1974, 88 Stat. 833; Pub.L. 96-364, Title III, §§ 302, 305, Title IV, §§ 407(a), 409, Sept. 26, 1980, 94 Stat. 1291, 1294, 1303, 1307; Pub.L. 97-473, Title III, § 302(a), Jan. 14, 1983, 96 Stat. 2612; Pub.L. 99-272, Title XI, § 11016(c)(1), Apr. 7, 1986, 100 Stat. 273; Pub.L. 99-509, Title IX, § 9203(b)(1), Oct. 21, 1986, 100 Stat. 1979; Pub.L. 99-514, Title XVIII, § 1879(u)(3), Oct. 22, 1986, 100 Stat. 2913; Pub.L. 100-202, § 136(a), Dec. 22, 1987, 101 Stat. 1329-441; Pub.L. 101-239, Title VII, §§ 7871(b)(2), 7881(m)(2)(D), 7891(a)(1), 7893(a), 7894(a)(1)(A), (2)(A), (3), (4), Dec. 19, 1989, 103 Stat. 2435, 2444, 2445, 2447, 2448; Pub.L. 101-508, Title XII, § 12002(b)(2)(C), Nov. 5, 1990, 104 Stat. 1388-566; Pub.L. 102-89, § 2, Aug. 14, 1991, 105 Stat. 446; Pub.L. 104-290, Title III, § 308(b)(1), Oct. 11, 1996, 110 Stat. 3440; Pub.L. 105-72, § 1(a), Nov. 10, 1997, 111 Stat. 1457; Pub.L. 109-280, Title VI, § 611(f), Title IX, §§ 905(a), 906(a)(2)(A), Title XI, §§ 1104(c), 1106(a), Aug. 17, 2006, 120 Stat. 972, 1050, 1051, 1060; Pub.L. 110-28, Title VI, § 6611(a)(1), (b)(1), May 25, 2007, 121 Stat. 179, 180; Pub.L. 110-458, Title I, § 111(c), Dec. 23, 2008, 122 Stat. 5113.)

Notes of Decisions (1275)

Footnotes
1       So in original. The period probably should be a comma.
2       So in original. Probably should end with a period.
3       So in original. Two pars. (41) have been enacted.
4       So in original. Probably should be "part 4 of subtitle B,".

29 U.S.C.A. § 1002, 29 USCA § 1002
Current through P.L. 115-61.

---

**End of Document**                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.