**Case No. 1:17-cv-07379-GHW**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| In re: |
| AVAYA INC., et al., |
| Debtors. |
| MARLENE CLARK, |
| Appellant, |
| - against - |
| AVAYA INC., et al., |
| Appellees. |

On appeal from the United States Bankruptcy Court for the Southern District of New York, Ch. 11 Case No. 17-10089-smb

**APPENDIX OF APPELLANT (Vol. 1 of 2)**

Dated: October 4, 2017

Avery Samet
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
asamet@storchamini.com
jchubak@storchamini.com

*Attorneys for Appellant Marlene Clark*

## TABLE OF CONTENTS

| Document Description | Filing Date | ECF No. | Appendix Page |
|---|---|---|---|
| Marlene Clark's Motion | 5/5/17 | 522 | 1 |
| Debtors' Objection (Excluding Exhibit A) | 5/18/17 | 609 | 46 |
| Ad Hoc First Lien Group's Objection | 5/18/17 | 612 | 64 |
| Ad Hoc Crossover Group's Objection | 5/18/17 | 614 | 70 |
| Official Committee of Unsecured Creditors' Objection | 5/18/17 | 616 | 78 |
| Marlene Clark's Reply | 5/21/17 | 635 | 86 |
| Debtors' Sur-Reply | 5/24/17 | 653 | 115 |
| Marlene Clark's Letter Briefly Responding to Debtors' Sur-Reply | 5/24/17 | 670 | 127 |
| Transcript of May 25, 2017 Hearing | N/A | N/A | 134 |
| Memorandum Decision | 9/18/17 | 1182 | 172 |
| Order | 9/20/17 | 1201 | 190 |
| Notice of Appeal | 9/20/17 | 1202 | 192 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| AVAYA INC., *et al.*,[1] | Case No. 17-10089-smb |
| Debtors. | Jointly Administered |

### NOTICE OF MARLENE CLARK'S MOTION FOR ORDER DETERMINING SURVIVORSHIP BENEFITS UNDER SUPPLEMENTAL PLAN ARE "RETIREE BENEFITS" UNDER BANKRUPTCY CODE SECTION 1114(a), COMPELLING COMPLIANCE WITH SECTION 1114(e), AND APPOINTING AN OFFICIAL COMMITTEE UNDER SECTION 1114(d)

PLEASE TAKE NOTICE that a hearing on the attached motion will be held before the Honorable Stuart M. Bernstein in Courtroom 723 of the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, New York, New York 10004, on **May 25, 2017 at 10:00 a.m.**

PLEASE TAKE FURTHER NOTICE that any objection to the motion must be filed with the Court, and served on movant's undersigned counsel so as to be received by **May 18, 2017 at 4:00 p.m.**, with a courtesy copy delivered to chambers at the time of service.

Dated: May 5, 2017
New York, New York

STORCH AMINI PC

/s/ Jeffrey Chubak
Jeffrey Chubak
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Marlene Clark*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax ID number, are: Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9828); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229). Their address is: 4655 Great America Parkway, Santa Clara, California 95054.

Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Marlene Clark*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| AVAYA INC., *et al.*,[1] | Case No. 17-10089-smb |
| Debtors. | Jointly Administered |

**MARLENE CLARK'S MOTION FOR ORDER**
**DETERMINING SURVIVORSHIP BENEFITS UNDER SUPPLEMENTAL PLAN**
**ARE "RETIREE BENEFITS" UNDER BANKRUPTCY CODE SECTION 1114(a),**
**COMPELLING COMPLIANCE WITH SECTION 1114(e), AND APPOINTING**
**AN OFFICIAL COMMITTEE UNDER SECTION 1114(d)**

Marlene Clark, the surviving spouse of retiree Stephan Clark and a beneficiary under the Avaya Inc. Supplemental Pension Plan (the "Supplemental Plan"), moves for an order, substantially in the form attached hereto as Exhibit 1, (1) determining that monthly payments to surviving spouse beneficiaries under the Supplemental Plan are "retiree benefits" under Bankruptcy Code section 1114(a), (2) compelling the immediate reinstatement of monthly payments to surviving spouse beneficiaries under the Supplemental Plan pursuant to section 1114(e)(1), (3) directing that monthly payments to surviving spouse beneficiaries that have accrued during the chapter 11 case of Avaya Inc. ("Avaya") be afforded administrative priority

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax ID number, are: Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9828); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229). Their address is: 4655 Great America Parkway, Santa Clara, California 95054.

pursuant to section 1114(e)(2) and paid, and (4) appointing an Official Committee pursuant to section 1114(d), and states:

### PRELIMINARY STATEMENT

Following the petition date, Avaya terminated monthly payments to all Supplemental Plan beneficiaries without prior Court authorization, presumably on the grounds that monthly payments to retirees are not "retiree benefits" under section 1114(a). However, monthly payments to their surviving spouses are plainly "payments … for the purpose of providing … for retired employees and their spouses … benefits in the event of … death under any plan … maintained … by the debtor" under section 1114(a). Accordingly, pursuant to section 1114(e)(1), surviving spouses' benefits never should have been terminated and Avaya's obligation to pay the same should be immediately reinstated. In addition, pursuant to section 1114(e)(2), payments that accrued and continue to accrue during its chapter 11 case should be afforded administrative priority and paid. Moreover, because retiree beneficiaries under the Supplemental Plan are all non-union, surviving spouse beneficiaries are entitled to representation in the form of an Official Committee under section 1114(d).

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district under 28 U.S.C. §§ 1408-09.

### BACKGROUND

3. Avaya offered both qualified and non-qualified pension plans to its employees.[2]

---

[2] Benefits under qualified plans do not exceed applicable limits prescribed by the Internal Revenue Code. Non-qualified plans offer benefits in excess of said limits.

4.      The Supplemental Plan, a copy of which is attached hereto as <u>Exhibit 2</u>, is a non-qualified pension plan offered to retired non-union employees, on top of benefits provided under the retirees' qualified plan.[3]

5.      The Supplemental Plan provides benefits to retirees and their surviving spouses in the form of monthly annuity payments.

6.      Movant is the surviving spouse of non-union retiree Stephan Clark.  Prior to the petition date, she became eligible for and began receiving a survivorship benefit of $1,433.16 per month in the form of an annuity under the Supplemental Plan, as indicated in the Supplemental Plan Payment Summary included in her proof of claim, attached hereto as <u>Exhibit 3</u>.

7.      Following the petition date (January 19, 2017), Avaya announced it would be suspending payments to all Supplemental Plan beneficiaries.   A copy of a Wall Street Journal article concerning this is attached hereto as <u>Exhibit 4</u>.  Movant has not received a monthly payment under the Supplemental Plan from and after the petition date.

8.      Avaya scheduled its debts under the Supplemental Plan in its Schedules of Assets and Liabilities, filed March 30, 2017 [ECF No. 37] by listing "Avaya Non-Qualified Pension Plan" as the holder of a non-priority claim in the amount of $90.21 million, and further marked the claim as "contingent" and "unliquidated,"[4] thereby requiring retirees and surviving spouses to file proofs of claim to be entitled to a distribution.

---

[3] The applicable qualified plan is the Avaya Inc. Pension Plan for Salaried Employees, which the Debtors have represented covers 6,900 retirees [ECF No. 22, ¶49].

[4] Avaya scheduled its Supplemental Plan obligations incorrectly.  First, there is no creditor "Avaya Non-Qualified Pension Plan." Pursuant to Article 8 of the Supplemental Plan, benefits payable thereunder are payable to beneficiaries directly from Avaya's general assets, and thus, individual beneficiaries are the relevant creditors.  Second, the claims of retirees and surviving spouses receiving payments as of the petition date are not contingent.  Third, claims under the Supplemental Plan are not unliquidated as amounts owed can easily be calculated from actuarial tables.  Fourth, Avaya erred by failing to distinguish between debts owed to retirees which are properly scheduled as non-priority claims and obligations to surviving

3

9.      On April 13, 2017, the Debtors filed a proposed chapter 11 plan and disclosure statement [ECF Nos. 388, 389].  The disclosure statement provides as follows with respect to the Supplemental Plan:

> Avaya Inc. is the sponsor for the Avaya Inc. Supplemental Pension Plan, which is a non-qualified plan established for purpose of providing an unfunded excess benefit plan and providing deferred compensation and supplemental pension benefits for purposes of ERISA (the "ASPP"). The ASPP is a successor with respect to the Lucent Technologies Supplemental Pension Plan in effect as of September 2000. The ASPP is not insured by PBGC. As of the Petition Date, approximately 830 individuals were beneficiaries of the ASPP. By its terms, obligations arising under the ASPP are general unsecured obligations of Avaya. Pursuant to the Plan, Avaya's obligations under the Avaya Inc. Supplemental Pension Plan will be discharged as General Unsecured Claims of Avaya's chapter 11 estate.[22]
>
> [22] The Debtors intend to supplement their applicable Schedules of Assets and Liabilities to reflect claims arising from the discharge of obligations arising in connection with the ASPP.

The disclosure statement further projects general unsecured creditors will recover 10% of the allowed amount of their claims under the plan.

## RELIEF REQUESTED AND BASIS THEREFOR

10.      Movant requests an order (1) determining that monthly payments to surviving spouse beneficiaries under the Supplemental Plan are "retiree benefits" under section 1114(a), (2) compelling the immediate reinstatement of monthly payments to surviving spouse beneficiaries under the Supplemental Plan pursuant to section 1114(e)(1), (3)  directing that monthly payments to surviving spouse beneficiaries that have accrued during Avaya's chapter 11 case be afforded administrative priority pursuant to section 1114(e)(2) and paid, and (4) appointing an Official Committee pursuant to section 1114(d).

---

spouses which are entitled to priority and cannot be modified without prior Court authorization or on consent of their authorized representative pursuant to section 1114(e), as described below.

I. **MONTHLY PAYMENTS UNDER THE SUPPLEMENTAL PLAN TO SURVIVING SPOUSES ARE "RETIREE BENEFITS" UNDER SECTION 1114(a)**

11. Section 1114(a) provides:

**Payment of insurance benefits to retired employees.**

For purposes of this section, the term "retiree benefits" means <u>payments to any</u> entity or <u>person for the purpose of providing</u> or reimbursing <u>payments for</u> retired employees and their <u>spouses</u> and dependents, <u>for</u>

[1] medical, surgical, or hospital care benefits, or

[2] <u>benefits in the event of</u> sickness, accident, disability or <u>death</u>

under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

12. Monthly payments to surviving spouse beneficiaries under the Supplemental Plan plainly qualify as "payments to any … person for the purpose of providing … payments for … spouses … for benefits in the event of … death" under a prepetition plan.

13. That the statute governs "payments … for … benefits" does not render annuity payments under the Supplemental Plan outside its scope, as the dictionary definition of "benefit" includes pension <u>and</u> annuity payments. *See* https://www.merriam-webster.com/dictionary/benefit (defining "benefit" as including "payment or service provided for under an annuity, pension plan, or insurance policy").

II. **THIS COURT SHOULD DIRECT IMMEDIATE REINSTATEMENT OF MONTHLY PAYMENTS TO SURVIVING SPOUSES AND GIVE ACCRUED PAYMENTS ADMINISTRATIVE PRIORITY**

14. Section 1114(e)(1) provides a debtor "shall timely pay and shall not modify any retiree benefits," absent the consent of the debtor and retirees' "authorized representative," or by order of the Court entered following a negotiation between the debtor and said representative pursuant to section 1114(f)-(g). There is no authorized representative for affected Supplemental

5

Plan beneficiaries, as the retiree beneficiaries under the plan are all non-union and no Official Committee has been appointed. Accordingly, the Debtors cannot modify the payment of retiree benefits to surviving spouses.

15. Further, section 1114(e)(2) provides "[a]ny payment for retiree benefits required to be made before a plan [is] confirmed … has the status of an allowed administrative expense." Accordingly, spouses should be awarded an administrative expense for monthly payments the Debtors have failed to make since the petition date.

## III. A RETIREE COMMITTEE SHOULD BE APPOINTED

16. Section 1114(d) provides that this Court, on motion by a party in interest, "shall order the appointment of a committee of retired employees if the debtor seeks to modify or not pay retiree benefits <u>or</u> if the court otherwise determines that it is appropriate, to serve as the authorized representative … of those persons receiving any retiree benefits not covered by a collective bargaining agreement."

17. Each requirement of section 1114(d) is satisfied. Avaya is not paying retiree benefits to surviving spouses. Moreover, representation is appropriate because Avaya has made clear it plans to discharge its debts to surviving spouses under the Supplemental Plan pursuant to its chapter 11 plan. In addition, surviving spouses' death benefits are not covered by a collective bargaining agreement, as their retiree spouses were all non-union.

18. An Official Committee is badly needed to ensure that surviving spouses' death benefits (and any other retiree benefits) are not modified by any chapter 11 plan, or alternatively, to negotiate the modification of retiree benefits pursuant to section 1114(f)-(g).

**<u>NOTICE</u>**

19. Notice of this motion has been given by e-mail to all persons on the Master Service List, including the Office of the United States Trustee.

6

20.     No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, movant requests an order (1) (a) determining that monthly payments to surviving spouse beneficiaries under the Supplemental Plan are "retiree benefits," (b) compelling the immediate reinstatement of monthly payments to surviving spouse beneficiaries under the Supplemental Plan, (c) directing that monthly payments to surviving spouse beneficiaries that have accrued during Avaya's chapter 11 case be afforded administrative priority and paid, and (d) appointing an Official Committee, and (2) granting such other and further relief as this Court deems just and proper.

Dated: May 5, 2017
        New York, New York

STORCH AMINI PC

/s/ Jeffrey Chubak
Jeffrey Chubak
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Marlene Clark*

7

A-008

# EXHIBIT 1

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AVAYA INC., *et al.*,[1] | Case No. 17-10089-smb |
| Debtors. | Jointly Administered |

### ORDER DETERMINING SURVIVORSHIP BENEFITS UNDER SUPPLEMENTAL PLAN ARE "RETIREE BENEFITS" UNDER BANKRUPTCY CODE SECTION 1114(a), COMPELLING COMPLIANCE WITH SECTION 1114(e), AND APPOINTING AN OFFICIAL COMMITTEE UNDER SECTION 1114(d)

Upon Marlene Clark's motion[2] of for an order (1) determining that monthly payments to surviving spouse beneficiaries under the Supplemental Plan are "retiree benefits" under Bankruptcy Code section 1114(a), (2) compelling the immediate reinstatement of monthly payments to surviving spouse beneficiaries under the Supplemental Plan pursuant to section 1114(e)(1), (3) directing that monthly payments to surviving spouse beneficiaries that have accrued during Avaya's chapter 11 case be afforded administrative priority pursuant to section 1114(e)(2) and paid, and (4) appointing an Official Committee pursuant to section 1114(d); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this being a core proceeding under 28 U.S.C. § 157(b)(2); and due and proper notice of the motion having been provided; and after due deliberation and good cause appearing therefore,

IT IS HEREBY FOUND AND DETERMINED:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax ID number, are: Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9828); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229). Their address is: 4655 Great America Parkway, Santa Clara, California 95054.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the motion.

A.      Monthly payments to surviving spouse beneficiaries under the Supplemental Plan are "retiree benefits" under section 1114(a).

NOW THEREFORE, IT IS HEREBY ORDERED:

1.      The motion is granted as set forth herein.

2.      Avaya shall immediately reinstate monthly payments to surviving spouse beneficiaries under the Supplemental Plan pursuant to section 1114(e)(1).

3.      Monthly payments to surviving spouse beneficiaries under the Supplemental Plan that have accrued during Avaya's case are hereby afforded administrative priority pursuant to section 1114(e)(2), and Avaya shall promptly pay the same.

4.      The United States Trustee shall promptly appoint an Official Committee pursuant to section 1114(d).

5.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this order.

Dated: _____, 2017
          New York, New York

                                                    _____
                                                    Honorable Stuart M. Bernstein
                                                    United States Bankruptcy Judge

A-011

# EXHIBIT 2

## Supplemental Plan

# AVAYA INC.
# SUPPLEMENTAL PENSION PLAN

(as amended and restated effective January 1, 2009)

# AVAYA SUPPLEMENTAL PENSION PLAN
## Table of Contents

| | | |
|---|---|---|
| **ARTICLE 1** | | 1 |
| | | |
| **ARTICLE 2** | | 1 |
| | | |
| 2.1. | 409A DISABILITY | 2 |
| 2.2. | ACCOUNT BALANCE PROGRAM | 2 |
| 2.3. | ADMINISTRATOR | 2 |
| 2.4. | AFFILIATED CORPORATION | 2 |
| 2.5. | ANNUAL BASIC PAY | 2 |
| 2.6. | AVAYA INDIVIDUAL | 3 |
| 2.7. | BENEFIT LIMIT | 3 |
| 2.8. | BENEFIT SERVICE | 3 |
| 2.9. | BOARD | 3 |
| 2.10. | CODE | 3 |
| 2.11. | COMMITTEE | 3 |
| 2.12. | COMPANY | 3 |
| 2.13. | COMPENSATION | 4 |
| 2.14. | COMPENSATION LIMIT | 4 |
| 2.15. | DEFERRED AMOUNT | 4 |
| 2.16. | DEFERRED COMPENSATION PLAN | 4 |
| 2.17. | DISABILITY OR DISABLED | 4 |
| 2.18. | DISTRIBUTION EVENT | 4 |
| 2.19. | ERISA | 4 |
| 2.20. | GRANDFATHERED BENEFIT | 4 |
| 2.21. | INTERCHANGE AGREEMENT | 4 |
| 2.22. | INTERCHANGE COMPANY | 5 |
| 2.23. | LAWFUL SPOUSE | 5 |
| 2.24. | LONG TERM PLAN | 5 |
| 2.25. | NON-GRANDFATHERED BENEFIT | 5 |
| 2.26. | NORMAL RETIREMENT AGE | 5 |
| 2.27. | OFFICER | 5 |
| 2.28. | PARTICIPANT | 5 |
| 2.29. | PARTICIPATING COMPANY | 5 |
| 2.30. | PENSION PLAN | 6 |
| 2.31. | PLAN | 6 |
| 2.32. | QUALIFIED PLAN | 6 |
| 2.33. | SALARIED PENSION PLAN | 6 |
| 2.34. | SEPARATION FROM SERVICE | 6 |
| 2.35. | SERVICE BASED PROGRAM | 6 |
| 2.36. | SHORT TERM AWARD | 6 |
| 2.37. | SUBSIDIARY | 7 |
| 2.38. | SURVIVING SPOUSE | 7 |
| 2.39. | TERM OF EMPLOYMENT | 7 |
| | | |
| **ARTICLE 3** | | 7 |
| | | |
| 3.1. | PARTICIPATION | 7 |
| 3.2. | AMOUNT OF EXCESS RETIREMENT BENEFIT | 7 |
| 3.3. | NO SURVIVING SPOUSE OR BENEFICIARY | 8 |
| 3.4. | RELATIONSHIP TO OTHER PLANS | 8 |
| 3.5. | COMMENCEMENT AND FORM OF BENEFITS | 8 |

ARTICLE 4.......................................................................................................................................... 9

    4.1.    PARTICIPATION.......................................................................................................... 9
    4.2.    MINIMUM RETIREMENT BENEFIT .............................................................................. 9
    4.3.    SURVIVOR BENEFIT .................................................................................................. 9
    4.4.    COMMENCEMENT AND FORM OF BENEFITS ............................................................. 10

ARTICLE 5........................................................................................................................................ 10

    5.1.    PARTICIPATION........................................................................................................ 10
    5.2.    CALCULATION OF MID-CAREER PENSION BENEFIT AMOUNT..................................... 11
    5.3.    COMMENCEMENT AND FORM OF BENEFIT ............................................................... 13

ARTICLE 6........................................................................................................................................ 13

    6.1.    DETERMINATION OF BENEFITS ................................................................................ 13
    6.2.    TREATMENT DURING SUBSEQUENT EMPLOYMENT..................................................... 13
    6.3.    INTERCHANGE AGREEMENTS.................................................................................... 13
    6.4.    FORFEITURE OF BENEFITS ....................................................................................... 14

ARTICLE 7........................................................................................................................................ 14

    7.1.    SALE, SPIN-OFF, OR OTHER DISPOSITION OF PARTICIPATING COMPANY...................... 14

ARTICLE 8........................................................................................................................................ 15

    8.1.    SOURCE OF PAYMENTS ........................................................................................... 15
    8.2.    UNFUNDED STATUS ................................................................................................. 15
    8.3.    FIDUCIARY RELATIONSHIP ...................................................................................... 15

ARTICLE 9........................................................................................................................................ 16

    9.1.    ADMINISTRATION ................................................................................................... 16
    9.2.    INDEMNIFICATION .................................................................................................. 16
    9.3.    CLAIMS PROCEDURE............................................................................................... 16
    9.4.    NAMED FIDUCIARIES .............................................................................................. 17
    9.5.    ROLE OF THE COMMITTEE ...................................................................................... 17
    9.6.    ALLOCATION OF RESPONSIBILITIES ........................................................................ 17
    9.7.    MULTIPLE CAPACITIES ........................................................................................... 17

ARTICLE 10...................................................................................................................................... 18

    10.1.    AMENDMENT AND TERMINATION ........................................................................... 18

ARTICLE 11...................................................................................................................................... 18

    11.1.    BINDING EFFECT .................................................................................................... 18
    11.2.    NO GUARANTEE OF EMPLOYMENT .......................................................................... 19
    11.3.    TAX WITHHOLDING................................................................................................. 19
    11.4.    ASSIGNMENT OF BENEFITS ..................................................................................... 19
    11.5.    FACILITY OF PAYMENT ........................................................................................... 19
    11.6.    SEVERABILITY ....................................................................................................... 20
    11.7.    PLAN YEAR ........................................................................................................... 20
    11.8.    HEADINGS ............................................................................................................. 20
    11.9.    GOVERNING LAW ................................................................................................... 20
    11.10.    ENTIRE PLAN ......................................................................................................... 20

CHI 11633344.2

A-015

# AVAYA INC.
# SUPPLEMENTAL PENSION PLAN

(as amended and restated effective January 1, 2009)

## Article 1
## Introduction and Purpose

The Avaya Inc. Supplemental Pension Plan (the "Plan") is intended to constitute both (i) an unfunded "excess benefit plan" as defined in ERISA § 3(36), and (ii) an unfunded plan primarily for the purpose of providing deferred compensation and pension benefits for a select group of management or highly compensated employees for purposes of Title I of the Employee Retirement Income Security Act of 1974, as amended.

The Plan is intended to reward participants who have provided the Company with dedicated service during their employment and who, after termination of employment with the Company, continue to acknowledge a duty of loyalty to the Company and refrain from engaging in activities that are in conflict with or adverse to the interests of the Company. Such restrictions are necessary and reasonable to protect the Company's highly confidential and proprietary information, valuable goodwill, customer relationships and competitive position.

The Plan is a successor to the Lucent Technologies Inc. Supplemental Pension Plan in effect as of September 30, 2000 with respect to Avaya Individuals (as defined in Article 2). The Plan assumed and is solely responsible for all liabilities as of September 30, 2000 relating to Avaya Individuals. Accordingly, the Plan recognizes such service and compensation as of September 30, 2000 with respect to Avaya Individuals as would be recognized by the Lucent Technologies Inc. Supplemental Pension Plan in effect as of September 30, 2000. To the extent that the Plan refers to dates, events, agreements, elections, or designations before October 1, 2000 relating to Avaya Individuals, such dates, events, agreements, elections, and designations shall be recognized as if Avaya Inc. and the Plan were in existence at the applicable time.

Participation in the Mid-Career Pension Benefit shall be limited to those individuals categorized by the Company as Participants and Employees, within the meaning of Article 5, as of December 31, 2000.

Effective January 1, 2004, the Excess Pension Benefit and the Mid-Career Pension Benefit were frozen, and the Minimum Retirement and Survivor Benefits in Article 4 were eliminated.

## Article 2
## Definitions

Unless the context clearly indicates otherwise, the following terms have the meanings described below when used in this Plan and references to a particular Article or Section shall mean the Article or Section so delineated in this Plan. If a term is not described below, it shall have the meaning ascribed to it under the applicable Qualified Plan.

## 2.1. 409A Disability

"409A Disability" means a permanent incapacitation that results in the Participant being determined to be disabled and granted disability benefits under Title II of the Social Security Act. The effective date of a Participant's Disability shall be the date on which he or she is determined to be disabled under the Social Security Act without regard to any retroactive period of benefit payments awarded under the Social Security Act.

## 2.2. Account Balance Program

The Account Balance Program under the Salaried Pension Plan.

## 2.3. Administrator

The Pension Plan Administrator under the Salaried Pension Plan, or such other person or entity designated by the Company.

## 2.4. Affiliated Corporation

Any corporation of which more than 50 percent of the voting stock is owned directly or indirectly by the Company.

## 2.5. Annual Basic Pay

The annual base salary rate on the last day the Participant was on the active payroll plus an amount determined with reference to the Short Term Plan as described in the following sentence, but excluding (i) all differentials regarded as temporary or extra payments and (ii) all awards and distributions under the Long Term Plan. For purposes of determining the Minimum Retirement and Survivor Benefit, the amounts determined with reference to the Short Term Plan shall be:

Before January 1, 2002, the Participant's Target Award, as determined under the Short Term Plan, in effect at the time of the Participant's retirement, termination of employment or death; and after December 31, 2001, the last two Short Term Awards based on the following schedule regardless of whether those awards are paid before or after termination:

| MONTH OF TERMINATION | PAYMENT EFFECTIVE DATE | |
|---|---|---|
| | AWARD 1 | Award 2 |
| January | June before termination | December before termination |
| February | June before termination | December before termination |
| March | June before termination | December before termination |
| April | December before termination | June after termination |
| May | December before termination | June after termination |
| June | December before termination | June of termination |
| July | December before termination | June before termination |
| August | December before termination | June before termination |

-2-

| | PAYMENT EFFECTIVE DATE | |
|---|---|---|
| MONTH OF TERMINATION | AWARD 1 | Award 2 |
| September | December before termination | June before termination |
| October | June before termination | December after termination |
| November | June before termination | December after termination |
| December | June before termination | December of termination |

## 2.6. Avaya Individual

An "Avaya Individual" within the meaning of the Employee Benefits Agreement dated as of September 30, 2000, between Lucent and the Company; provided, however that the following groups of individuals will not be Avaya Individuals for purposes of this Plan: (i) employees or former employees of Lucent who terminated their employment with Lucent on or before September 30, 2000 pursuant to the Lucent Technologies-U.S. Services Voluntary Termination Pay Offer made on August 11, 2000 and (ii) employees or former employees of Lucent who terminated their employment with Lucent on or before September 30, 2000 pursuant to the Lucent Technologies-Material Logistics Organization Voluntary Pay Offer made in September, 2000.

## 2.7. Benefit Limit

The maximum benefit payable to a Participant under the Qualified Plan in accordance with Code §§ 415(b), but after application of the Compensation Limit.

## 2.8. Benefit Service

"Benefit Service" shall have the meaning set forth in the Salaried Pension Plan.

## 2.9. Board

The Board of Directors of the Company.

## 2.10. Code

The Internal Revenue Code of 1986, as amended from time to time. Any reference to a particular section of Code includes any applicable regulations promulgated under that section.

## 2.11. Committee

The Avaya Employee Benefits Committee.

## 2.12. Company

Avaya Inc., a Delaware Corporation, or its successor.

-3-

## 2.13. Compensation

"Compensation" shall have the meaning set forth in the applicable Qualified Plan modified as set forth in this Plan.

## 2.14. Compensation Limit

The maximum amount of annual compensation under Code § 401(a)(17) that may be taken into account in any Plan Year for benefit accrual purposes under the Qualified Plan.

## 2.15. Deferred Amount

Any salary or Short Term Award deferred by the Participant under the Deferred Compensation Plan before January 1, 2004. A Deferred Amount shall be determined as of the date the amount would have been paid but for the deferral under the Deferred Compensation Plan, not when the amount is actually paid to the Participant.

## 2.16. Deferred Compensation Plan

The Lucent Technologies Inc. Deferred Compensation Plan and any successor thereto.

## 2.17. Disability or Disabled

"Disability" or "Disabled" shall have the meaning set forth in the Avaya Long Term Disability Plan for Salaried Employees.

## 2.18. Distribution Event

"Distribution Event" means the earliest of a Participant's Separation from Service, 409A Disability or death.

## 2.19. ERISA

The Employee Retirement Income Security Act of 1974, as amended from time to time. Any reference to a particular section of ERISA includes any applicable regulations promulgated under that section.

## 2.20. Grandfathered Benefit

The actuarial equivalent present value of the vested Excess Retirement Benefit Minimum Retirement or Survivor Benefit, or Mid-Career Pension Benefit such Participant would have been entitled to receive if he or she terminated employment on December 31, 2004. For this purpose, actuarial equivalence and present value shall be determined using the appropriate actuarial assumptions and methods provided under the applicable Qualified Plan.

## 2.21. Interchange Agreement

An "Interchange Agreement" within the meaning of the applicable Qualified Plan and shall include the Mandatory Portability Agreement. The Mandatory Portability Agreement,

-4-

effective January 1, 1985, between and among AT&T, Former Affiliates and certain other companies and which, in accordance with section 559 of the Tax Reform Act of 1984, provides for the mutual recognition of service credit and the transfer of benefit obligations for specified employees who terminate employment with one company signatory to such agreement and subsequently commence employment with another company signatory to such agreement.

## 2.22. Interchange Company

An "Interchange Company" within the meaning of the applicable Qualified Plan and Interchange Agreement.

## 2.23. Lawful Spouse

A person who is recognized as the lawful husband or lawful wife of a Participant for federal income tax purposes.

## 2.24. Long Term Plan

The Avaya Inc. Long Term Incentive Program, any predecessor thereto, and any other Avaya stock option plan sponsored as a result of a merger or acquisition.

## 2.25. Non-Grandfathered Benefit

A Participant's Excess Retirement Benefit, Minimum Retirement or Survivor Benefit, or Mid-Career Pension Benefit in excess of his or her Grandfathered Benefit.

## 2.26. Normal Retirement Age

"Normal Retirement Age" shall have the meaning set forth in the applicable Qualified Plan.

## 2.27. Officer

An employee of a Participating Company who is a member of the Executive Committee of the Company (or any successor to such body), except that no employee who is assigned to such a position on a temporary basis after being notified in writing of the temporary status of such assignment shall be an "Officer" for any purpose under this Plan.

## 2.28. Participant

An individual who qualifies for an Excess Retirement Benefit, a Minimum Retirement or a Survivor Benefit, or a Mid-Career Pension Benefit.

## 2.29. Participating Company

The Company and each of its subsidiaries that is a Participating Company for purposes of the applicable Qualified Plan.

-5-

### 2.30. Pension Plan

The Avaya Pension Plan, as amended from time to time.

### 2.31. Plan

This Avaya Supplemental Pension Plan.

### 2.32. Qualified Plan

For each Participant, the Pension Plan or Salaried Pension Plan, as the case may be, under which the Participant is entitled to a benefit.

### 2.33. Salaried Pension Plan

The Avaya Pension Plan for Salaried Employees, as amended from time to time, including the Service Based Program and the Account Balance Program thereunder.

### 2.34. Separation from Service

"Separation from Service" means the Participant ceases to perform services for the Company and all Affiliated Corporations or such services decrease to a level that is 50 percent or less of the average level of services performed by the Participant over the immediately preceding 36-month period. Notwithstanding the foregoing, a Participant is not considered to have a Separation from Service while on a military leave, sick leave or other bona fide leave of absence if the period of such leave does not exceed six months (or longer, if required by statute or contract). If the period of the leave exceeds six months and the Participant's right to reemployment is not provided either by statute or contract, the Participant is deemed to have a Separation from Service on the first date immediately following such six-month period. If the Participant is on a leave of absence due to a medically determinable physical or mental impairment that can be expected to result in death or can be expected to last for a continuous period of not less than six months, where such impairment causes the Participant to be unable to perform the duties of his or her employment (or any substantially similar employment) a twenty-nine month period shall be substituted for the six month period described in this Section.

### 2.35. Service Based Program

The Service Based Program under the Salaried Pension Plan.

### 2.36. Short Term Award

The actual amount awarded (including any Deferred Amount) annually to a Participant pursuant to the Avaya Short Term Incentive Plan or any predecessor short term incentive plans. Notwithstanding any other provision in this paragraph to the contrary, Short Term Awards, for purposes of the Plan, shall not include any amount paid or credited to a Participant in January, 1999.

CH1 11633344.2

A-021

## 2.37. Subsidiary

Any corporation as to which more than 80% of the voting stock is owned directly or indirectly by the Company.

## 2.38. Surviving Spouse

A deceased Participant's surviving Lawful Spouse who is eligible to receive a survivor benefit under the applicable Qualified Plan.

## 2.39. Term of Employment

"Term of Employment" shall have the meaning set forth in the applicable Qualified Plan.

## Article 3
## Excess Retirement Benefit

### 3.1. Participation

"Participant" for purposes of the Excess Retirement Benefit shall mean any individual who is a Participant, Surviving Spouse or beneficiary under a Qualified Plan and whose benefit payable under that plan is limited by the Benefit Limit and/or the Compensation Limit.

### 3.2. Amount of Excess Retirement Benefit

(a)     The Excess Retirement Benefit, if any, of a Participant shall equal the excess of:

(i)     The Participant's pension benefit under the Qualified Plan determined without regard to the Benefit Limit and the Compensation Limit, and including any Deferred Amounts; over

(ii)     The amount of the pension benefit actually payable to such Participant under the Qualified Plan.

(b)     The Excess Retirement Benefit shall be determined based upon the Qualified Plan formula in effect:

(i)     as of the date when benefits are to commence;

(ii)     for benefits payable in the form of an annuity, as of the effective date of any subsequent increases or decreases in the pension benefit under the Qualified Plan as a result of an amendment to the Qualified Plan reflecting a change in the Benefit Limit; or

(iii)     for benefits payable in the form of an annuity, as of the effective date of any special increase in the monthly benefit payable, before application of the Benefit Limit, as a result of amendments to the Qualified Plan.

CH1 11633344.2

A-022

(c)     The amount of the Excess Retirement Benefit shall be reduced in the same manner as the Qualified Plan for (i) early commencement and (ii) the cost of any survivor annuity.

(d)     Notwithstanding the foregoing, for any Participant who is entitled to a Service Based Program benefit and who commences his or her Excess Retirement Benefit after December 31, 2008, such Participant's Excess Retirement Benefit shall be limited to his or her Grandfathered Benefit.

### 3.3.   No Surviving Spouse or Beneficiary

If a Participant dies before his or her benefit commences, the Excess Retirement Benefit shall be paid to the Surviving Spouse or beneficiary entitled to receive a benefit under the Qualified Plan as a result of the Participant's death. If no benefit is payable under the Qualified Plan after the Participant's death, no Excess Retirement Benefit shall be paid with respect to such Participant.

### 3.4.   Relationship To Other Plans

The Excess Retirement Benefit shall be in addition to any other benefits provided, directly or indirectly, to a Participant, Surviving Spouse or beneficiary by any Participating Company. Participation in the Plan shall not preclude or limit the participation of the Participant in any other benefit plan sponsored by a Participating Company for which such Participant would otherwise be eligible. The Excess Retirement Benefit payable to a Participant, Surviving Spouse or beneficiary under this Plan shall not duplicate benefits payable to such Participant, Surviving Spouse or beneficiary under any other plan or arrangement of a Participating Company or any Affiliated Corporation.

### 3.5.   Commencement and Form of Benefits

(a)     Grandfathered Benefits. Any Excess Retirement Benefit that is a Grandfathered Benefit payable to a Participant, Surviving Spouse or beneficiary (i) shall commence at the same time, (ii) shall be paid for as long as and (iii) shall be paid in the same benefit form as the Participant's, Surviving Spouse's or beneficiary's benefits are paid under the applicable Qualified Plan; provided, however, that the Committee shall have the right to approve the Participant's election of the form of the Excess Retirement Benefit under Article 3 payable to the Participant.

(b)     Non-Grandfathered Benefits.  Pursuant to the transition relief provided in Treasury Notice 2006 79 (and subsequent guidance), Section 3.5(a) shall also apply to any Participant who commences his or her Excess Retirement Benefit that is not a Non-Grandfathered Benefit before January 1, 2009. For any Excess Retirement Benefit that is Non-Grandfathered Benefit commencing after December 31, 2008, such benefit shall be paid as an Actuarial Equivalent lump sum in the Calendar Quarter following the Calendar Quarter in which the Distribution Event occurs.

-8-

## Article 4
## Minimum Retirement or Survivor Benefits

### 4.1. Participation

"Participant" for purposes of the Minimum Retirement Benefit shall mean (1) an Officer or a former employee of a Participating Company who was an Officer on the last day of employment, if such individual is retired before January 1, 2004 on a service pension under the Salaried Pension Plan, or (2) an Officer whose Term of Employment has been five years or more, who is not Disabled, and who terminates employment before January 1, 2004 and on or after his or her sixty-second birthday.

"Participant" for purposes of the Survivor Benefit shall mean an Officer, or a former employee of a Participating Company whose last day of employment was before January 1, 2004 and who was an Officer on the last day of employment, if such former employee (1) is Disabled or (2) is eligible to receive a Minimum Retirement Benefit.

No individual shall become a Participant for purposes of the Minimum Retirement or the Survivor Benefits after December 31, 2003.

### 4.2. Minimum Retirement Benefit

A Participant shall be eligible to receive a Minimum Retirement Benefit in the form of a single life annuity, equal to one-twelfth of 15 percent of the Participant's Annual Basic Pay on the last day the Participant was on the active payroll.

A Participant's Minimum Retirement Benefit shall not be reduced for early commencement in the same manner as the Qualified Plan benefit.

A Participant's Minimum Retirement Benefit shall be off-set by the following benefits received by the Participant: the pension under the applicable Qualified Plan, an Excess Retirement Benefit, a Mid-Career Pension Benefit, and by any other retirement income payments received by the Participant from his or her Participating Company or from a Successor or Predecessor Plan Sponsor. No offset, however, shall be made at a rate greater than the rate of the Participant's Qualified Plan benefit on the date the Participant first received such pension after his or her retirement or other termination of employment, or at a rate greater than the Participant's account of an Excess Retirement Benefit or Mid-Career Pension Benefit as of first date the Participant was entitled to receive such benefit after his or her retirement or other termination of employment.

### 4.3. Survivor Benefit

In the event of the death of a Participant before December 31, 2003, the Surviving Spouse of such Participant shall be eligible to receive a Survivor Benefit in the form of single life annuity equal to one-twelfth of 15 percent of the Participant's Annual Basic Pay on the last day the Participant was on the active payroll before his or her death. No Survivor Benefit shall be paid with respect to a Participant who dies after December 31, 2003.

-9-

The Survivor Benefit shall not be reduced to reflect early commencement.

The Surviving Spouse benefit shall be off-set by the following benefits received by the Participant's Surviving Spouse on account of the death of the Participant: a pension under the applicable Qualified Plan, an Excess Retirement Benefit, and any other lifetime payments to such Surviving Spouse from the Participant's Participating Company or from any Successor Plan Sponsor. No offset, however, shall be made for the pension under the Qualified Plan or the Excess Retirement Benefit at a rate greater than (1) the rate of such pension or annuity on the date such pension or annuity was first payable in the case of the death of a Participant who is on the active payroll or (2) the rate of such pension or annuity on the date such pension or annuity first would have been payable had the Participant died on the day after the last day the Participant was on the active payroll in the case of the death of a Participant who is not on the active payroll.

## 4.4. Commencement and Form of Benefits

Any Minimum Retirement or Survivor Benefit payable to a Participant or Surviving Spouse (i) shall commence at the same time as the Participant's or Surviving Spouse's or beneficiary's benefits under the applicable Qualified Plan and (ii) shall be paid as a single life annuity. All Minimum Retirement and Survivor Benefits are Grandfathered Benefits.

# Article 5
# Mid-Career Pension Benefit

## 5.1. Participation

An individual is a Participant for purposes of the Mid-Career Pension Benefit if (a) the individual was hired or rehired by a Participating Company on or before July 16, 1997 and at age 35 or older, and (b) the individual was hired or rehired by a Participating Company at Director level or above, and (c) the individual's Term of Employment includes at least one year of continuous employment for a Participating Company at Director level or above, provided, however, that if an individual was hired or rehired by a Participating Company on or after November 18, 1981, such continuous employment was on a full-time basis (as classified by the Company), and (d) the individual is employed at Vice President level or above on December 31, 2000 and at the time of termination of employment. Notwithstanding the foregoing, "Participant" shall be limited to Participants identified in the records of the Company as of December 31, 2000.

"Vice President level," formerly Executive level, E-Level, E-band, Fifth level and SG-12 through SG-14, shall mean the level directly above Director level, formerly D-band, or any equivalent salary grade or level as determined by the Company in its sole discretion.

"Employee" shall mean for purposes of the Mid-Career Pension Benefit a Participant, as defined above, (a) who was hired or rehired on or after November 18, 1981, and (b) who has completed a term of employment of at least five years, classified by the Company as full-time, for one or more Participating Companies at Vice President level or above, before the last day of

-10-

CHI 11633344.2

A-025

the month in which he or she reaches Normal Retirement Age. Notwithstanding the foregoing, unless approved by the Board, or its delegate, an individual is not an Employee if:

(a)     the individual was ineligible to participate in this Plan because he or she was hired before age 35 and/or he or she was hired below Director level, terminated employment with a Participating Company, and is rehired by a Participating Company within one year of his or her termination of employment;

(b)     the individual terminates employment with a company with which a Participating Company has an Interchange Agreement, and is hired by a Participating Company within one year of termination of employment, if the individual has not waived coverage pursuant to the terms of the applicable Interchange Agreement;

(c)     the individual terminates employment with a company in which a Participating Company has an ownership interest, and is hired or rehired by a Participating Company within one year of termination of employment, unless he or she was a Participant in the Plan before employment with the Avaya non-Controlled Group company or the nonparticipating Controlled Group company; or

(d)     the individual is employed by a company which is acquired by a Participating Company.

## 5.2.   Calculation of Mid-Career Pension Benefit Amount

(a)     Transition Formula: If the Employee's Salaried Pension Plan benefit is calculated under the Transition Formula, the single life annuity annual benefit amount will equal:

$$A \times B \times C.$$

(b)     Current Formula: If the Employee's Salaried Pension Plan benefit is calculated under the Current Formula, the single life annuity annual benefit amount will equal:

$$A \times B \times (((C \times E) + D) \div F).$$

(c)     Definitions.

$A =$     Mid-Career Pension Credits;

$B =$     One-half of the Base Formula Multiplier;

$C =$     Average Base Period Compensation;

$D =$     Post-Base Period Compensation

$E =$     Term of Employment through end of Base Period

$F =$     Benefit Service

      (i)     "Mid-Career Pension Credits" is defined as:

-11-

        (A)    For those Employees whose entire Term of Employment is at Vice President level or above, Mid-Career Pension Credits equal the difference between 35 years and the Benefit Service that the Employee could accrue if he or she worked to the later of Normal Retirement Age, retirement or termination of employment. In no event shall the Mid-Career Pension Credits exceed the Employee's actual Benefit Service or include any part-time service if the Employee was hired by the Company on or after November 18, 1981.

        (B)    For those Employees whose Term of Employment includes service at Director level or below, Mid-Career Pension Credits equal the product of the employee's Mid-Career Pension Credits as defined in (A) above, multiplied by a fraction, the numerator of which is the number of years and months of service completed with a Participating Company at Vice President level and above, and the denominator of which is the Employee's actual Benefit Service. Notwithstanding the foregoing, for any Transferred Individual on the active roll of AT&T as of August 29, 1991, his or her benefit under this Plan shall equal the greater of the benefit calculated under the definition of Mid-Career Pension Credits in this subsection (B) or the benefit accrued under a predecessor plan as of August 29, 1991.

        (ii)    "Base Formula Multiplier" means the numerical percentage which is multiplied by the Employee's average annual Compensation for the Base Period when the Employee's accrued pension benefit is calculated under the Salaried Pension Plan.

        (iii)    "Base Period" shall mean the pay base averaging period used to calculate the Employee's benefit under the Salaried Pension Plan.

        (iv)    "Average Base Period Compensation" shall mean the Employee's average annual Compensation for the Base Period used when calculating the Employee's accrued benefit under the Salaried Pension Plan, except that for this purpose, the Compensation Limit shall be disregarded and any Deferred Amounts shall be included in Compensation for this purpose.

        (v)    "Post-Base Period Compensation" shall mean the Employee's Compensation after the Base Period and before January 1, 2004 used when calculating the Employee's accrued benefit under the Salaried Pension Plan, except that for this purpose, the Compensation Limit shall be disregarded and the amount of any Deferred Amounts shall be included in Compensation for this purpose.

        (d)    Early Commencement. The Mid-Career Benefit shall not be reduced for early commencement.

-12-

## 5.3. Commencement and Form of Benefit

Any Mid-Career Benefit payable to a Participant (i) shall commence at the same time as the Participant's benefits are paid under the applicable Qualified Plan and (ii) shall be paid as a single life annuity. All Mid-Career Benefits are Grandfathered Benefits.

## Article 6
## Benefit Payments

## 6.1. Determination of Benefits

Benefit payments shall be calculated in accordance with the rules, procedures, and assumptions used under the applicable Qualified Plan. Thus, whenever it is necessary to determine whether one benefit is less than, equal to, or larger than another, or to determine the equivalent actuarial value of any benefit, whether or not such form of benefit is provided under this Plan, such determination shall be made, at the Administrator's discretion, by the Company's enrolled actuary, using mortality, interest and other assumptions normally used at that time in determining actuarial equivalence under the applicable Qualified Plan.

## 6.2. Treatment During Subsequent Employment

Notwithstanding any other provision of the Plan, a Participant's employment or reemployment with any Participating Company or with any Interchange Company (if the Participant is covered by the applicable Interchange Agreement and has not waived coverage pursuant to the terms of the Interchange Agreement) subsequent to retirement or termination of employment with entitlement to a benefit under the Plan shall result in the permanent suspension of payment of such benefit to the Participant for the period of such employment or reemployment to the extent and in a manner consistent with the terms and conditions applicable to the suspension of benefit payments under the applicable Qualified Plan. A Participant's benefit shall recommence simultaneously with the recommencement of his or her benefits under the applicable Qualified Plan. The amount of the Participant's benefit upon recommencement shall be adjusted to reflect adjustments, if any, in the amount of the Participant's pension benefit under the applicable Qualified Plan resulting from the period of reemployment. Following recommencement of payment, the Participant, Surviving Spouse or designated beneficiary shall not be eligible to receive any benefit payments that would otherwise have been payable but for the suspension.

## 6.3. Interchange Agreements

A Participant shall forfeit his or her rights to a benefit under the Plan (including the rights of the Participant's Surviving Spouse and beneficiaries to a benefit under this Plan) if (i) the Participant is employed by an "Interchange Company," as that term is defined under the applicable Interchange Agreement, subsequent to retirement or termination of employment from the Company, its subsidiaries or any Affiliated Corporation, (ii) the Participant is covered under the terms and conditions of the applicable Interchange Agreement, and (iii) assets and liabilities are transferred from the applicable Qualified Plan to a qualified plan sponsored by the Interchange Company for the Participant.

-13-

CHI 11633344.2

## 6.4. Forfeiture of Benefits

Notwithstanding any eligibility or entitlement to benefits of a Participant arising or conferred under any other provision or paragraph of this Plan, all benefits for which a Participant would otherwise be eligible hereunder shall be forfeited under the following circumstances:

(a)    the Participant is discharged by a Participating Company for cause. For purposes of this Plan, cause shall mean:

(i)    the Participant's conviction (including a plea of guilty or nolo contendere) of a felony or any crime of theft, dishonesty or moral turpitude;

(ii)    gross omission or gross dereliction of any statutory or common law duty of loyalty to the Company; or

(iii)    violation of Avaya's Business Guideposts – the Company's Code of Conduct.

(b)    determination by the Board or its delegate that the Participant engaged in misconduct in connection with the Participant's employment with a Participating Company or with any other entity of which the Company has an ownership interest; or

(c)    the Participant without the Company's consent both during and after termination of employment for any reason, on behalf of any competitor of the Company (A) renders any service relating to (1) strategic planning, research and development, manufacturing, marketing, or selling with respect to any product, process, material or service which resembles, competes with, or is the same as a product, process, material or service of the Company about which such Participant gained any proprietary or confidential information or on which such Participant worked before his or her termination of employment, or (2) any actual or potential customer of the Company about whom the Participant gained any proprietary or confidential knowledge or with whom such Participant worked before his termination of employment; and (B) solicits or offers, or induces or encourages others to solicit or offer, employment to any employee of the Company, provided, however, that the portion of the Excess Retirement Benefit accrued before December 31, 1997 shall not be subject to the provisions of this Section.

## Article 7
## Disposition of Participating Company

## 7.1. Sale, Spin-Off, or Other Disposition of Participating Company

Subject to Section 10.1, in the event the Company sells, spins off, or otherwise disposes of a Subsidiary or an Affiliated Corporation, or disposes of all or substantially all of the assets of a Subsidiary or an Affiliated Corporation such that one or more Participants terminate employment for the purpose of accepting employment with the purchaser of such stock or assets, any person employed by such Subsidiary or Affiliated Corporation who ceases to be an employee as a result of the sale, spin-off, or disposition shall be deemed to have terminated his or her employment with a Participating Company and be eligible for a benefit under this Plan

-14-

CHI 11633344.2

A-029

commencing at the same time as his or her benefit, if any, commences under the applicable Qualified Plan.

Notwithstanding the foregoing provisions of this Section, and subject to Section 10.1, if, as part of the sale, spin-off, or other disposition of the stock or assets of a Subsidiary or Affiliated Corporation, the Subsidiary or Affiliated Corporation, its successor owner, or any other party agrees in writing to assume the liability for the payment of any of the benefits under this Plan to which the Participant, Surviving Spouse and/or designated beneficiary would have been entitled under the Plan but for such sale, spin-off, or other disposition, then the entitlement of the Participant, his or her Surviving Spouse or beneficiary to any such benefits under this Plan shall terminate. Any subsequent entitlement of the former Participant, his or her Surviving Spouse or beneficiary to such benefits shall be the sole responsibility of the assuming party.

## Article 8
## Source of Payment

### 8.1. Source of Payments

Benefits arising under this Plan and all costs, charges, and expenses relating thereto will be payable from the Company's general assets. The Company may, however, establish a trust to pay such benefits and related expenses, provided such trust does not cause the Plan to be "funded" within the meaning of ERISA. To the extent trust assets are available, they may be used to pay benefits arising under this Plan and all costs, charges, and expenses relating thereto. To the extent that the funds held in the trust, if any, are insufficient to pay such benefits, costs, charges and expenses, the Company shall pay such benefits, costs, charges, and expenses from its general assets.

### 8.2. Unfunded Status

The Plan at all times shall be entirely unfunded for purposes of the Code and ERISA and no provision shall at any time be made with respect to segregating any assets of a Participating Company for payment of any benefits hereunder. Funds that may be invested through a trust described in Section 8.1 shall continue for all purposes to be part of the general assets of the Participating Company. The Plan constitutes a mere promise by the Company and the Participating Companies to make benefit payments, if any, in the future. No Participant, Surviving Spouse, beneficiary or any other person shall have any interest in any particular assets of a Participating Company by reason of the right to receive a benefit under the Plan and to the extent the Participant, Surviving Spouse, beneficiary or any other person acquires a right to receive benefits under this Plan, such right shall be no greater than the right of any unsecured general creditor of a Participating Company.

### 8.3. Fiduciary Relationship

Nothing contained in the Plan, and no action taken pursuant to the provisions of the Plan, shall create or be construed to create a trust or a fiduciary relationship between or among the Company, any other Participating Company, the Board, the Administrator, the Committee, any

-15-

A-030

Participant, any Surviving Spouse, beneficiary or any other person, except as provided in Section 9.4.

## Article 9
## Administration of the Plan

### 9.1. Administration

The Company shall be the "plan administrator" of the Plan as that term is defined in ERISA.

### 9.2. Indemnification

Neither the Administrator, any member of the Board or of the Committee, nor each other officer to whom any duty or power relating to the administration or interpretation of the Plan may be allocated or delegated, shall be personally liable by reason of any contract or other instrument executed by such individual or on his or her behalf in his or her capacity as the Administrator or as a member of the Board or of the Committee, nor for any mistake of judgment made in good faith, and the Company shall indemnify and hold harmless the Administrator, each member of the Board, each member of the Committee, and each other employee or officer to whom any duty or power relating to the administration or interpretation of the Plan may be allocated or delegated, against any cost or expense (including attorneys' fees) or liability (including any sum paid in settlement of a claim) arising out of any act or omission to act in connection with the Plan unless arising out of such person's own fraud or bad faith.

### 9.3. Claims Procedure

All claims for benefit payments under the Plan shall be submitted in writing by the Participant, Surviving Spouse, Beneficiaries, or any individual duly authorized by them (Claimant for purposes of this Section), to the Administrator. The Administrator shall notify the Claimant in writing within 90 days after receipt as to whether the claim has been granted or denied. This period may be extended for up to an additional 90 days in unusual cases provided that written notice of the extension is furnished to the Claimant before the commencement of the extension. In the event the claim is denied, such notice shall (i) set forth the specific reasons for denial, (ii) make reference to the pertinent Plan provisions on which the denial is based, (iii) describe any additional material or information necessary before the Claimant's request may be acted upon, and (iv) explain the procedure for appealing the adverse determination.

Any Claimant whose claim for benefits has been denied, in whole or in part, may, within 60 days of receipt of any adverse benefit determination, appeal such denial to the Committee. All appeals shall be in the form of a written statement and shall (i) set forth all of the reasons in support of favorable action on the appeal, (ii) identify those provisions of the Plan upon which the Claimant is relying, and (iii) include copies of any other documents or materials which may support favorable consideration of the claim. The Committee shall decide the issues presented within 60 days after receipt of such request, but this period may be extended for up to an additional 60 days in unusual cases provided that written notice of the extension is furnished to the Claimant before the commencement of the extension. The decision of the Committee shall be set forth in writing,

-16-

include specific reasons for the decision, refer to pertinent Plan provisions on which the decision
is based, and shall be final and binding on all persons affected thereby.

The Committee shall serve as the final review committee, under the Plan and ERISA, for the
review of all appeals by Claimants whose initial claims for benefits have been denied, in whole
or in part, by the Administrator. The Committee shall have the authority to determine
conclusively for all parties any and all questions arising from administration of the Plan, and
shall have sole and complete discretionary authority and control to manage the operation and
administration of the Plan, including, but not limited to, authorizing disbursements according to
the Plan, the determination of all questions relating to eligibility for participation and benefits,
interpretation of all Plan provisions, determination of the amount and kind of benefits payable to
any Participant, Surviving Spouse or Beneficiary, and the construction of disputed and doubtful
terms. Such decisions by the Committee shall be conclusive and binding on all parties and not
subject to further review.

## 9.4.   Named Fiduciaries

The Committee and the Administrator are each a named fiduciary as that term is used in
ERISA with respect to the particular duties and responsibilities herein provided to be allocated to
each of them.

## 9.5.   Role of the Committee

The Committee shall have the specific powers elsewhere herein granted to it and shall
have such other powers as may be necessary in order to enable it to administer the Plan, except
for powers herein granted or provided to be granted to others.

The procedures for the adoption of by-laws and rules of procedure and for the
employment of a secretary and assistants shall be the same as are set forth in the Salaried
Pension Plan or the Pension Plan.

## 9.6.   Allocation of Responsibilities

The Committee may allocate responsibilities for the operation and administration of the
Plan consistent with the Plan's terms, including allocation of responsibilities to the Plan
Administrator. The Committee and other named fiduciaries may designate in writing other
persons to carry out their respective responsibilities under the Plan, and may employ persons to
advise them with regard to any such responsibilities.

## 9.7.   Multiple Capacities

Any person or group of persons may serve in more than one fiduciary capacity with
respect to the Plan.

-17-

## Article 10
## Amendment and Termination

### 10.1.  Amendment and Termination

(a)     The Board or its delegate (acting pursuant to the Board's delegations of authority then in effect) may from time to time amend, suspend, or terminate the Plan at any time. Plan amendments may include, but are not limited to, elimination or reduction in the level or type of benefits provided prospectively to any class or classes of Participants (and any Surviving Spouse or beneficiary). Any and all Plan amendments may be made without the consent of any Participant, Surviving Spouse or beneficiary. Notwithstanding the foregoing, no such amendment, suspension, or termination shall retroactively impair or otherwise adversely affect the rights of any Participant, Surviving Spouse, beneficiary or other person to benefits accrued under the Plan or any Qualified Plan before the date of such action.

(b)     Upon termination of the Plan, Participant benefits may be immediately distributed if the following conditions are met:

(i)     all deferred compensation plans of the same type as the Plan (within the meaning of, and as determined in accordance with, Code Section 409A and the Treasury Regulations thereunder) sponsored by the Company for each Participant covered by such plans are terminated;

(ii)     payment is made no earlier than 12 months and no later than 24 months following the date of the termination of the Plan; and

(iii)     no new deferred compensation plan of the same type as the Plan (within the meaning of, and as determined in accordance with, Code Section 409A and the Treasury Regulations thereunder) is established by the Company for any Participant within five years following the date of the termination of the Plan.

(c)     Notwithstanding the foregoing, distributions due to the termination of the Plan shall only be made in accordance with regulations promulgated by the Department of Treasury under Code Section 409A.

## Article 11
## General Provisions

### 11.1.  Binding Effect

The Plan shall be binding upon and inure to the benefit of each Participating Company and its successors and assigns, and to each Participant, his or her successors, designees, beneficiaries, designated annuitants, and estate. The Plan shall also be binding upon any successor corporation or organization succeeding to substantially all of the assets and business of the Company. Nothing in the Plan shall preclude the Company from merging or consolidating into or with, or transferring all or substantially all of its assets to, another corporation which assumes the Plan and all obligations of the Company hereunder. The Company agrees that it will

-18-

A-033

make appropriate provision for the preservation of the rights of Participants, Surviving Spouses and beneficiaries under the Plan in any agreement or plan or reorganization into which it may enter to effect any merger, consolidation, reorganization, or transfer of assets. Upon such a merger, consolidation, reorganization, or transfer of assets, the term "Participating Company" shall refer to such other corporation and the Plan shall continue in full force and effect.

## 11.2. No Guarantee of Employment

Neither the Plan nor any action taken hereunder shall be construed as (i) a contract of employment or deemed to give any Participant the right to be retained in the employment of a Participating Company, the right to any level of compensation, or the right to future participation in the Plan; or (ii) affecting the right of a Participating Company to discharge or dismiss any Participant at any time.

## 11.3. Tax Withholding

The Company or a Participating Company, as applicable, shall withhold all federal, state, local, or other taxes required by law to be withheld from all benefit payments under the Plan. To the extent that benefits hereunder are subject to tax under the Federal Insurance Contributions Act or any other law prior to the time that they become payable and are not withheld from the benefit payable, the Company or Participating Company may withhold the amount of such taxes from any other compensation or other amounts payable to the Participant.

## 11.4. Assignment of Benefits

No benefits under the Plan or any right or interest in such benefits shall be assignable or subject in any manner to anticipation, alienation, sale, transfer, claims of creditors, garnishment, pledge, execution, attachment or encumbrance of any kind, including, but not limited to, pursuant to any domestic relations order (within the meaning of ERISA § 206(d)(3) and Code § 414(p)(1)(B)) or judgment or claims for alimony, support, separate maintenance, and claims in bankruptcy proceedings, and any such attempted disposition shall be null and void.

## 11.5. Facility of Payment

If the Administrator shall find that any person to whom any amount is or was payable under the Plan is unable to care for his or her affairs because of illness or accident, then any payment, or any part thereof, due to such person (unless a prior claim therefor has been made by a duly appointed legal representative), may, if the Administrator so directs the Company, be paid to the same person or institution that the benefit with respect to such person is paid or to be paid under the applicable Qualified Plan or the Participant's Lawful Spouse, a child, a relative, an institution maintaining or having custody of such person, or any other person deemed by the Administrator to be a proper recipient on behalf of such person otherwise entitled to payment.

Any such payment shall be in complete discharge of the liability of the Company, the Board, the Committee, the Administrator, and the Participating Company therefor. If any payment to which a Participant, Surviving Spouse or beneficiary is entitled under this Plan is unclaimed or otherwise not subject to payment to the person or persons so entitled, such amounts representing such payment or payments shall be forfeited after a period of two years from the

-19-

A-034

date the first such payment was payable and shall not escheat to any state or revert to any party; provided, however, that any such payment or payments shall be restored if any person otherwise entitled to such payment or payments makes a valid claim.

## 11.6. Severability

If any section, clause, phrase, provision, or portion of this Plan or the application thereof to any person or circumstance shall be invalid or unenforceable under any applicable law, such event shall not affect or render invalid or unenforceable the remainder of this Plan and shall not affect the application of any section, clause, provision, or portion hereof to other persons or circumstances.

## 11.7. Plan Year

For purposes of administering the Plan, each plan year shall begin on January 1 and end on December 31.

## 11.8. Headings

The captions preceding the sections and articles hereof have been inserted solely as a matter of convenience and shall not in any manner define or limit the scope or intent of any provisions of the Plan.

## 11.9. Governing Law

The Plan shall be governed by the laws of the State of New Jersey (other than its conflict of laws provisions) from time to time in effect, except to the extent such laws are preempted by the laws of the United States of America.

## 11.10. Entire Plan

This written Plan document is the final and exclusive statement of the terms of this Plan, and any claim of right or entitlement under the Plan shall be determined in accordance with its provisions pursuant to the procedures described in Article 9. Unless otherwise authorized by the Board or its delegate, no amendment or modification to this Plan shall be effective until reduced to writing and adopted pursuant to Section 10.1.

IN WITNESS WHEREOF, the Company has caused this amended and restated Plan to be adopted effective as of January 1, 2009 and to be executed on the this 29th day of December, 2008.

By: _____

Steven S. Fitzgerald
Vice President, Human Resources

-20-

Attest: _Karen Majewski_

## AMENDMENT 1

## TO THE

## AVAYA INC. SUPPLEMENTAL PENSION PLAN

### (as amended and restated effective January 1, 2009)

WHEREAS, Avaya Inc. (the "Company) previously adopted the Avaya Inc.
Supplemental Pension Plan (the "SERP");

WHEREAS, in order to simplify the administration of distributions from the SERP, the
Company desires to amend the distribution provisions to "un-grandfather" certain benefits that
were previously treated as "grandfathered benefits" for purposes of Section 409A of the Internal
Revenue Code of 1986, as amended;

WHEREAS, pursuant to Section 10.1 of the Plan, the Board of Directors (the "Board") or
its delegate may amend the Plan at any time, without the consent of any participant, surviving
spouse or beneficiary, provided that no such amendment shall retroactively impair or otherwise
adversely affect the rights of any participant, surviving spouse or beneficiary or other person to
benefits accrued before the date of such amendment;

RESOLVED, that the Plan be amended as follows effective July 1, 2016:

1.    **Section 2.20**, "Grandfathered Benefit," is hereby amended to add the following to the end
thereof:

"Notwithstanding the foregoing, to the extent that (i) a Participant's Excess Retirement
Benefit is attributable to amounts accrued both before December 31, 2004 and after
December 31, 2004, and (ii) payment of such Participant's Excess Retirement Benefit,
Minimum Retirement or Survivor Benefit, and/or Mid-Career Pension Benefit has not
commenced as of July 1, 2016, then effective as of July 1, 2016, any portion of a
Participant's Excess Retirement Benefit, Minimum Retirement or Survivor Benefit,
and/or Mid-Career Pension Benefit that was previously treated as a Grandfathered
Benefit shall cease to be so treated, and the sum of all benefits payable to such Participant
under the Plan (meaning the sum of such Participant's Excess Retirement Benefit,
Minimum Retirement or Survivor Benefit, or Mid-Career Pension Benefit, if any) shall
be treated as an Un-Grandfathered Benefit."

2.    **Article 2** is hereby amended by adding the following new Section 2.40 to its end:

"2.40 **Un-Grandfathered Benefit**. "Un-Grandfathered Benefit" means all benefits
payable to such Participant under the Plan (meaning the sum of such Participant's Excess
Retirement Benefit, Minimum Retirement or Survivor Benefit, or Mid-Career Pension
Benefit, if any) to the extent any such benefits cease to be treated as a Grandfathered
Benefit. Effective as of July 1, 2016, a Grandfathered Benefit shall cease to be so treated,

and shall subsequently be treated as an Un-Grandfathered Benefit to the extent (i) a Participant's Excess Retirement Benefit is attributable to amounts accrued both before December 31, 2004 and after December 31, 2004, and (ii) payment of such Participant's Excess Retirement Benefit, Minimum Retirement or Survivor Benefit, and/or Mid-Career Pension Benefit has not commenced as of July 1, 2016."

3.  **Section 3** is hereby amended by adding the following new Section 3.5(c) to its end:

"(c)     Un-Grandfathered Benefits.  Notwithstanding Section 3.5(a), to the extent any Excess Retirement Benefit is treated as an Un-Grandfathered Benefit, such benefit shall be paid as an Actuarial Equivalent lump sum in the Calendar Quarter following the Calendar Quarter in which the Distribution Event occurs."

4.  **Section 4.4** is hereby amended to add the following to the end thereof:

"Notwithstanding the forgoing, to the extent any Minimum Retirement and Survivor Benefits is treated as an Un-Grandfathered Benefit, such benefit shall be paid as an Actuarial Equivalent lump sum in the Calendar Quarter following the Calendar Quarter in which the Distribution Event occurs."

5.  **Section 5.3** is hereby amended to add the following to the end thereof:

"Notwithstanding the forgoing, to the extent any Mid-Career Benefits is treated as an Un-Grandfathered Benefit, such benefit shall be paid as an Actuarial Equivalent lump sum in the Calendar Quarter following the Calendar Quarter in which the Distribution Event occurs."

Except as specifically amended herein, the provision of the SERP shall remain in full force and effect.

[Signature Page Follows]

DMSLIBRARY01\29007285.v4

A-038

EXECUTION VERSION

IN WITNESS WHEREOF, the Company has caused its duly authorized officer to execute this Amendment on the date provided below to be effective as of July 1, 2016.

Avaya Inc.

By: _____

Title: VP, Human Resources

Date: 6/30/2016

[Signature page to Amendment No. 1 to the Avaya Inc. Supplemental Pension Plan]

3

A-039

# EXHIBIT 3

**Supplemental Plan Payment Summary**

## Survivor Pension Benefit Calculation Summary for benefits from the Avaya Inc. Supplemental Pension Plan - Non-Qualified Plan

Marlene D. Clark, \*\*\*-\*\*-4054
as Surviving Spouse of
Stephan R. Clark, \*\*\*-\*\*-7856

 **Section I - Summary of Your Payment**

**Survivor Benefit from the Pension Plan**

You are eligible for:

* An immediately payable monthly annuity as of July 1, 2014, payable as a Single Life Annuity in the amount of $1,433.16 from the Avaya Inc. Pension Plan for Salaried Employees.

This monthly benefit will be paid to you during your lifetime. No benefits will be payable after your death. The amount of your annuity is equal to 100% of the benefit that was payable to your spouse under the Joint and 100% Survivor Annuity option your spouse elected at retirement.

Full details of the benefits provided under the Avaya Inc. Supplemental Pension Plan are contained in the Plan document, which governs the operation of the Avaya Inc. Supplemental Pension Plan. While great care has been taken in gathering your personal information and calculating your benefit, in some cases, there may be mistakes in the data or the calculation. In the event that the contents of this statement or any oral representation made to you by any person regarding your benefit under Avaya Inc. Supplemental Pension Plan conflicts with or is not consistent with the provisions of the Plan document, the Plan document will control. This means that in some situations your benefit amount under the Plan may be different from the amount indicated on this statement, such as a situation where it is discovered that the data used to determine your benefit was not correct under the Plan or the method used to calculate your benefit was not consistent with the Plan document. The Company reserves the right to correct any errors.

A-041

# EXHIBIT 4

## Wall Street Journal Article

# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

https://www.wsj.com/articles/bankrupt-avaya-stops-paying-some-pension-benefits-1487768401

MARKETS

# Bankrupt Avaya Stops Paying Some Pension Benefits

Communications company cites chapter 11 filing for stopping payment of supplemental pension benefits



Avaya sought chapter 11 protection on Jan. 19 to restructure a balance sheet weighed down by about $6 billion in secured debt. *PHOTO: ASSOCIATED PRESS*

By LILLIAN RIZZO
Updated Feb. 22, 2017 8:03 a.m. ET

Troubled telecom company Avaya Inc. has begun cutting off some pension benefits for retirees, a signal that these benefits may be on the chopping block in connection with its chapter 11 case.

In a letter to retirees, which The Wall Street Journal reviewed, the communications company cited its recent chapter 11 filing to say that as of Feb. 1, it would stop paying so-called supplemental pension benefits to certain retirees until further notice. Some retirees recently received notice that March checks also wouldn't arrive.

"It's very disappointing when this happens after you work for a company for all of your life," said 69-year-old Stephanie Gaskill, who was employed by Avaya, once part of AT&T, for 30 years. "We dedicated our lives to it."

—ADVERTISEMENT—





See Cybersecurity and Privacy Differently

Visit PwC's Broader Perspectives hub to learn how cybersecurity and privacy can both protect and enable your business.

READ MORE

An Avaya spokesman said the company continues to pay federally guaranteed pension payments but doesn't "have the court's authority to make supplemental pension payments...at this point in time." He declined to elaborate on Avaya's plans for these benefits, which are among the liabilities that companies often shed in bankruptcy.

---

READ MORE

- Avaya Weighing Bankruptcy Filing, Sale of Call-Center Software Unit
- Avaya Files for Chapter 11 Bankruptcy Protection
- Avaya: How an $8 Billion Tech Buyout Went Wrong

The Santa Clara, Calif., company, which installs and operates corporate phone systems, has gone through many iterations. What started out as regional communications companies that were part of the Bell Telephone Co. later became a technology division of AT&T. The unit was later spun off from AT&T as part of a business called Lucent Technologies Inc., from which Avaya was spun off in 2000.

Avaya sought chapter 11 protection on Jan. 19 to restructure a balance sheet weighed down by about $6 billion in secured debt, the product of a 2007 leveraged buyout led by private-equity firms TPG and Silver Lake.

A number of these debt-fueled deals crashed into bankruptcy during and after the financial crisis, including newspaper publisher Tribune Co., whose 2008 chapter 11 filing followed its $8.2 billion buyout by Sam Zell in 2007.

Bankruptcy exposes employees and pensioners to cuts, if not the outright loss, of benefits, only some of which are guaranteed by federal pension laws. That means when companies file for bankruptcy protection, as Avaya did last month, there is no safety net for the unguaranteed benefits.

Avaya's qualified pension plans, which are backed by the Pension Benefit Guaranty Corp., cover about 1,700 active workers and 13,000 retirees, the company said in bankruptcy-court papers. These plans pay out about $55 million to beneficiaries per quarter. It is unknown how many of its pensioners receive supplemental pension checks.

A company spokesman said the supplemental payments represent an additional amount above the Internal Revenue Service compensation or benefit limit on qualified pension plans but declined to provide further detail.

---

RELATED

- PBGC Raises Possibility of Program Insolvency
- Alcoa Reaches Agreement on Pension Funding with PBGC
- Nortel Fight with PBGC Could Unsettle $7.3 Billion Pact

Avaya retirees interviewed by the Journal said the amount of individual supplemental payments varied. For some, the payments represented between 40% and 50% of their pensions. One man received $650 a month, while another received $3,000.

Victoria Baumwald of Massachusetts, who worked for Avaya and its predecessors for nearly 24 years, said the supplemental payments represented 25% of her pension. She

A-044

and other retirees are now reconsidering their financial options.

"I have been thinking about accessing my Social Security at 62, rather than 66 years and four months, which was my original plan," said Ms. Baumwald, who will turn 61 in April. "I don't have an ostentatious lifestyle."

Ms. Baumwald was part of a mass head-count reduction in 2001, shortly after Avaya was spun off from Lucent. The spinoff offered pension-related incentives to employees to encourage them to retire early, retirees said. She and five other retirees interviewed by the Journal worked as managers in Avaya's sales division took the deal.

Many retirees aren't aware these benefits are at risk in chapter 11.

"It's an unfortunate consequence in bankruptcy for employees and retirees," said attorney Debra Dandeneau, co-chair of Baker & McKenzie LLP's global restructuring practice. "Retiree benefits are often the low-hanging fruit to be cut."

Companies that file for bankruptcy may not only terminate future supplemental pension payments but may also leave past-owed benefits only partially repaid.

In the 2009 bankruptcy of Reader's Digest, the publisher reported about $82.5 million in liabilities related to nonqualified retirement and other deferred compensation plans for former executives, officers and directors. The company's restructuring plan offered unsecured creditors, including pensioners, up to 3.6 cents on the dollar. Partial payments were also made in the chapter 11 cases of United Airlines and Delta Air Lines.

It is against this backdrop that Vern Larson, who retired from Avaya in 2006 after 45 years, is leading an group of more than 2,000 retirees who are monitoring Avaya's chapter 11 case.

"If the company rejects making the supplemental payments, we'll litigate that particular issue and do what we can to fight," he said.

**Write to** Lillian Rizzo at Lillian.Rizzo@wsj.com

Copyright &copy;2017 Dow Jones &amp; Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.