**Case No. 1:17-cv-07379-GHW**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AVAYA INC., et al.,<br><br>       Debtors. | On appeal from the United States Bankruptcy Court for the Southern District of New York, Chapter 11 Case No. 17-10089 (SMB) |
| MARLENE CLARK,<br><br>      Appellant,<br><br> - against -<br><br>AVAYA INC., et al.,<br><br>      Appellees. | |

<u>**BRIEF OF APPELLEE**</u>

Dated: October 18, 2017

James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

- and -

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Ryan Preston Dahl (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

*Attorneys for Appellee Avaya Inc., et al.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, Avaya Inc. ("<u>Avaya</u>") and its affiliated debtors and debtors in possession (collectively, the "<u>Avaya Subsidiaries</u>" and, together with Avaya, collectively, the "<u>Debtors</u>") in the jointly administered chapter 11 cases before the United States Bankruptcy Court for the Southern District of New York hereby disclose the following corporate relationships.

1.      Avaya Holdings Corp. is the direct or indirect parent of Avaya and each of the Avaya Subsidiaries.

2.      No publicly held corporation owns 10% or more of the stock of Avaya Holdings Corp., Avaya, or any of the Avaya Subsidiaries.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

i

## <u>TABLE OF CONTENTS</u>

**ARGUMENT** ...........................................................................................**14**

I.    THE BANKRUPTCY COURT CORRECTLY HELD THAT
THE SURVIVOR BENEFIT IS NOT A BENEFIT ARISING
IN THE EVENT OF DEATH UNDER SECTION 1114(a) OF
THE BANKRUPTCY CODE. ...........................................................14

    A.    Ms. Clark's "Plain Meaning" Interpretation of Section
1114(A) Leads to an Absurd Result. .......................................16

    B.    The Survivor Benefit Is Not A "Benefit in the Event of
Death" Under Section 1114(A) of the Bankruptcy Code. ........20

        1.    The Survivor Benefit Is Deferred Compensation—
Not A "Retiree Benefit." ................................................20

        2.    Transferring Payments to A Surviving Spouse
Does Not Transform the Supplemental Pension
Plan into A "Retiree Benefit." .......................................23

II.    THE SUPPLEMENTAL PENSION PLAN IS NOT A "PLAN,
FUND, OR, PROGRAM" UNDER SECTION 1114(A) OF
THE BANKRUPTCY CODE. ...........................................................29

**CONCLUSION**.......................................................................................**36**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Cowan v. Plsek</u>,
   592 S.W.2d 422 (Tex. Civ. App. 1979)......................................................13, 16

<u>Czyzewski v. Jevic Holding Corp.</u>,
   137 S. Ct. 973 (2017)....................................................................................11, 18

<u>Fort Halifax Packing Co. v. Coyne</u>,
   482 U.S. 1 (1987)....................................................................................7, 30, 31

<u>Grimo v. Blue Cross/Blue Shield of Vermont</u>,
   34 F.3d 148 (2d Cir. 1994) ..................................................................................35

<u>Howard Delivery Service, Inc. v. Zurich American Ins. Co.</u>,
   547 U.S. 651 (2006)..........................................................................................1, 29

<u>In re CBI Holding Co., Inc.</u>,
   529 F.3d 432 (2d Cir. 2008) ..............................................................................35

<u>In re Delphi Corp.</u>,
   Case No. 05-44481, 2009 WL 637315 (Bankr. S.D.N.Y. March 10,
   2009) .............................................................................................................11, 18

<u>In re Exide Techs.</u>,
   378 B.R. 762 (Bankr. D. Del. 2007)..................................................8, 13, 22, 24

<u>In re Farmland Industries, Inc.</u>,
   294 B.R. 903 (Bankr. W.D. Mo.) ..............................................................*passim*

<u>In re Hyman</u>,
   502 F.3d 61 (2d Cir. 2007) ....................................................................................2

<u>In re Lucent Death Benefits ERISA Litig</u>,
   541 F.3d 250 (3d Cir. 2008) .................................................................25, 26, 27

<u>In re Lyondell Chemical Co.</u>,
   445 B.R. 296 (Bankr. S.D.N.Y. 2011)........................................................*passim*

iii

In re New York Trap Rock Corp.,
   126 B.R. 19 (Bankr. S.D.N.Y. 1991)....................................................................29

In re Patient Educ. Media, Inc.,
   221 B.R. 97 (Bankr. S.D.N.Y. 1998)............................................................6, 10

In re Worldcom, Inc.,
   364 B.R. 538 (Bankr. S.D.N.Y. 2007)................................................8, 13, 22, 24

Kerber v. Qwest Pension Plan,
   No. 05-cv-478, 2008 WL 4377562 (D. Colo. Sept. 19, 2008) ..........................27

Kosakow v. New Rochelle Radiology Assocs., P.C.,
   274 F.3d 706 (2d Cir. 2001) .........................................................................*passim*

Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan,
   239 F. Supp. 3d 710 ............................................................................................33

McMillan v. LTV Steel, Inc.,
   555 F.3d 218 (6th Cir. 2009) .......................................................................*passim*

Rombach v. Nestle USA, Inc.,
   211 F.3d 190 (2d Cir. 2000) .......................................................................28, 32

Trs. Of Amalgamated Pension Funds v. McFarlin's, Inc.,
   789 F.2d 98 (2d Cir. 1986) .................................................................................10

Verdier v. Thalle Constr. Co.,
   No. 14-cv-4436, 2017 WL 78512 (S.D.N.Y. Jan. 5, 2017)..........................33, 34

**Statutes**

11 U.S.C. §§ 101–1532..............................................................................................1

11 U.S.C. § 101(5) ....................................................................................................4

11 U.S.C. § 503(b)(1)..............................................................................................10

11 U.S.C. § 507(a)(1)..............................................................................................10

11 U.S.C. § 1114 ...................................................................................................1, 9

11 U.S.C. § 1114(a) .......................................................................................*passim*

11 U.S.C. § 1114(d) ...................................................................................9, 17, 20

11 U.S.C. § 1114(e)(2) ..........................................................................................10

11 U.S.C. § 1129(a)(9)(A) .....................................................................................10

28 U.S.C. § 158(a)(1) ...............................................................................................1

28 U.S.C. § 158(d) ...................................................................................................1

29 U.S.C. § 1055(a) ....................................................................................4, 7, 21

29 U.S.C. § 1002(1)–(2) .........................................................................................33

**Rules**

Fed. R. Bankr. P. 8015(a)(5)-(6) ...........................................................................38

Fed. R. Bankr. P. 8015(a)(7)(B)(i)........................................................................38

Fed. R. Bankr. P. 8015(a)(7)(B)(iii) .....................................................................38

**Other Authorities**

Susan J. Stabile, Protecting Retiree Medical Benefits in Bankruptcy:
    The Scope of Section 1114 of the Bankruptcy Code, 14 Cardozo L.
    Rev. 1911, 1926 & n.86 (1993) ......................................................................14

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1). The order appealed (A-190–191) (the "Order") from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") is a final order because that ruling, as set forth more fully in the *Memorandum Opinion Regarding Determination of Survivorship Benefits as "Retiree Benefits"* (the "Memorandum Decision") (A-172–189), finally determined that:  (a) claims asserted by Marlene Clark ("Ms. Clark") with respect to her interest in payments due upon the death of her husband (the "Survivor Benefit") under the Avaya Inc. Supplemental Pension Plan (the "Supplemental Pension Plan") were not "retiree benefits" under section 1114(a) of 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and (b) that such claims did not arise under a "plan, fund or program" for purposes of constituting a "retiree benefit" per section 1114 of the Bankruptcy Code.  See, e.g., Howard Delivery Service, Inc. v. Zurich American Ins. Co., 547 U.S. 651, 657, n.3 (2006) (determining that an order concluding a dispute with respect to party's claim in bankruptcy constitutes a final order under 28 U.S.C. § 158(d)).

## STATEMENT OF ISSUES PRESENTED & STANDARD OF REVIEW

**Issue**.   Whether the Bankruptcy Court correctly decided that Ms. Clark's Survivor Benefit arising under the Supplemental Pension Plan is not a "retiree benefit" within the meaning of 11 U.S.C. § 1114(a).

**Standard of Appellate Review**.   The issue presented with respect to whether Ms. Clark's Survivor Benefit is a "retiree benefit" under section 1114(a) of the Bankruptcy Code involves a question of law entitled to <u>de novo</u> review. <u>See</u> <u>In re Hyman</u>, 502 F.3d 61, 65 (2d Cir. 2007) (applying a <u>de novo</u> standard of review to a bankruptcy court's legal conclusions).   The issue presented additionally involves a mixed question of law and fact should the Court determine that the manner in which the Supplemental Pension Plan is administered may be relevant to whether the Supplemental Pension Plan is a "plan, fund, or program" under <u>Kosakow v. New Rochelle Radiology Assocs., P.C.</u>, 274 F.3d 706 (2d Cir. 2001), although the Debtors submit that no such determination is necessary to affirm the Bankruptcy Court's ruling here.

## STATEMENT OF THE CASE

The Bankruptcy Court correctly determined that the Survivor Benefit under the Supplemental Pension Plan did not constitute a "retiree benefit" under section 1114 of the Bankruptcy Code on two bases.   <u>First</u>, the Bankruptcy Court ruled that the Survivor Benefit in the Supplemental Pension Plan is not a "death benefit," and

therefore, is not a "retiree benefit" as defined by section 1114(a) of the Bankruptcy Code.  (A-182); cf. In re Farmland Industries, Inc., 294 B.R. 903, 919 (Bankr. W.D. Mo. 2003) ("The benefits provided under those Plans are either deferred compensation benefits or benefits based on retirement.  They are not payments or reimbursements for medical, surgical, or hospital care, nor are they benefits payable in the event of sickness, accident, disability, or death, as retiree benefits are defined in § 1114(a)."). Second, the Bankruptcy Court determined that the Supplemental Pension Plan was not a "plan, fund, or program" that might otherwise give rise to a "retiree benefit" under section 1114(a) since administration of the Supplemental Pension Plan does not require the particularized analysis necessary to constitute a "plan, fund, or program" in that regard.  (A-186); cf. In re Lyondell Chemical Co., 445 B.R. 296, 300 (Bankr. S.D.N.Y. 2011) ("While the Contract's annuity payments must be adjusted for [the company's] annual tax rate, the adjustment is a simple calculation, and is in substance a ministerial act.  It does not require discretion or analysis.").

The Bankruptcy Court's ruling should be affirmed on both points.  By its terms, the Supplemental Pension Plan is exactly that—a pension plan.  The Supplemental Pension Plan specifically provides that it is intended to provide "deferred compensation and pension benefits to a select group of management or highly compensated employees."  (A-16).  The Supplemental Pension Plan does

not provide for health care or dental benefits for participants.  The Supplemental Pension Plan does not provide life insurance or any separate death benefit for participants.  Rather, the Supplemental Pension Plan, like all pension plans, see 28 U.S.C.  §§  1055(a),  provides  survivorship  rights  for  the  pension beneficiaries, where the spouse of a particular beneficiary continues to receive payments under the Supplemental Pension Plan.  The Supplemental Pension Plan further identifies obligations arising under the Supplemental Pension Plan as a general, unsecured obligation of Avaya Inc.  (A-30).[1]

On January 19, 2017, Avaya and 17 of its affiliates (collectively, "Avaya" or the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy  Code,  instituting  the  proceedings  underlying  the  instant  appeal (the "Bankruptcy Case").  (A-53).  As a result of that bankruptcy filing, Avaya was automatically barred from making payments on account of claims (as that term is defined by section 101(5) of the Bankruptcy Code) arising prior to the filing, and accordingly, Avaya ceased making payments under the Supplemental Pension Plan after that time.  Id.

---

[1]   Specifically, the Supplemental Pension Plan provides: "The Plan constitutes a mere promise by the Company and the Participating Companies to make benefit payments, if any, in the future.  No Participant, Surviving Spouse, beneficiary or any other person shall have any interest in any particular assets of a Participating Company by reason of the right to receive a benefit under the Plan and to the extent the Participant, Surviving Spouse, beneficiary or another person acquires a right to receive benefits under this Plan, such right shall be no greater than the right of any unsecured creditor of a Participating Company."  Id.

On May 5, 2017, Ms. Clark filed a motion with the Bankruptcy Court seeking a determination that her Survivor Benefit payable under the Supplemental Pension Plan is a "death benefit" under a "plan, fund, or program" pursuant to section 1114(a) of the Bankruptcy Code (the "Motion"). (A-2). Avaya, an ad hoc group of the Debtors' first lien debt holders, an ad hoc crossover group of the Debtors' first and second lien debt holders, and the official committee of unsecured creditors all objected to Ms. Clark's Motion on the grounds that pension benefits payable to a spouse upon death do not transform into "retiree benefits" such as life insurance or payments in the event of disability or sickness upon the participating spouse's death. (A-16, 64, 70, 78).

A hearing (the "Hearing") on the Motion occurred on May 25, 2017, before the Bankruptcy Court. (A-134). At the Hearing, Ms. Clark's counsel emphasized that Ms. Clark's proposed statutory construction required the appointment of a "retiree committee" per section 1114(d) of the Bankruptcy Code, even though Ms. Clark is not actually a retired employee, because the prospective modification of survivor benefits necessarily triggered section 1114's procedural and substantive protections. (A-161).[2]  Ms. Clark conceded that such a statutory construction

---

[2]   11 U.S.C. § 1114(d) provides in full:  "The court, upon a motion by any party in interest, and after notice and a hearing, shall order the appointment of a committee of retired employees if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate, to serve as the authorized representative, under this section, of those persons receiving any retiree benefits not covered by a collective bargaining agreement. The United States trustee shall appoint any such committee."

would require the appointment of a retiree committee in any chapter 11 proceeding where pension modifications might be implicated, given that pension plans necessarily include survivor benefits as a matter of law and practice.  (A-161).[3] Notably, Ms. Clark did not offer any evidence in support of her contention that any such oversight or administration was required, although, as the party asserting administrative priority for its claim, Ms. Clark carried the burden of proof in this regard.  See In re Patient Educ. Media, Inc., 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998) ("The party asserting the status of an administrative claimant has the burden of proof.").

On September 18, 2017, the Bankruptcy Court entered the Memorandum Decision denying the Motion on various grounds, including that the Survivor Benefit is not a "retiree benefit" under section 1114(a).  (A-172) ("In conclusion, the Survivor Benefit is not a 'retiree benefit' within the meaning of 11 U.S.C. § 1114(a), and the portion of the Motion seeking the appointment of a retiree committee is denied.").   In particular, the Memorandum Decision determined that the Supplemental Pension Plan's survivorship provision did not constitute a "retiree benefit" under the statute because the survivorship benefit was simply a continuation of an already-existing pension obligation.  (A-182)

---

[3]   It should be noted that the Debtors' present reorganization contemplates the termination of one of its two qualified U.S. pension plans.  See First Amended Joint Chapter 11 Plan of Reorganization of Avaya Inc. and its Debtor Affiliates [Bankruptcy Case Docket No. 1104].

("The Survivor Benefit payable to Clark is based on her right to receive Mr. Clark's deferred compensation—his pension—and the survivorship of the Debtors' obligation to make those payments does not transmute a pension payment into a "retiree benefit" protected by section 1114.").

Additionally, the Memorandum Decision set forth that the Supplemental Pension Plan was not a "plan, fund, or program" for purposes of section 1114 because it required little oversight or administration by Avaya.  (A-186) ("Once the annuity is computed, no further calculation is required, the survivor is not required to do anything, and the benefit is tantamount to a one-off transaction, like a single lump sum benefit, which does not qualify as an ERISA plan under the Supreme Court's decision in <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 12 (1987).").

The Debtors respectfully submit that the Bankruptcy Court correctly determined these issues.  As previously noted, the Supplemental Pension Plan was intended to do no more and no less than provide "***deferred compensation and pension benefits*** for a select group of management and highly compensated employees."  (A-16) (emphasis added).  And, as with any qualified pension plan, the Supplemental Pension Plan provides survivorship benefits in favor of the applicable pensioner's spouse[4]—in this case enabling surviving spouses to receive

---

[4]    The Employee Retirement Income Security Act of 1974 requires all qualified pension plans to include survivorship rights arising in the event of death.  <u>See</u> 29 U.S.C. §§1055(a).

the same deferred compensation and pension benefits otherwise payable to their spouses prior to death.  (A-22).  No additional or supplemental benefit is triggered by the pensioner's death—as is the case with, for example, life insurance. See Farmland, 294 B.R. at 919 ("The benefits provided under those Plans are either deferred compensation benefits or benefits based on retirement.  They are not payments or reimbursements for medical, surgical, or hospital care, nor are they benefits payable in the event of sickness, accident, disability, or death, as retiree benefits are defined in § 1114(a).").[5]

On appeal, Ms. Clark now largely re-states arguments that were rightly rejected by the Bankruptcy Court, namely that the survivorship provision, in itself, causes a pension benefit to be a "death benefit" per section 1114(a) in the hands of a surviving spouse—although such a pension is concededly not a "retiree benefit" in the hands of the retired employee.  In this regard, Ms. Clark asks the Court to both reverse the Bankruptcy Court's decision and to part ways with every single court to consider this issue (both in and out of this district).  See, e.g., McMillan v. LTV Steel, Inc., 555 F.3d 218, 226 (6th Cir. 2009); Lyondell, 445 B.R. at 301; In re Exide Techs., 378 B.R. 762, 768–69 (Bankr. D. Del. 2007); In re Worldcom, Inc., 364 B.R. 538, 550 (Bankr. S.D.N.Y. 2007); Farmland, 294 B.R. at 919.

---

[5]   As discussed more fully, below, Ms. Clark's interest in the the pension benefits at issue may well have arisen even before her husband's death given the status of pension benefits as 'marital property.'

More fundamentally, Ms. Clark's statutory construction would result in a profound transformation of chapter 11 practice and cause all pension-related claims to be entitled to administrative priority via section 1114 of the Bankruptcy Code.[6]  Under Ms. Clark's argument, then, and as the Bankruptcy Court correctly observed, section 1114's procedural requirements (including the appointment of an official retiree committee) would be triggered in any chapter 11 case implicating a debtor's qualified or non-qualified pension liabilities, (A-167) ("So you'd have a committee in every case."), since all spouses hold a "contingent death benefit" by virtue of survivorship rights.  (A-161) ("We submit that [pensioners'] spouses hold a contingent death benefit . . . .").  Thus, a retiree committee composed of such contingent beneficiaries would need to be appointed as a matter of law, 11 U.S.C. § 1114(d), and the standard mandated by ERISA through which a debtor or Pension Benefit Guaranty Corporation ("PBGC")[7] could modify or terminate its pension obligations would either conflict with—or be superseded by—section 1114 of the Bankruptcy Code.[8]

---

[6]   As discussed more fully below, "retiree benefits" as defined by section 1114(a) of the Bankruptcy Code, are entitled "administrative" (or first) priority under the Bankruptcy Code's priority provisions . See 11 U.S.C. § 1114(e)(2); see also 11 U.S.C. § 503(b) (identifying claim priorities) .

[7]   PBGC is the government-chartered corporation charged with safeguarding pensions.

[8]   Section 1114 of the Bankruptcy Code establishes a detailed process through which a party may terminate or modify retiree benefits in chapter 11.  See 11 U.S.C. § 1114(f)–(k).  ERISA, in turn, establishes its own standard by which a party in interest, including PBGC, can terminate or modify pension obligations in chapter 11.  See 29 U.S.C. § 1341.

Additionally, Ms. Clark's theory would confer administrative priority on <u>all</u> pension obligations insofar as all such obligations necessarily entail survivorship rights.   Appellant Brief at 15–16 ("Congress clearly intended to protect all payments to retired employee spouses in the event of death and included nothing in the statute or legislative history excluding surviving spouses who received benefits directly from their retiree-spouse's employer.").  Such a theory, however, flies in the face of more basic principles of statutory construction.  Section 1114(e)(2) confers "administrative priority" to all "retiree benefits" defined by section 1114(a).[9]  It is hornbook law that administrative priorities are narrowly construed, and the party asserting administrative priority carries a heavy burden of proof. <u>See</u> <u>Trs. Of Amalgamated Pension Funds v. McFarlin's, Inc.</u>, 789 F.2d 98, 100 (2d Cir. 1986) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed.").  The Supreme Court itself has recently acknowledged that an expansion of priority status to a particular creditor class

---

[9]   For reference, "administrative priority" claims hold senior status versus prepetition, general unsecured claims asserted against a debtor.  <u>See</u> 11 U.S.C. § 503(b)(1).  Additionally, such claims must be paid in full, in cash as a condition for a debtor to consummate a plan of reorganization.  <u>See</u> 11 U.S.C. § 1129(a)(9)(A), (14).  Because of this priority scheme, a larger pool of "administrative claims" necessarily reduces assets otherwise available for distribution to other creditors.  <u>See</u> <u>Patient Educ. Media</u>, 221 B.R. at 101 ("Because the priority elevates the payment of the administrative claim to the detriment of the unsecured creditors, <u>see</u> 11 U.S.C. § 507(a)(1), the language of section 503(b)(1)(A) must be narrowly construed to promote the bankruptcy goal of equality of distribution.").

requires clear indicia that Congress actually intended to prefer that class to the detriment of the debtor's remaining creditors:  "The importance of the priority system leads us to expect more than simple statutory silence if, and when, Congress were to intend a major departure."  Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 984 (2017).

There is simply no basis to interpret section 1114 of the Bankruptcy Code in such a radical fashion.  As the Bankruptcy Court observed, see (A-181–182), the legislative history makes clear that Congress intended no such result.  See In re Delphi Corp., 2009 WL 637315 at *3 (Bankr. S.D.N.Y. March 10, 2009) ("I believe that Congress is fully aware of these fundamental principles when it amends the Bankruptcy Code, and, accordingly, that when Congress amended Section 1114 it was not writing on a clean slate.").  Nor is there any basis on which to interpret section 1114 in a manner that would create a direct conflict with, and preempt, ERISA's pension-related provisions in the manner advanced by Ms. Clark here.  Cf. Watt v. Alaska, 451 U.S. 259, 267 (1981) ("Repeals by implication are disfavored.  The intention of the legislature to repeal must be clear and manifest.")  (internal quotation marks, citations omitted).

In this regard, the Bankruptcy Court, like every other court to address this same issue, correctly concluded that survivorship rights to a supplemental pension do not create a "retiree benefit" entitled to administrative priority via section 1114

of the Bankruptcy Code.  (A-189).  Accordingly, the Memorandum Decision and Order should be affirmed.

## SUMMARY OF THE ARGUMENT

Ms. Clark asks this Court for extraordinary relief.  As noted above, Ms. Clark's argued interpretation of section 1114 of the Bankruptcy Code would cause section 1114's procedural and substantive provisions to take effect in every bankruptcy proceeding where pension benefits are at issue—regardless of the narrow construction applied to administrative claims, the legislative intent underlying the enactment of section 1114, or the conflict Ms. Clark would otherwise create with ERISA.  The Debtors respectfully submit that this Court should not be the first court to endorse such a fundamental re-construction of the Bankruptcy Code in this fashion.

By its terms, section 1114(a) defines a retiree benefit as a benefit arising "in the event of sickness, accident, disability or death."  11 U.S.C. § 1114(a).  Here, no benefit arises in the event of death (as with, for instance, life insurance).  Rather, the pension benefit in question is triggered by nothing more (or less) than termination of of an employee's active employment.  (A-19).  Simply put, the Survivor Benefit is a pension benefit; it is not a "benefit arising in the event of death" as set forth by section 1114(a) of the Bankruptcy Code.  See LTV Steel, 555 F.3d at 226 (finding that a deferred compensation benefit did not constitute a

"retiree benefit" under section 1114). The fact that the Survivor Benefit becomes payable to a surviving spouse upon their participating spouse's death does not create a "new benefit" (again, as would be the case with life insurance); indeed, state law generally provides that pension benefits are "community property" in which a spouse holds a direct interest while the direct beneficiary is still alive.[10] No "new benefit" arises upon the pensioner's death. Under the Supplemental Pension Plan, as with all pensions, the pensioner's death only transfers the beneficiary of the pension in question—as every court to address this issue has similarly concluded, including the court below. (A-204); see, e.g., LTV Steel, Inc., 555 F.3d at 226 (finding that a deferred compensation benefit did not constitute a "retiree benefit" under section 1114); accord Lyondell, 445 B.R. at 301; Exide, 378 B.R. at 768–69; Worldcom, 364 B.R. at 550; Farmland, 294 B.R. at 919.

Finally, Ms. Clark's argument fails because the Supplemental Pension Plan is not a "plan, fund, or program" as is required for section 1114 to be applicable to a given benefit. See 11 U.S.C. § 1114(a). As addressed below, the Supplemental Pension Plan does not require the sort of individualized, ongoing administration required to constitute a "plan, fund, or program" under the caselaw. See Lyondell,

---

[10]  On information and belief, Ms. Clark is a resident of the state of Texas. See Bankruptcy Case Proof of Claim No. 783. Under Texas law, pension benefits are community property in which a spouse holds a property interest before the direct beneficiary's death. See Cowan v. Plsek, 592 S.W.2d 422, 423 (Tex. Civ. App. 1979) ("Matured retirement, annuity and pension benefits earned by either spouse during the marital relationship are part of the community property and subject to division upon dissolution of the marriage.").

445 B.R. at 300 ("A plan under ERISA requires an 'ongoing administrative program to meet the employer's obligations,' and generally does not cover private contracts which provide for single payments triggered by a single event. Rather, the plan requires a simple calculation and payment—like any annuity—and Appellant has offered no evidence to the contrary.").

## ARGUMENT

### I.   THE BANKRUPTCY COURT CORRECTLY HELD THAT THE SURVIVOR BENEFIT IS NOT A BENEFIT ARISING IN THE EVENT OF DEATH UNDER SECTION 1114(A) OF THE BANKRUPTCY CODE.

Congress enacted section 1114 with a particular problem in mind: to ensure that companies could not use chapter 11 to unilaterally cancel non-pension benefits without satisfying certain procedural and substantive safeguards in favor of affected retirees. (A-204) ("Section 1114 of the Bankruptcy Code was enacted in direct response to the LTV Corporation's bankruptcy, where LTV announced its intention to stop providing health and life insurance benefits to its retirees almost immediately after filing its chapter 11 petition in this Court.") (citing Susan J. Stabile, Protecting Retiree Medical Benefits in Bankruptcy: The Scope of Section 1114 of the Bankruptcy Code, 14 Cardozo L. Rev. 1911, 1926 & n.86 (1993)).

The legislative history makes clear that Congress did not intend section 1114 to step beyond its intended purpose—particularly where the treatment of pension obligations in bankruptcy are concerned: "This bill is not intended to affect current

law treatment of pension benefits in Chapter 11 proceedings." S. Rep. No. 100-119, at 2-4 (1987), reprinted in 1988 U.S.C.C.A.N. 683, 683-85; cf. United States v. Congress of Industrial Organizations, 335 U.S. 106, 112 (1948) ("Remedial laws are to be interpreted in the light of previous experience and prior enactments. Nor, where doubt exists, should we disregard informed congressional discussion"). This intent is not surprising because ERISA itself provides a comprehensive mechanism for the modification of pension obligations in bankruptcy, including with respect to the unique role ascribed to PBGC in that regard. See 29 U.S.C. §§ 1341 (setting forth process for involuntary and distressed termination of qualified pension plans in bankruptcy).

Ms. Clark's argument, however, ignores this specific purpose. Instead, Ms. Clark advances a broad expansion of both section 1114's application and the Bankruptcy Code's priority scheme that cannot be justified either by the statutory text or its legislative history. And, as detailed below, Ms. Clark's proposed construction further creates a direct conflict between section 1114 and ERISA. This outcome would violate a basic principle of statutory construction insofar as statutes should not be interpreted to create conflicts in such a fashion. See Watt, 451 U.S. at 267 ("We must read the statutes to give effect to each if we can do so while preserving their sense and purpose.").

### A.   Ms. Clark's "Plain Meaning" Interpretation Of Section 1114(a) Contradicts the Statutory Text.

Avaya rejects Ms. Clark's argument that the "plain meaning" of section 1114 compels a determination that the Survivor Benefit is a "retiree benefit." Appellant Brief at 8.  From the outset, it must be noted that section 1114(a) makes no reference to "survivorship benefits."   Rather, Ms. Clark's statutory argument hinges entirely on her conflating a spouse's interest in a pension benefit with a benefit that arises "in the event of death" as contemplated by section 1114.  Id. at 6 ("Because the benefit was provided to her 'in the event of death,' it squarely met the statute's definition of a "benefit[] in the event of death.").

This interpretation makes little sense.  A spouse already benefits from a pension benefit by virtue of the marital relationship to the pensioner in question. See Cowan, 592 S.W.2d at 423 (explaining that pension benefits are marital property under Texas law).  No "new benefit" arises by virtue of the pensioner's death.  As the Bankruptcy Court correctly observed:  "The Survivor Benefit payable to Clark is based on her right to receive Mr. Clark's deferred compensation – his pension – and the survivorship of the Debtors' obligation to make those payments does not transmute a pension payment into a 'retiree benefit' protected by section 1114."  (A-182).

Moreover, Ms. Clark's argument contradicts itself within the framework of section 1114.  Section 1114 contemplates that a "retiree committee" will be

16

composed of either a collective bargaining unit or "retired employees." See 11 U.S.C. § 1114(d). Such relief was also specifically requested by Ms. Clark in her motion to the Bankruptcy Court. (See A-7) ("Moreover, because retiree beneficiaries under the Supplemental Plan are all non-union, surviving spouse beneficiaries are entitled to representation in the form of an Official Committee under section 1114(d).").

But section 1114 does not permit the appointment of a committee consisting of surviving spouses or beneficiaries. 11 U.S.C. § 1114(d) ("the court, upon a motion by any party in interest, and after notice and a hearing, shall order the appointment of a committee of **retired employees** if the debtor seeks to modify or not pay the retiree benefits . . . .") (emphasis added). Section 1114(d) only permits the appointment of an official committee consisting of individual retirees—not their spouses. Id. In other words, there is no statutory basis for the appointment of a committee consisting solely of the spouses of retired employees on account of contingent pension rights. Yet this outcome is precisely what Ms. Clark argues is required by the statute—i.e., a committee consisting solely of individuals that, like Ms. Clark, are the survivors, or prospective survivors, of "retired employees"—but not the actual retirees themselves. (A-159) ("Mr. Chubak:  It would be—they would be representing retiree benefit recipients, and that includes current retirees because many current retirees are married and want to see benefits confer upon

their spouses . . . .").  Thus, Ms. Clark's proposed statutory construction must fail as it is demonstrably at odds with the statute's plain text.

Even if the statute could be read to have two different interpretations (one of which being an interpretation that the Survivor Benefit is viewed as a benefit "arising in the event of death"), any such ambiguity should be resolved by recourse to the canon of construction applied to issues of administrative priority and analysis of the legislative intent.  Again, administrative priorities must be narrowly construed.  See McFarlin's, Inc., 789 F.2d at 100 ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed.").  Congressional silence and statutory ambiguity provide no basis on which to depart from this fundamental principle of statutory construction.  See Jevic, 137 S. Ct. at 984 ("The importance of the priority system leads us to expect more than simple statutory silence if, and when, Congress were to intend a major departure.").  This is equally true with respect to questions of administrative priority arising under section 1114 of the Bankruptcy Code.  See Delphi, 2007 WL 637315 at *3.

Here, Ms. Clark's argument would take what is, at best, a question of statutory ambiguity and transform such ambiguity in her favor.  Such an outcome flies in the face of basic principles of statutory construction and should be rejected. And, there is simply no indication that Congress intended the sort of wholesale

expansion of administrative priority advanced by Ms. Clark here. Congress enacted section 1114 to address a specific problem, and Congress was clear that it did not intend for section 1114's protection for <u>non-pension</u> related obligations (<u>i.e.</u>, section 1114) to affect the treatment of pension obligations in chapter 11. S. Rep. No. 100-119, at 2-4 (1987), <u>reprinted in</u> 1988 U.S.C.C.A.N. 683, 683-85 ("This bill is not intended to affect current law treatment of pension benefits in Chapter 11 proceedings."). Conversely, Ms. Clark has offered no evidence suggesting that Congress intended to enact the sort of wholesale change to pension treatment in bankruptcy that Ms. Clark urges the Court to adopt here.

At core, Ms. Clark's argument is that all survivorship provisions in pension programs amount to "retiree benefits" under section 1114 of the Bankruptcy Code because they arise upon the death of the primary beneficiary of the pension, and thus are benefits in the event of death. (A-154). According to Ms. Clark, this result is mandated even when the pension benefits payable to the primary beneficiary before his or her death were not "retiree benefits." (A-155). But this argument is simply not true. On the one hand, a pension benefit does not arise "in the event of death"—it arises upon the termination of employment. The surviving spouse may also hold a proprietary interest in that pension as a matter of community property.

On the other hand, and more fundamentally, Ms. Clark's reading results in a practically unlimited expansion of the administrative priority provisions of section 1114 as well as the appointment of a "retiree" committee in every case where a debtor attempts to modify or stop paying survivor benefits.  (A-167) ("So you'd have a committee in every case.").[11]  Of course, and as noted above, there is simply no statutory authority for the sort of "contingent beneficiary committee" demanded here.  (A-155); cf. 11 U.S.C. § 1114(d).  The Bankruptcy Court correctly assessed the ramifications of Ms. Clark's reading of section 1114 of the Bankruptcy Code, and rightfully determined to deny Ms. Clark's requested relief.  (A-191).  This Court should do the same.

### B. The Survivor Benefit Is Not A "Benefit in the Event of Death" Under Section 1114(A) of the Bankruptcy Code.

#### 1. The Survivor Benefit Is Deferred Compensation—Not A "Retiree Benefit."

Section 1114 of the Bankruptcy Code applies only to "retiree benefits," defined as "payments to any . . . person for the purpose of providing or

---

[11]   This expansion of administrative priority is not an academic question in Avaya's chapter 11 case.  During the pendency of this chapter 11 case, Avaya has suspended payment of tens of millions of dollars of minimum funding contributions due with respect to its qualified pension plans as a result of its bankruptcy filing.  Under Ms. Clark's construction of section 1114, however, such obligations would be immediately due and payable as administrative claims—despite the overwhelming body of caselaw that holds such funding contributions to be prepetition, general unsecured obligations of Avaya's chapter 11 estate.  See, e.g., In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 160 B.R. 882, 892 (Bankr. S.D.N.Y. 1993) ("As of the petition date, Pension Trustee's claim for minimum funding contributions is the paradigmatic prepetition contingent claim.").

reimbursing payments for retired employees and their spouses . . . for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) . . . ."  11 U.S.C. § 1114(a).  Notably absent from the definition of "retiree benefits" are both "survivor benefits" and "pension benefits"—such as retirement income or deferred compensation—and courts have consistently held that such benefits are not "retiree benefits" for purposes of section 1114.  See LTV Steel, 555 F.3d at 226 (section 1114 does not apply to a benefit program directed at administering pensions since it does not provide payments for medical, surgical, or hospital care benefits as required by section 1114(a)); Lyondell, 445 B.R. at 299 ("Pension benefits or benefits that provide for annual payments upon retirement are not 'retiree benefits.'"); Farmland, 294 B.R. at 919 (benefits provided under a deferred compensation plan were not "retiree benefits" because they were either deferred compensation benefits or benefits based on retirement).

This distinction reflects the basic fact that all pension plans include a survivorship provision—both as a matter of law and practice.  See 28 U.S.C. §§1055(a).  Such a survivorship provision does not cause a pension to be a form of insurance.  Rather, such plans remain, by their terms, pension plans.  And so here.

The Supplemental Pension Plan states that it is:

> intended to constitute both (i) an unfunded 'excess
> benefit plan' as defined in ERISA § 3(36), and (ii) an
> unfunded plan primarily <u>for the purpose of providing
> deferred compensation and pension benefits</u> for a select
> group of management or highly compensated employees
> for purposes of Title I of the Employee Retirement
> Income Security Act of 1974, as amended.

(A-16) (emphasis added).   Payments under the Supplemental Pension Plan are

triggered by the participant's separation from service to Avaya and are meant to

provide deferred compensation as a form of retirement income for the participant

and their surviving spouse upon the participant's death.  <u>Id.</u>  By its terms, then, the

payments in question here are <u>not</u> for medical, surgical, or hospital care benefits, or

benefits in the event of sickness, accident, disability, or death, as required by

section 1114(a) of the Bankruptcy Code to qualify as a "retiree benefit."   <u>Id.</u>;

11 U.S.C. § 1114(a)  Accordingly, the Supplemental Pension Plan is clearly not the

type of "retiree benefit" contemplated by section 1114 of the Bankruptcy Code.

<u>See</u>, <u>e.g.</u>, <u>In re Worldcom, Inc.</u>, 364 B.R. at 550 (Bankr. S.D.N.Y. 2007); <u>see also</u>

<u>Lyondell</u>, 445 B.R. at 301; <u>Farmland</u>, 294 B.R. at 919; <u>LTV Steel, Inc.</u>, 555 F.3d at

226; <u>In re Exide Techs.</u>, 378 B.R. at 768–69.

### 2. Transferring Payments to A Surviving Spouse Does Not Transform the Supplemental Pension Plan into A "Retiree Benefit."

Payments arising under the Supplemental Pension Plan are not triggered by the death of a participant.  Rather, they are triggered by a participant's retirement.  (A-19).  The pensioner's death only transfers an already existing retirement benefit (i.e., an annuity) to the participant's surviving spouse.  (A-181).  Ms. Clark argues that because the surviving spouse receives payments under the Supplemental Pension Plan upon their spouse's death, payments pursuant to the Supplemental Pension Plan constitute:

> payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or **benefits in the event** of sickness, accident, disability, or **death** under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

11 U.S.C. § 1114(a).  Survivorship benefits, however, are not "death benefits" as referenced by the statute such as, for instance, life insurance.  Farmland, 294 B.R. at 919 (finding that "deferred compensation benefits or benefits based on retirement" did not constitute "retiree benefits" under section 1114(a)).  Instead, survivorship benefits are a mere continuation of a qualifying spouse's pension benefits.

Every court to address this question has reached the same conclusion. See, e.g., In re Worldcom, Inc., 364 B.R. at 550 (Bankr. S.D.N.Y. 2007) (holding that a deferred compensation plan for prior board members was not covered by section 1114); see also Lyondell, 445 B.R. at 301 (holding that a private annuity contract which became payable to the beneficiary's spouse upon his death in a lump sum payment was not covered by section 1114); LTV Steel, Inc., 555 F.3d at 226; (section 1114 does not apply to a benefit program directed at administering pensions since it does not provide payments for medical, surgical, or hospital care benefits as required by section 1114(a)); In re Exide Techs., 378 B.R. at 768–69 (holding that a defined contribution pension plan was not covered by section 1114); Farmland, 294 B.R. at 919 (holding that a deferred compensation plan was not covered by section 1114); accord (A-189) ("In conclusion, the Survivor Benefit is not a "retiree benefit" within the meaning of 11 U.S.C. § 1114(a), and the portion of the *Motion* seeking the appointment of a retiree committee is denied.").

Farmland is instructive in this regard. In Farmland, the court analyzed several types of benefits, including benefits provided under a deferred compensation plan, a supplemental executive retirement plan, and a director deferred compensation plan, all of which had characteristics similar to the Supplemental Pension Plan, including survivorship provisions. 294 B.R. at 908–11. The court determined that these plans did not provide "retiree benefits"

because such plans provided for "either deferred compensation benefits or benefits based on retirement," and not "payments or reimbursements for medical, surgical, or hospital care," or "benefits payable in the event of sickness, accident, disability, or death" as required by section 1114(a) of the Bankruptcy Code. Id. at 919.

A similar conclusion is required here. The Survivor Benefit is paid on account of an existing obligation under the Supplemental Pension Plan—not as recompense for a beneficiary's death. The transfer of payments under the Supplemental Pension Plan to a surviving spouse does not transform these benefits from a pension benefit to a death benefit. The Survivor Benefit, therefore, does not qualify as a "retiree benefit" under section 1114(a).

Faced with these authorities, Ms. Clark cites no cases that support her position. Rather, the cases cited by Ms. Clark all arise outside the bankruptcy or section 1114 context, and none of Ms. Clark's cited cases address a pension plan comparable to the Supplemental Pension Plan at issue here. For instance, Ms. Clark relies on In re Lucent Death Benefits ERISA Litig., which held that a form of life insurance that was triggered upon a participating employee's death, "neither provides retirement income to employees nor results in a deferral of income", and thus, constituted a welfare benefit under ERISA. 541 F.3d 250, 254 (3d Cir. 2008). But Lucent Death Benefits did not consider whether a survivorship provision under a supplemental pension had the effect of causing that benefit to

become a "welfare benefit" for purposes of ERISA, and if so, whether such "welfare benefit" should be entitled to administrative priority via section 1114. In fact, the Third Circuit's decision in <u>Lucent Death Benefits</u> was specifically predicated on its concurrent finding that the "pensioner death benefit neither provides retirement income to employees nor results in a deferral of income by employees." <u>Id.</u> at 255.

Unlike here, the plan considered in <u>Lucent Death Benefits</u>, the Lucent Technologies Inc. Management Pension Plan, classified itself as <u>both</u> a pension plan and a welfare plan, thus allowing for both pension benefits and welfare benefits to arise under the same plan. 541 F.3d at 255 ("The Plan is classified as both a pension plan and welfare plan under [ERISA].") (quoting plan).

The Supplemental Pension Plan, by comparison, explicitly exists for the sole "purposes of providing deferred compensation and pension benefits." (A-16). The Supplemental Pension Plan is thus precisely the sort of plan distinguished by the <u>Lucent Death Benefits</u> court when it found that the plan at issue "neither provides retirement income to employees nor results in a deferral of income." <u>Lucent Death Benefits</u>, 541 F.3d at 255. So, the court's determination in <u>Lucent Death Benefits</u> that a form of life insurance was a "welfare benefit" for purposes of ERISA is in no way instructive as to whether a survivorship provision arising under a supplemental pension plan is a "welfare benefit," and by extension, a "retiree

benefit" entitled to administrative priority for purposes of section 1114 of the Bankruptcy Code.

Other cases cited by Ms. Clark are similarly off the mark.  The court in Kerber v. Qwest Pension Plan determined that a "Pensioner Death Benefit" in the form of twelve months' wages to an eligible survivor upon the death of a retired participant—a form of life insurance separate from any retirement income being received by the eligible beneficiary—was a welfare benefit under ERISA.  No. 05-cv-478, 2008 WL 4377562 at *6–13 (D. Colo. Sept. 19, 2008).  Of note, however, is that the Qwest Pension Plan provided eligible employees and retirees with both "employee pension benefits" and "employee welfare benefits," much like the plan in Lucent Death Benefits.  Id at *1; cf. Lucent Death Benefits, 541 F.3d at 255.

Ms. Clark misconstrues the Pensioner Death Benefit in Kerber as a "lump sum payout of a version of pensioner's retirement income as survivorship benefits" (Appellant Brief at 11), when in fact the Pensioner Death Benefit in Kerber arose under the "Death Benefit Plan" portion (and not pension benefit portion) of the Qwest Pension Plan—the same portion which gave rise to a "Sickness Death Benefit" and an "Accidental Death Benefit."  Kerber, 2008 WL 4377562 at *2.  By contrast, the survivorship provision at issue here is a continuation of an existing supplemental pension benefit—nothing more.  (A-25).  And again, in addition to providing a different type of death benefit than the one arising under the

27

Supplemental Pension Plan, the court in <u>Kerber</u> did not address the issue of whether such a benefit should be given administrative priority under section 1114 of the Bankruptcy Code.

Ms. Clark also cites <u>Rombach v. Nestle USA, Inc.</u>, which also did not address the issue of administrative priority under section 1114 of the Bankruptcy Code.  (A-11–12).  Instead, <u>Nestle</u> stands for the unremarkable proposition that a disability payment—a lump sum triggered by an injury—was a "disability benefit" and not a pension.  211 F.3d 190 (2d Cir. 2000).  <u>Nestle</u> also did not discuss whether a deferred compensation plan such as the Supplemental Pension Plan could somehow be deemed a "welfare plan" because of a survivorship provision— let alone how the principles underlying the Bankruptcy Code might be implicated by such a decision.

Courts uniformly agree that pension benefits that provide deferred compensation and retirement income even to surviving spouses of beneficiaries are pension benefits under ERISA and not subject to 1114 of the Bankruptcy Code.  In contrast, welfare benefits paid separately from pension payments, such as life insurance, even those arising under a plan that includes both pension and welfare benefits, are welfare benefits.  To date, Appellees have not found, and Ms. Clark has not cited, any case which has held that the type of retirement income provided under the Supplemental Pension Plan qualifies as a "retiree benefit" under section

1114.  Ms. Clark, therefore, asks this Court to determine that the Bankruptcy Court and every single case to address this issue simply "got it wrong."   Such a monumental departure from established law is unwarranted here.

## II.   THE SUPPLEMENTAL PENSION PLAN IS NOT A "PLAN, FUND, OR, PROGRAM" UNDER SECTION 1114(a) OF THE BANKRUPTCY CODE.

Because the Bankruptcy Code does not define the terms "plan, fund or program," courts have typically looked to the definition of a "plan" under ERISA when asked to determine whether a pension or other type of retiree program qualifies as a "plan, fund or program" under section 1114 of the Bankruptcy Code. Lyondell, 445 B.R. at 299; In re New York Trap Rock Corp., 126 B.R. 19, 22 (Bankr. S.D.N.Y. 1991).  At the same time, and as the Bankruptcy Court noted, such an analysis is guided by the Bankruptcy Code's more fundamental commitment to ensure equal distribution among creditors.  See, e.g., Howard Delivery Service, Inc. v. Zurich American Ins. Co., 547 U.S. 651, 655 (2006); see also (A-208) ("While courts should not automatically use ERISA definitions to fill in the blanks in the Bankruptcy Code, see Howard Delivery, 547 U.S. at 661-62 (citing cases), both sides agree that the ERISA definitions are relevant. Consequently, I consider them with due regard, however, for the different purposes that animate ERISA and the Bankruptcy Code.") (internal citation omitted).  Thus, case law interpreting ERISA may be relevant to, but is not dispositive of, matters

of statutory interpretation where questions of administrative priority are concerned. Rather, such priorities must still be construed narrowly.  See McFarlin's, Inc., 789 F.2d at 100 ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed.").

ERISA defines a "plan" as requiring an "ongoing administrative program to meet [an] employer's obligations."  Lyondell, 445 B.R. at 299 (citing Fort Halifax, 482 U.S. at 11–12).   In the Second Circuit, the existence of an ongoing administrative program sufficient to constitute a plan under ERISA exists where: (a) an employer's undertaking requires managerial discretion—that is, where the undertaking could not be fulfilled without ongoing, particularized, administrative analysis of each case; (b) a reasonable employee would perceive an ongoing commitment by the employer to provide some employee benefits; and (c) the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria.  See Kosakow, 274 F.3d 706; see also Lyondell, 445 B.R. at 299.

Despite Ms. Clark's arguments to the contrary, Fort Halifax does not address whether a pension's survivorship provision qualifies as a "plan, fund, or program" under ERISA.  Instead, Ms. Clark cites to a footnote referencing a hypothetical death benefit not otherwise addressed in that opinion.  Appellant Brief at 16

30

(citing <u>Fort Halifax</u>, 482 U.S. at 15).  Such an observation is, of course, <u>dicta</u>, and not controlling here.  And, even if such footnote were relevant (and it is not), the footnote addressed only a *one-time* death benefit, as opposed the sort of ongoing annuity at issue here.

Regardless, the Second Circuit's opinion in <u>Kosakow</u> remains clearly applicable to determine whether the Supplemental Pension Plan is actually a "plan, fund, or program" for purposes of section 1114 of the Bankruptcy Code, although, again, such analysis remains guided by principles of statutory construction operative in bankruptcy.  The Supplemental Pension Plan fails this test.  <u>First</u>, it is undisputed that the annuity payments arising under the Supplemental Pension Plan do not require any "ongoing, particularized, administrative analysis" or any "managerial discretion" after the amount of the payments is determined.  (A-186).  Because no ongoing administrative oversight is required, the Supplemental Pension Plan cannot then be a "plan, fund or program." <u>See</u> <u>Lyondell</u>, 445 B.R. at 300 (an annuity is "simply a stream of payments actuarially equivalent to a lump-sum payment, which is then distributed over time in a pre-determined fashion").

<u>Second</u>, there is simply no evidence that the Supplemental Pension Plan entails "an ongoing commitment to provide employee benefits in an insurance context."  No insurance whatsoever is provided.  Rather, the Supplemental Pension

31

Plan clearly provides income payments for retirees.  See id. ("Typically, when the only interaction between employer and employee is the distribution of checks, there is no 'ongoing relationship' under ERISA.") (internal citation omitted).

Third, the Supplemental Pension Plan requires no individualized analysis as to the circumstances of such employee's termination (as would be the case with disability payments).  (A-22, 24, 26); cf. Nestle 211 F.3d at 192 (finding that a disability retirement benefit was "due to disability").  Rather, payments under the Supplemental Pension Plan are a function of the employee's tenure with the Debtors and last date of employment.  (A-22, 24, 26).  Accordingly, the Survivor Benefit under the Supplemental Pension Plan does not meet any of the three factors of Kosakow to constitute a "plan, fund or program" pursuant to section 1114 of the Bankruptcy Code, and therefore cannot meet the definition of "retiree benefits" provided in section 1114(a).

Ms. Clark's argument to the contrary that the Supplemental Pension Plan is an ERISA plan because the Supplemental Pension Plan expressly states it is "intended to constitute both (i) an unfunded excess benefit plan as defined in ERISA 3(36), and (ii) an unfunded plan primarily for the purpose of providing deferred compensation and pension benefits for a select group of management or highly compensated employees for purposes of [ERISA]" ignores the key distinction between a "pension plan" and a "welfare plan" under ERISA.

32

Appellant Brief at 17; see 29 U.S.C. § 1002(1)–(2).[12]   The Supplemental Pension Plan's terms are clear that it is intended to constitute an "unfunded excess benefit plan" and not a "welfare plan," and therefore, not the type of "plan, fund, or program" contemplated by section 1114 of the Bankruptcy Code.  (A-16).  This statement is also consistent with the fact that the Supplemental Pension provides compensation (and not health benefits) to the beneficiaries in question.

Ms. Clark wrongly conflates the "complex claims procedure" required to administer death benefit plans such as life insurance as the same as administering a pension plan.  Appellant Brief at 20–21.  As described above, no such "ongoing, particularized, administrative analysis" or any "managerial discretion" is required to administer a single life annuity.  (A-19).  Accordingly, Ms. Clark's reliance on Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan, 239 F. Supp. 3d 710 (S.D.N.Y. 2017) and Verdier v. Thalle Constr. Co., No. 14-cv-4436, 2017 WL 78512 (S.D.N.Y. Jan. 5, 2017) is misplaced.

First, the plan at issue in Kuhbier placed an affirmative obligation on the company to monitor compliance with provisions of a deferred compensation plan that paid 35% of the commissions earned by producers in the twelve months prior

---

[12]   The Debtors note that Ms. Clark has raised this argument for the first time on appeal.  This argument is therefore waived—although it is ultimately inapplicable to the outcome here. See, e.g., In re Schick, 1998 WL 397849, *7 (S.D.N.Y. July 16, 1998) (holding that arguments raised for the first time in district court on appeal from bankruptcy court are not properly before the district court).

to their retirement to certain producers that met specified production goals.  Id. at 730.  The Supplemental Pension Plan places no such obligation on Avaya.  To be sure, the Supplemental Pension Plan does provide that a pension benefit can be terminated for violating a number of provisions; it simply does not require the company to monitor a retiree's actions.  (A-29).

Verdier addressed a plan covering disability benefits in which the company had a duty to monitor payments to ensure it was not paying disability benefits when a person no longer qualified.  Verdier, 2017 WL 78512 at *2.  It is true that the "plan" in Verdier also placed an obligation to comply with non-compete provisions, but again, such an obligation makes sense in a disability benefit context because the benefit is not perpetual.  Id.  Here, the "pension" benefits under the Supplemental Pension Plan are precisely that.

Finally, Ms. Clark's reliance on Kosakow for the proposition that a company's ability to suspend pension benefits in the event of termination "for cause" causes that plan to be a "plan, fund, or program" is similarly off the mark.  Kosakow dealt specifically with severance benefits.  Kosakow, 274 F.3d 706.  It would make sense, therefore, that if an employee were dismissed for cause, he or she would not receive the benefit.  But the severance plan in Kosakow was open to employees who could qualify for the plan as they worked for the company.  Id. Not so here.   The Supplemental Pension Plan covers only already-retired

employees whose benefits were calculated as of their last day of employment. (A-19) ("In the event of the death of a Participant before December 31, 2003, the Surviving Spouse of such Participant shall be eligible to receive a Survivor Benefit in the form of single life annuity equal to one-twelfth of 15 percent of the Participant's Annual Basic Pay **on the last day the Participant was on the active payroll before his or her death**.") (emphasis added).   No further or future calculation, therefore, is needed.

Additionally, Ms. Clark offers no evidence in support of whether the Supplemental Pension Plan is a plan, fund, or program, assuming incorrectly that this portion of the appeal is subject to a purely de novo review.   Appellant Brief at 2.   Determination of whether something is a plan, fund, or program, however, is a question of fact.   See, e.g., Kosakow, 274 F.3d at 740 ("Applying the same factors to the case at hand, we conclude that the district court did not err in determining that the severance pay policy in the present case constituted a 'plan' under ERISA."); see also Grimo v. Blue Cross/Blue Shield of Vermont, 34 F.3d 148, 152 (2d Cir. 1994) (remanding appeal of determination regarding plan, fund, or program back to district court for lack of factual findings).   And, in the Second Circuit, findings of fact are analyzed under a "clear error" standard.   See In re CBI Holding Co., Inc., 529 F.3d 432, 449 (2d Cir. 2008) ("The bankruptcy court's factual conclusions are reviewed for clear error, while its legal conclusions are

reviewed de novo.").  Here, Ms. Clark has offered no evidence beyond the terms of the document to attempt to demonstrate that the Supplemental Pension Plan is a plan, fund, or program.  Such absence of proof is fatal to Ms. Clark's argument because, again, Ms. Clark carries the burden of proof here, and therefore the Order can be affirmed on this basis alone.  See Patient Educ. Media, Inc., 221 B.R. at 101 ("The party asserting the status of an administrative claimant has the burden of proof.")

The Survivor Benefit payable under the Supplemental Pension Plan does not qualify as a "retiree benefit" for purposes of section 1114(a) of the Bankruptcy Code.  Instead, the Survivor Benefit is a continuation of an already existing pension obligation.  Moreover, the Supplemental Pension Plan does not constitute a "plan, fund, or program" under section 1114 because it requires no ongoing administrative function.  Benefits were established upon a pensioner's retirement from Avaya and all that remained for Avaya to do was pay the calculated amount. The Bankruptcy Court, therefore, correctly denied Ms. Clark's Motion.

## CONCLUSION

For the reasons set forth herein, the Debtors respectfully submit that the Bankruptcy Court's decision should be affirmed.

Dated: October 18, 2017          Respectfully submitted,

/s/ Jonathan S. Henes, P.C.
James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
- and -
Patrick J. Nash, Jr., P.C. (*pro hac vice pending*)
Ryan Preston Dahl (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

*Attorneys for Appellee Avaya Inc., et al.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limit in Rule 8015(a)(7)(B)(i) because it contains 9,587 words, excluding the parts of the document exempted by Rule 8015(a)(7)(B)(iii). This brief also complies with the typeface and typestyle requirements of Rule 8015(a)(5)-(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 18, 2017

*/s/ Jonathan S. Henes, P.C.*