Case No. 1:17-cv-07379-GHW

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AVAYA INC., et al.,<br><br>　　　　　　　　　Debtors. | On appeal from the United States Bankruptcy Court for the Southern District of New York, Ch. 11 Case No. 17-10089-SMB |
| MARLENE CLARK,<br>　　　　　　　Appellant,<br><br>　- against -<br><br>AVAYA INC., et al.,<br>　　　　　　　Appellees. | |

## REPLY BRIEF OF APPELLANT

Dated: October 23, 2017

Avery Samet
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
asamet@storchamini.com
jchubak@storchamini.com

*Attorneys for Appellant Marlene Clark*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.    THE BANKRUPTCY COURT ERRED IN CONCLUDING THE
      SURVIVOR BENEFIT IS NOT A DEATH BENEFIT UNDER SECTION
      1114(a) .......................................................................................................... 2

      A.    Under the Plain Meaning of Section 1114(a) the Survivor Benefit
            is a Benefit "in the Event of Death" ................................................... 2

            1.    Mrs. Clark's Survivor Benefit is Not the Same Benefit as,
                  and the Supplemental Plan Section Providing for Said Benefit
                  Does Not Provide for the Transfer of, her Husband's Pension
                  Benefit ....................................................................................... 4

                  (i)    The Benefits are Not the Same ........................................ 4

                  (ii)   Section 4.3 of the Supplemental Plan Does Not Provide
                         for the Transfer of Mr. Clark's Pension Benefit to Mrs.
                         Clark ................................................................................ 6

            2.    Mrs. Clark's Interpretation Would Not Yield an Absurd
                  Result ....................................................................................... 10

                  (i)    Mrs. Clark's Interpretation Would Not Result in
                         Unlimited Expansion of Section 1114's Priority
                         Provisions ...................................................................... 10

                  (ii)   Her Interpretation Would Not Result in Appointment
                         of a Retiree Committee in Every Case ........................... 11

                  (iii)  Payment of Survivorship Benefits, but Not Pension
                         Benefits, Would Not Be an Absurd Result ..................... 14

(iv)    Appointment of a Statutory Committee Comprised of Retirees in these Cases Would Not Be an Absurd Result .............................................................................15

B.    Looking to ERISA's Parallel Definition of Welfare Plan Supports Interpreting the Survivor Benefit as a Death Benefit.........................15

C.    The Legislative History of Section 1114 Shows That Congress Intended the Survivor Benefit to be a Death Benefit .........................17

II.    THE BANKRUPTCY COURT ERRED IN CONCLUDING THE SURVIVOR BENEFIT IS NOT PROVIDED UNDER A QUALIFYING PLAN, FUND, OR PROGRAM ..................................................................20

A.    Fort Halifax Compels the Opposite Result ........................................20

B.    Kosakow Compels the Opposite Result..............................................20

CONCLUSION.........................................................................................................25

CERTIFICATE OF COMPLIANCE.........................................................................

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Delphi Corp.*,
  No. 05-44481, 2009 WL 637315 (Bankr. S.D.N.Y. Mar. 10, 2009)................. 19

*In re Farmland Indus., Inc.*,
  294 B.R. 903 (Bankr. W.D. Mo. 2003) .............................................................. 8

*Fort Halifax Packing Co. v. Coyne*,
  482 U.S. 1 (1987)................................................................................. 2, 20, 22

*In re Kaiser Aluminum Corp.*,
  456 F.3d 328 (3d Cir. 2006) ............................................................................ 19

*Kerber v. Qwest Pension Plan*,
  No. 05-cv-478, 2008 WL 4377562 (D. Colo. Sept. 19, 2008) .................... 15, 16

*Kerber v. Qwest Pension Plan*,
  572 F.3d 1135 (10th Cir. 2009) ....................................................................... 15

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
  274 F.3d 706 (2d Cir. 2001) ....................................................... 2, 20, 21, 22, 23

*In re Lucent Death Benefits ERISA Litig.*,
  541 F.3d 250 (3d Cir. 2008) ...................................................................... 15, 16

*Rombach v. Nestle USA, Inc.*,
  211 F.3d 190 (2d Cir. 2000) ...................................................................... 15, 16

*In re Vebeliunas*,
  332 F.3d 85 (2d Cir. 2003) ............................................................................. 25

*In re Visteon Corp.*,
  612 F.3d 210 (3d Cir. 2010).  ........................................................... 10, 11, 19

*In re WorldCom, Inc.*,
  364 B.R. 538 (Bankr. S.D.N.Y. 2007)............................................................... 8

**Statutes and Rules**

11 U.S.C. § 1113 ..................................................................................... 19

11 U.S.C. § 1114 ............................................................................... passim

29 U.S.C. § 1055 ..................................................................................... 12

29 U.S.C. § 1002 ............................................................................... 16, 17

29 U.S.C. § 1341 ............................................................................... 18, 19

Fed. R. Bankr. P. 8009 ........................................................................... 13

Fed. R. Bankr. P. 8018 ............................................................................. 1

**Other Authorities**

Andrew Scurria and Lillian Rizzo,
  Some Avaya Pensioners Rethink Retirement Plans After Bankruptcy Deal,
  Wall Street Journal (Aug. 10, 2017) ................................................. 14

S. Rep. No. 100-119 (1987) ............................................................... 17, 18

# INTRODUCTION[1]

The Debtors and the Committee do not actually dispute Mrs. Clark's plain language interpretation of section 1114(a).  Rather, they argue that even though her right to payment was triggered by her husband's death, such right should not be considered a death benefit because it is too intertwined with her husband's pension benefit to be considered a separate benefit.  As explained in her principal brief and below, that argument fails, as her benefit arises under a different section of the Supplemental Plan than that which provided her husband with pension benefits, and the section conferring her benefits provides for the establishment of a totally independent payment stream.

Their alternative argument—that Mrs. Clark's interpretation should be rejected because it would lead to absurd results, namely, surviving spouses would be entitled to continue receiving death benefits during the Debtors' bankruptcy cases, and accrued benefits would be entitled to administrative priority, pursuant to section 1114(e), and surviving spouses would be entitled to representation in the

---

[1]     Capitalized terms used but not defined herein have the meanings ascribed to them in Appellant Marlene Clark's principal brief [ECF No. 8] ("Clark Br."). Appellee-Debtors' brief [ECF No. 15] is cited herein as "Debtor Br., and the brief [ECF No. 14] of the Official Committee of Unsecured Creditors ("Committee") is cited herein as "Committee Br."  Appendix citations are to that accompanying Mrs. Clark's brief, to avoid confusion.  (The Debtors filed a substantially identical appendix, notwithstanding Rule 8018(b)(2), which permits an appellee to file an appendix of materials omitted by the appellant.)

form of a statutory committee, pursuant to section 1114(d)—fares no better.  Those results are not absurd, and in fact are consistent with the statute's legislative purpose, in addition to its plain language.

The Debtors also argue that the Supplemental Plan is not an eligible plan, fund, or program under section 1114(a).  That argument, however, is premised on ignoring, as mere dicta, Footnote 9 of the Supreme Court's decision in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), which provides that the presence of a death benefit even less complicated to administer than the single life annuity at issue herein causes a program to constitute an ERISA plan.  That argument also fails because it is based on improper application of the factors used by the Second Circuit in *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 737 (2d Cir. 2001) and willful blindness to the fact that the Supplemental Plan describes itself as an ERISA plan.

## ARGUMENT

## I.  THE BANKRUPTCY COURT ERRED IN CONCLUDING THE SURVIVOR BENEFIT IS NOT A DEATH BENEFIT UNDER SECTION 1114(a)

### A.  Under the Plain Meaning of Section 1114(a) the Survivor Benefit is a Benefit "in the Event of Death"

In her principal brief, Mrs. Clark argued the Survivor Benefit is a death benefit under the plain meaning of section 1114(a), and also emphasized that the statute does

not exclude death benefits provided under a plan that also provides non-priority pension benefits to the retiree.  (Clark Br. pp.9-10.)

In response, the Debtors argue Mrs. Clark's plain language interpretation must be rejected.  The Debtors argue the Survivor Benefit is not a death benefit under section 1114(a) because it is actually one and the same as her husband's benefit under the Supplemental Plan (Debtor Br. pp.13, 16, 20-22), or alternatively, should be treated as the same because the applicable Supplemental Plan provision providing for Mrs. Clark to receive monthly payments upon her husband's death transfers her husband's benefit to her (*id*. pp.23-29).  The Committee argues Mrs. Clark's plain language interpretation should be "disregarded" because she is not actually entitled to benefits under the Supplemental Plan section that the Debtors represented she received benefits under (Committee Br. pp.10-11), a representation the Bankruptcy Court adopted in its decision (A-174-175).

The Debtors and Committee also argue Mrs. Clark's interpretation should be rejected because it would yield several purportedly absurd results, namely: (1) the "practically unlimited expansion of the administrative priority provisions of section 1114" (Debtor Br. p.20; *see also* Committee Br. p.9); (2) "the appointment of a retiree committee in every case where a debtor attempts to modify or stop paying survivor benefits" (Debtor Br. p.20; *see also* Committee Br. pp.9-10); (3) payment of survivorship benefits during a chapter 11 case notwithstanding the termination of

3

pension benefits for retirees (Committee Br. p.10); and (4) the appointment of a statutory committee, pursuant to section 1114(d), comprised of retired employees but charged with representing the rights of surviving spouses (Debtor Br. p.17). Each argument fails, as described below.

      1.    <u>Mrs. Clark's Survivor Benefit is Not the Same Benefit as, and the Supplemental Plan Section Providing for Said Benefit Does Not Provide for the Transfer of, her Husband's Pension Benefit</u>

      *(i)*    *The Benefits are Not the Same*

The Debtors offer two arguments for their position that Mr. Clark's pension benefit and Mrs. Clark's Survivor Benefit are one and the same benefit. First, they state the two benefits must be the same because pension benefits are community property under Texas law; therefore, Mr. Clark's death did not give rise to an independent Survivor Benefit because Mrs. Clark had an interest in his pension benefit while he was alive. (Debtor Br. pp.8, 13, 16.) Second, the Debtors argue that Mr. Clark's pension benefit and Mrs. Clark's Survivor Benefit must be the same because they are both deferred compensation under the Supplemental Plan. (*Id*. pp.20-22.)

Both arguments fail. That Mrs. Clark had an interest in her husband's pension benefit provided under Section 4.2 of the Supplemental Plan under Texas law has no bearing on the separate benefit provided to her under Section 4.3 upon her husband's death. It further would make no sense to link whether a surviving spouse

has a retiree benefit to the state of his or her domicile because it would produce an absurd result whereby the surviving spouses of deceased pensioners living in non-community property states are treated as having retiree benefits, but surviving spouses receiving an identical benefit under the same plan but living in community property states are not.

Likewise, that the Supplemental Plan states in its Introduction it is "intended" to constitute an unfunded plan, "<u>primarily</u> for the purpose of providing deferred compensation and pension benefits" (A-016, emphasis added) to retirees,[2] does not preclude such plan from providing other benefits to their dependents, such as death benefits for their spouses, as it does in a different section of the plan, using a different payment methodology. In other words, that pension benefits are triggered by the retiree's separation from service does not change the fact that the Survivor Benefit is not.

---

[2] The Debtors misquote this sentence in their brief, stating the Supplemental Plan by its terms "exists for the <u>sole</u> 'purposes of providing deferred compensation and pension benefits.'" (Debtor Br. p.26, citing A-016, emphasis added; *see also id.* p.7, stating the quoted language demonstrates the plan "was intended to do no more and no less than provide 'deferred compensation and pension benefits' for a select group of … employees.")

> (ii)   *Section 4.3 of the Supplemental Plan Does Not Provide for*
> *the Transfer of Mr. Clark's Pension Benefit to Mrs. Clark*

One-third of the Debtors' argument is dedicated to explaining why the transfer of a pension benefit from the retiree to his or her surviving spouse does not transform the former into a priority claim.

This argument, however, is based upon the false premise that the operative provisions of the Supplemental Plan provide for the transfer of Mr. Clark's pension benefit to Mrs. Clark.  Notwithstanding the fact that the motion does not specify which section of the Supplemental Plan Mrs. Clark's benefit arose under, the Debtors represented that her husband's benefit arose under Section 4.2, and that her benefit arose under Section 4.3.  (A-053, 055-056, 058.)  So did the ad hoc crossover group.  (A-073.)  The Bankruptcy Court accepted that representation as true in its Decision.  (A-174-175.)  And unlike the Committee (Committee Br. p.11), the Debtors are not shying away from their prior representation on appeal. (Debtor Br. p.27, citing A-025, or Section 4.3, for the proposition that "the survivorship provision at issue here is a continuation of an existing supplemental pension benefit.")

However, the Debtors' characterization of the benefit is at odds with the actual language of the Supplemental Plan.  Section 4.2 provides for a "Participant," defined as an eligible retiree, to receive "Minimum Retirement Benefit," defined as payments, "in the form of a <u>single life annuity</u>, equal to one-twelfth of 15 percent of

the Participant's Annual Basic Pay on the last day the Participant was on the active payroll," subject to specified offsets.  (A-024.)  Section 4.3 provides "the Surviving Spouse of such Participant shall be eligible to receive a Survivor Benefit in the form of <u>single life annuity</u> equal to one-twelfth of 15 percent of the Participant's Annual Basic Pay on the last day the Participant was on the active payroll before his or her death."  That is, each spouse gets his or her own single life annuity.  Thus, there is no transfer of a payment stream.[3]

Notably, this is in contrast to other Supplemental Plan provisions which actually provide for the transfer of benefits described by the Debtors.  *See*, *e.g.*, Section 3.1 (A-022), which defines "Participant" as the eligible retiree <u>and</u> his or her surviving spouse, and Section 3.2 (*id*.), which describes the applicable benefit as being "payable in the form of an annuity," not a single life annuity.  Because the Supplemental Plan provisions at issue herein provide an independent benefit, payable on the retiree's death for the rest of the surviving spouse's life in equal monthly payments, pursuant to a section of the Supplemental Plan separate from that providing pension benefits to the retiree, case law ruling out priority treatment for

---

[3]     The Committee suggests the transfer is affected pursuant to the Supplemental Plan's definition of "Surviving Spouse."  (Committee Br. p.3, citing A-022.)  But that definition merely defines such spouse as "A deceased Participant's surviving Lawful Spouse who is eligible to receive a survivor benefit under the applicable Qualified Plan."

benefits that are a mere continuation of a qualifying spouse's pension benefits is inapposite.[4]

The Committee (listed on the docket sheet as an "ADR Provider," not a party) appears to have filed a brief for the principal purpose of arguing this Court should disregard that portion of Mrs. Clark's brief arguing Section 4.3 provides an independent benefit, both because it was not raised below (Committee Br. p.10, n.4) and because said benefit was eliminated in 2003, pursuant to the Supplemental Plan (*id.* p.11).[5]

---

[4]     Of the decisions cited on the issue of transferred benefits, just two involved a supplemental pension plan, as opposed to a private agreement that necessarily falls outside of the scope of section 1114(a). The first, *In re Farmland Indus., Inc.*, 294 B.R. 903 (Bankr. W.D. Mo. 2003), did not actually address the relative priority of any survivorship benefit under that plan (*id.* at 909), if such benefit existed at all. Notably, however, it held that life insurance benefits are section 1114(a) death benefits "[b]ecause [they] provide benefits in the event of death" (*id.* at 921), which is significant because section 1114(a) provides a death benefit is a retiree benefit, whether provided 'through the purchase of insurance or otherwise." The other, *In re WorldCom, Inc.*, 364 B.R. 538 (Bankr. S.D.N.Y. 2007) held a retired director's deferred compensation claim arising under a non-qualified, deferred compensation plan was not entitled to priority, and that the plan "provided for alternative payment schemes in the event of her death or disability" did not change that. *Id.* at 549-50 ("the purpose of the … Plan was to defer income … That the timing and method of payment of the deferred income may have been altered in the event of death or disability is merely incidental to that purpose"). Putting aside that section 1114(a) does not have an incidental/primary purpose limitation (A-098), the Supplemental Plan provisions at issue herein <u>do</u> change the timing and method of payment upon the death of the retiree, as noted above.

[5]     Presumably these arguments are being raised by the Committee because of concern that the Debtors are estopped from pursuing the same, given their prior and current position.

These arguments fail in any event.  The waiver argument fails, both because the question of whether Section 4.3 provides for the transfer of Mr. Clark's benefits or whether it provides an independent benefit presents a pure legal question, and because consideration of Mrs. Clark's argument is necessary to prevent manifest injustice, given that it is the Debtors that argued Mrs. Clark's entitlement arises under Section 4.3.  *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000); *see also Coogan v. Smyers*, 134 F.3d 479, 487 (2d Cir. 1998) (reaching merits of "purely legal issue that is easily resolved").

The Committee's alternative argument fails to consider that the temporal limits on Section 4.3's application in the Supplemental Plan were waived.[6] Regardless of why Mrs. Clark received payments under the Supplemental Plan, notwithstanding the purported elimination of benefits under Section 4.3 in 2004, given the Debtors' representation that she received benefits under such section, this Court should treat that section as applicable for the purposes of this appeal, and

---

[6]     Such a waiver would be consistent with: (1) the Debtors' having sent her the payment summary annexed to her motion and proof of claim (A-004, 041) which provides she was entitled to monthly payments under the Supplemental Plan notwithstanding that her husband died in 2014, after the purported elimination of benefits under Section 4.3; (2) the Debtors' having made payments to her from her husband's death in 2014, until the Debtors terminated Supplemental Plan payments upon their seeking bankruptcy protection; and (3) the Debtors' having amended their Schedules of Assets and Liabilities (included in the Record on Appeal transmitted to this Court, pursuant to ECF No. 11, but not included in the Appendix) after Mrs. Clark's motion was filed, to list Mrs. Clark as being owed a non-contingent, undisputed, liquidated claim for the present value of her benefit.

consider the same in determining if Mrs. Clark was transferred her husband's pension benefit.

### 2.   Mrs. Clark's Interpretation Would Not Yield an Absurd Result

To qualify as absurd under the plain language rule, the result flowing from application of the statute's plain language must either be "demonstrably at odds with the intentions of its drafters" or "an outcome so bizarre that Congress could not have intended it." *Visteon*, 612 F.3d at 231. This is a tall burden, which the Debtors and Committee have failed to meet.

### (i)   Mrs. Clark's Interpretation Would Not Result in Unlimited Expansion of Section 1114's Priority Provisions

The Debtors argue that Mrs. Clark's interpretation of section 1114(a) would result in the unlimited expansion of section 1114's administrative priority provisions. (Debtor Br. pp.10, 18-20.) That this is false is clear from a cursory review of those provisions.

Section 1114's priority provisions are located in subsection (e). Subsection (e)(1) provides during a chapter 11 case, the debtor "shall timely pay and shall not modify any retiree benefits," except on consent or if the court approves such modification, pursuant to subsections (g)-(h), which prescribes the manner in which the debtor and the "authorized representative" of retiree benefit recipients shall negotiate the modification of retiree benefits before the debtor seeks court approval of any modification to said benefits. Subsection (e)(2) provides retiree benefits that

accrue prior to confirmation of a chapter 11 plan are entitled to administrative priority.

Under Mrs. Clark's interpretation of the statute, the Debtors would be required to continue paying her the $1,433.16/month payable under the Supplemental Plan (A-041), and would also be required to pay every other widow or widower of a retiree that commenced receiving their survivorship benefit prior to the commencement of or during the Debtors' chapter 11 cases, unless they agreed to less favorable treatment, or the Bankruptcy Court approved a modification of said benefits, pursuant to section 1114(g)-(h).

Given that "[a]pproximately 830 individuals are [Supplemental Plan] beneficiaries" (A-052-053), the vast majority of which appear from other filings to be retirees, not surviving spouses, it is difficult to understand why the continuation of monthly payments to surviving spouses during the Debtors' chapter 11 cases under section 1114(e)(1) would impose a massive burden on their estates. And absent modification of surviving spouses' retiree benefits during the chapter 11 cases, the Debtors would be free to modify the same upon emergence from bankruptcy. *In re Visteon Corp.*, 612 F.3d 210, 236 (3d Cir. 2010).

> *(ii)  Her Interpretation Would Not Result in Appointment of a Retiree Committee in Every Case*

The Debtors argue Mrs. Clark's interpretation would result in the appointment of a statutory committee of retired employees, under section 1114(d), in "every case"

because "all" pension plans include a survivorship provision, pursuant to 29 U.S.C. § 1055(a) (Debtor Br. pp.4-5, 9, 20-21.)

That is false. Mrs. Clark's interpretation would only result in appointment of a committee if multiple contingencies are satisfied.  First, because section 1114(c) provides for a union to be the default authorized representative of retiree benefit recipients, the applicable retirees must have been non-union, or if such retirees were union then their union must have elected not to serve as authorized representative, pursuant to section 1114(c).[7]

Second, the specific pension plan at issue must include a survivorship feature. As noted above, the Debtors represent in various parts of their brief that "all" pension plans include a survivorship feature, pursuant to 29 U.S.C. § 1055(a).  (Debtor Br. pp.4, 20-21.)  But section 1055(a) only applies to "qualified" pension plans, a point acknowledged in a footnote. (*Id.* p.7 n.4.)  The Debtors suggest this is a distinction without difference because "as a matter of … practice" non-qualified plans, such as the Supplemental Plan, include a survivorship feature just like their qualified counterparts.  (*Id.* p.21.)  Putting aside that the record is devoid of evidence on this question, there is nothing absurd about requiring a debtor that had no statutory

---

[7]     As a practical matter, it is extremely unusual for a union to decline to serve as authorized representative.  Nevertheless, the statute gives the union the option not to serve in the event of a conflict.

obligation to provide a survivorship benefit in its pension plan to comply with section 1114 when it actually does so.

Third, according to the Debtors and the Committee, where the pension plan includes a survivorship feature, such feature cannot provide for the mere transfer of the retiree's pension benefit to his or her spouse on the retiree's death as that would remove the surviving spouse's benefit from the scope of section 1114(a), but rather, would need to provide for an independent payment stream to the surviving spouse.

Fourth, section 1114(c)-(d) only applies where the debtor seeks to modify or stop paying retiree benefits.  Notwithstanding that the Debtors terminated monthly payments to Supplemental Plan beneficiaries on the commencement of their cases, it is undisputed the Debtors continued making monthly payments to beneficiaries under their qualified plans postpetition (A-044, 170; Committee Br. p.3.) Had the Debtors wished to avoid the appointment of a committee, they could have simply continued paying accrued survivorship benefits under the Supplemental Plan, as they did with benefits under their qualified plans.[8]

---

[8]     The Debtors also refer this Court to provisions of their proposed chapter 11 plan governing post-confirmation treatment of one of their two qualified pension plans, to highlight that their plan contemplates modification to minimum funding contributions under their qualified plan postconfirmation. (Debtor Br. p.6, n.3.) The terms of that plan are irrelevant, both because the Debtors elected to not include it in the Record on Appeal, pursuant to Rule 8009(a)(2), and because section 1114 does not apply postconfirmation.

> (iii) *Payment of Survivorship Benefits, but Not Pension Benefits, Would Not Be an Absurd Result*

The Committee argues Mrs. Clark's interpretation "could conceivably lead to the absurd scenario where retirees could have their pensions … terminated, while surviving spouses would continue to receive payments as administrative expenses of the estate.  Congress surely would have spoken more clearly had it intended such a result."  (Committee Br. p.10.)

This result is not absurd.  As noted below (A-102), it makes practical sense that Congress wished to protect surviving spouses' death benefits, but not retirees' pension benefits, given that the former often sacrifice their careers to raise children while permitting the latter to advance in their respective careers with the debtor. That is, because as a group retirees are far more likely than surviving spouses to have a skillset that would permit them to obtain gainful employment if a debtor terminated monthly payments post-bankruptcy, terminating payment of monthly death benefits to surviving spouses would likely present a major financial imposition, as compared to terminating monthly pension payments to retirees.[9]

---

[9]    *See also* Andrew Scurria and Lillian Rizzo, Some Avaya Pensioners Rethink Retirement Plans After Bankruptcy Deal, Wall Street Journal (Aug. 10, 2017).

(iv)   *Appointment of a Statutory Committee Comprised of Retirees in these Cases Would Not Be an Absurd Result*

The Debtors argue Mrs. Clark's interpretation would produce an absurd result because it would require the appointment of a retiree committee, pursuant to section 1114(d), comprised of retirees, but charged with representing the rights of spouses that hold claims for retiree benefits, including spouses that are not widows/widowers and whose claims are contingent.  (Debtor Br. p.9.)  But the Debtors do not explain why this result would be absurd.   Married retirees would likely wish to see survivorship benefits protected in bankruptcy, notwithstanding the fact that by law their own pension claims are non-priority. Nor is Mrs. Clark asking for the appointment of a committee comprised of surviving spouses, in contravention of section 1114(d).  (*Cf.* Debtor Br. p.17.)

**B.     Looking to ERISA's Parallel Definition of Welfare Plan Supports Interpreting the Survivor Benefit as a Death Benefit**

In her principal brief, Mrs. Clark argued that case law interpreting ERISA's definition of welfare plan, part of which section 1114(a) tracks the language of, supports Mrs. Clark's interpretation of section 1114(a), citing *In re Lucent Death Benefits ERISA Litig.*, 541 F.3d 250 (3d Cir. 2008), *Rombach v. Nestle USA, Inc.*, 211 F.3d 190 (2d Cir. 2000), and *Kerber v. Qwest Pension Plan*, No. 05-cv-478, 2008 WL 4377562 (D. Colo. Sept. 19, 2008), *aff'd*, 572 F.3d 1135 (10th Cir. 2009).

The Debtors and Committee attempt to distinguish *Lucent* and *Kerber* on the ground that the pension plans at issue there styled themselves as both a pension and welfare plan, and on the ground that they provided a form of life insurance. (Debtor Br. pp.25-28; *see also* Committee Br. pp.14-15.)

However, these are distinctions without difference.  Because section 1114(a) tracks the definition of welfare plan under ERISA, the question before this Court is whether the Survivor Benefit is provided under a welfare plan under ERISA. *Lucent*, *Rombach*, and *Kerber* make clear that it is, regardless of how the plan is styled, emphasizing the "to the extent" language in 29 U.S.C. § 1002(1).  *See*, *e.g.*, *Kerber*, 2008 WL 4377562, at *8 ("an employer's label for a particular benefit cannot supersede the clear directives of ERISA.  *Rombach* … Under ERISA, any plan is a welfare plan 'to the extent that such plan' provides 'benefits in the event' of 'death' … The meaning and function of the Pensioner Death Benefit are clear; it is a benefit triggered by death and is, therefore, a welfare benefit," notwithstanding the plaintiffs' argument that the plan itself described the benefit as a pension benefit). Moreover, whether the plans at issue in the ERISA decisions provided a form of life insurance or some other benefit is irrelevant because section 1114(a) provides a qualifying benefit is a retiree benefit regardless of whether it is provided through the purchase of insurance.  (Clark Br. pp.13-14.)

The Committee also argues the ERISA definition of welfare plan does not support Mrs. Clark's position because section 1002(1) includes a subsection (B) which excludes pensions on retirement or death from the definition of welfare plan. (Committee Br. p.13.)

This argument, however, ignores that section 1002(1) is drafted in the alternative ("welfare plan" means "any plan … to the extent that such plan … was established … for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) … or (B)"), and that section 1114(a) does not track section 1002(1)(B) even though it tracks subsection (A) and the language that precedes it.  Indeed, the Bankruptcy Court acknowledged as much. (A-184, noting section 1114(a) "tracks the definition of 'welfare plan' under 29 U.S.C. § 1002(1)(A)" (not (B)).

## C. The Legislative History of Section 1114 Shows That Congress Intended the Survivor Benefit to be a Death Benefit

In her principal brief, Mrs. Clark argued that notwithstanding the fact that the Bankruptcy Court erred by resorting to legislative history in the first instance, the legislative history supports her interpretation of section 1114.  (Clark Br. pp.13-16.)

In response, the Debtors argue the statute is sufficiently ambiguous to render resort to legislative history appropriate (Debtor Br. p.18), which they argue supports their interpretation.  Specifically, they argue the statement in the Senate Report for the Retiree Benefits Bankruptcy Protection Act of 1988, "This bill is not intended to

affect current law treatment of pension benefits in Chapter 11 proceedings," means section 1114(a) was not intended to cover the benefits at issue herein.  (Debtor Br. pp.14-15; *see also id.* p.19.)   They also point out ERISA already provides a mechanism for terminating pension benefits in bankruptcy (*id.* p.15, citing 29 U.S.C. § 1341), and warn granting the relief sought by Mrs. Clark would put section 1114 in conflict with the ERISA-mandated standard for pension termination in chapter 11 reorganizations.  (*Id.* p.9.)

The Debtors are wrong on all fronts.  The Debtors point to no pre-1988 case law addressing treatment of survivor benefit claims under a non-qualified, supplemental pension plan, that accrued prior to commencement of the chapter 11 case, nor are said benefits a pension benefit described in the Senate Report. Further, reversal of the Bankruptcy Court's decision would not put section 1114 in conflict with ERISA's standard for terminating pension obligations.   Section 1341(c)(1) and (c)(2)(B)(ii) provides a single-employer plan may be terminated in chapter 11 in a "distress termination" if the Bankruptcy Court determines that the denial of such relief would result in cash flow insolvency or the debtor's inability to continue in business outside of bankruptcy.  This standard, in turn, is substantially similar to that in Section 1114 for modifying retiree benefits,[10] and courts apply both

---

[10]     Compare  11 U.S.C.  § 1114(g)(3) (after negotiations under section 1114(f) between debtor and authorized representative fails, the Bankruptcy Court shall authorize the modification of retiree benefits on finding that "such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the

in the same manner. *See*, *e.g.*, *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 332 (3d Cir. 2006) ("the Court is persuaded by the Bankruptcy Court's analysis which construes Section 1341[(c)(2)(B)] of ERISA *in pari materia* with Section 1113 of the Bankruptcy Code," which uses the same standard as that in section 1114 for determining whether a collective bargaining agreement should be modified, and rejecting the PBGC's contention "that the 'fair and equitable' test under Section 1113 ... has no place in the termination inquiry and the only standards that are applicable are those contained in Title IV of ERISA"). That is why Bankruptcy Courts typically hear distress termination applications in tandem with motions for relief under sections 1113/14. *Id.*[11]

---

debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities") with 11 U.S.C. § 1341(c)(2)(B)(ii) (authorizing distress termination in chapter 11 where Bankruptcy Court "determines that, unless the plan is terminated, such person will be unable to pay its debts pursuant to a plan of reorganization and will be unable to continue in business outside the chapter 11 reorganization process").

[11]     The Debtors also cite *In re Delphi Corp.*, No. 05-44481, 2009 WL 637315, at *3 (Bankr. S.D.N.Y. Mar. 10, 2009) in support of their argument that the legislative history supports their interpretation. (Debtor Br. p.11.) *Delphi* was subject to significant criticism by the Third Circuit in *Visteon*, 612 F.3d at 226 for the manner in which it applied the plain language rule and considered legislative history.

## II. THE BANKRUPTCY COURT ERRED IN CONCLUDING THE SURVIVOR BENEFIT IS NOT PROVIDED UNDER A QUALIFYING PLAN, FUND, OR PROGRAM

### A. *Fort Halifax* Compels the Opposite Result

In her principal brief, Mrs. Clark argued that the Bankruptcy Court erred by failing to consider if the Supplemental Plan as a whole, instead of just the Survivor Benefit, provided for an ongoing administrative program, under the Supreme Court's *Fort Halifax* decision, and because *Fort Halifax* held the presence of a death-benefit payment to beneficiaries renders a program an ERISA plan. (Clark Br. pp.17-18.) In response, the Debtors argue this Court should ignore Footnote 9 of *Fort Halifax*, because the death benefit described there (a one-time payment) differs from the benefit at issue herein. (Debtor Br. pp.30-31.) This argument fails, of course, as the death benefit at issue in Footnote 9 would require even less administration than the single-life annuity Survivor Benefit at issue herein, as the former does not require that the plan administrator monitor when the surviving spouse beneficiary passes away.

### B. *Kosakow* Compels the Opposite Result

Mrs. Clark argued the Bankruptcy Court erred by failing to weigh all three factors used by the Second Circuit in *Kosakow, P.C.*, 274 F.3d at 737, instead applying just the first factor in reaching its conclusion ("undertaking requires managerial discretion, that is … the undertaking could not be fulfilled without

20

ongoing, particularized administrative analysis of each case"), and because a review of the Supplemental Plan makes clear that the first *Kosakow* factor weighs in her favor on the issue of whether the Supplemental Plan is an ERISA plan, fund or program, as does the fact that the plan styles itself an ERISA plan.  (Clark Br. pp.19-22.)

In response, the Debtors argue that the first *Kosakow* factor is not satisfied because annuity payment administration does not require managerial discretion, and can be fulfilled without ongoing, particularized administrative analysis of each case. (Debtor Br. pp.31, 33-34.)  In addition, the Debtors argue the remaining *Kosakow* factors weigh in their favor.  (*Id*. pp.31-32.)  The Debtors further argue that the Supplemental Plan styles itself an ERISA plan is irrelevant because it <u>is</u> in fact a pension plan, and such styling does not render it a welfare plan, as the Debtors allege is required for Mrs. Clark to carry her burden on this issue. (*Id*. pp.32-33.)

Each of the foregoing arguments fails.  At the outset, the question before this Court is not whether the Supplemental Plan satisfies all three *Kosakow* factors, but whether the Bankruptcy Court erred by considering just the first, and whether the Bankruptcy Court erred in actually applying that factor.  This Court need not address the second and third factors to conclude that it did.  Nevertheless, Mrs. Clark addresses the Debtors' argument that the Supplemental Plan does not satisfy any of the three factors.

The Debtors' argument that the first *Kosakow* factor is not satisfied is based the false premise that the Survivor Benefit provision, as opposed to the Supplemental Plan itself, must satisfy this factor.  Mrs. Clark disputes the Debtors' position, and submits this Court should consider the Supplemental Plan as a whole (Clark Br. pp.19-23), but even if this Court were to limit its analysis to the Survivor Benefit, and disregard Footnote 9 of *Fort Halifax* as mere dicta, that provision by itself would satisfy the first factor as it requires the plan administrator to monitor when non-retiree payees pass away, unlike life insurance, or a lump-sum death benefit, which do not.

The Debtors' argue the second *Kosakow* factor is not satisfied because the Supplemental Plan does not entail "an ongoing commitment to provide employee benefits in an insurance context."  (Debtor Br. p.31.)  However, the quoted language, taken from *In re Lyondell Chem. Co.*, 445 B.R. 296, 300 (Bankr. S.D.N.Y. 2011), does not accurately describe the second factor, which is actually far broader. *Kosakow*, 274 F.3d at 737 (quoted in A-185) (second factor is whether "a reasonable employee would perceive an ongoing commitment by the employer to provide some employee benefits").  Significantly, this factor does not require that the hypothetical employee perceive an ongoing commitment under the Supplemental Plan to provide welfare benefits; the only requirement is that some employee benefit be perceived. This factor is undoubtedly satisfied.

The Debtors argue the third *Kosakow* factor (whether "the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria") is not satisfied, notwithstanding that the Supplemental Plan provides for forfeiture of benefits for cause (Debtor Br., citing A-029, which is Supplemental Plan § 6.4) because "payments under the Supplemental … Plan are a function of the employee's tenure with the Debtors and last date of employment" (Debtor Br. p.32, citing A-022, 024, and 026, the "Participation" clauses governing the three categories of benefits provided pursuant to the Supplemental Plan").

The Participation clauses, however, do not state as much, and make no mention of good standing on employees' last date of employment.[12]  Moreover, termination for cause is just one of the three mechanisms for reducing pension benefits under Section 6.4 (A-029), the others being a determination the Participant engaged in misconduct (Section 6.4(b)), or violated a non-compete requirement (Section 6.4(c)).  Further, a determination as to the latter two can happen after retirement and the commencement of pension payments.  In short, continuing

---

[12]    Section 3.1 of the Supplemental Plan (governing the "Excess Retirement Benefit") links eligibility to receipt of a benefit that was capped under the underlying qualified plan, and makes no mention of last date of employment or tenure.  Section 4.1 links eligibility to the employee's title alone on the last date of his or her employment, and eligibility under the underlying qualified plan, but also provides an alternative whereby eligibility exists if the Officer was employed for five years and his or her employment was terminated on or after his or her 62nd second birthday. Section 5.1 provides four different criteria.

eligibility is not linked to tenure on the last date of employment, and is in fact far more complex than that.  And to the extent a payment dispute arises, the same must be administered by the Avaya Employee Benefits Committee, which is separate from the plan administrator, and which is afforded considerable discretion.

The Debtors argue that the Supplemental Plan styles itself an ERISA plan is irrelevant because it does not admit to being a welfare plan, only a pension plan. However, whether the plan admits to being a pension or welfare plan is irrelevant because both are ERISA plans (29 U.S.C. § 1002(3)), and that is all that matters for the purpose of determining if the second element of section 1114(a) is satisfied.  11 U.S.C. § 1114 (benefit is a "retiree benefit" if it is a welfare benefit provided "under any plan, fund, or program" established pre-bankruptcy); A-185 (courts look to whether plan is an ERISA plan in interpreting section 1114); *see also Kerber*, 2008 WL 4377562, at *8 (quoted above).[13]

---

[13]     The Debtors argue Mrs. Clark waived this argument by failing to raise it below.  (Debtor Br. p.33.)  However, she stated in her reply whether the Supplemental Plan is a welfare plan, pension plan, or both, it is necessarily an ERISA plan. (A-099-100.)  And the Bankruptcy Court emphasized the importance of whether the Supplemental Plan is an ERISA plan to the second issue on appeal in its decision. (A-185.)  Therefore, this Court should consider that the plan styles itself an ERISA plan, particularly given the discretion afforded federal appellate courts to consider issues not raised below when they are pure legal ones not requiring additional factfinding.  *See*, *e.g.*, *Baker*, 239 F.3d at 420; *Coogan*, 134 F.3d at 487.

Finally, contrary to the Debtors' position (Debtor Br. pp.35-36), whether the Supplemental Plan is or is not an ERISA plan is a pure legal question because it did not require any fact-finding on the part of the Bankruptcy Court; rather, it just requires a review of the plan itself.  However, even if this were a "mixed question

## CONCLUSION

This Court should reverse, and conclude that Mrs. Clark's Survivor Benefit is a retiree benefit under section 1114(a), and instruct the Bankruptcy Court to grant Mrs. Clark the related relief that flows from that conclusion, pursuant to section 1114(d)-(e).

Dated:  October 23, 2017                    Respectfully submitted,

                                            /s/ Jeffrey Chubak
                                            Avery Samet
                                            Jeffrey Chubak
                                            STORCH AMINI PC
                                            140 East 45th Street, 25th Floor
                                            New York, New York 10017
                                            (212) 490-4100
                                            asamet@storchamini.com
                                            jchubak@storchamini.com

                                            *Attorneys for Appellant Marlene Clark*

---

of law and fact," as argued by the Debtors (*id.* p.2), the Bankruptcy Court's determination would still be subject to *de novo* review.  *See, e.g.*, *In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003) ("Mixed questions of fact and law are subject to *de novo* review").

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limit in Rule 8015(a)(7)(B)(ii) since it contains 6,116 words, excluding parts exempted by Rule 8015(a)(7)(B)(iii). This brief also complies with the typeface and typestyle requirements of Rule 8015(a)(5)-(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 23, 2017

/s/ Jeffrey Chubak